## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES INC., *a non-profit Utah corporation*,<br><br>Plaintiff,<br><br>v.<br><br>ELAP SERVICES, LLC, *a limited liability company*,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Case No. 2:17-cv-01245-JNP-EJF<br><br>District Judge Jill N. Parrish |

Before the court is the Defendant's Rule 12(b)(6) Motion to Dismiss the Complaint and Jury Demand for insufficient pleading and failure to state a claim. For the reasons discussed below, the court hereby grants in part and denies in part defendant ELAP Services's motion to dismiss and grants IHC leave to amend.

## BACKGROUND

IHC Health Services, Inc. ("IHC") is a non-profit Utah corporation operating 22 hospitals and 185 clinics in Utah and Idaho. Complaint and Jury Demand ¶¶ 1-2. ELAP Services, LLC ("ELAP") is a limited-liability company organized and existing under the laws of Pennsylvania. Compl. ¶ 4.

ELAP provides "health care cost containment services" for its clients. Defendant's Rule 12(b)(6) Motion to Dismiss ("Motion") 3. ELAP's clients include "small to medium sized companies" who "sponsor their own ERISA self-funded healthcare plans." Motion 3. Companies contract with ELAP to "audit[] hospital claims" incurred by members of the self-funded plans at various medical providers. Motion 3; Compl. ¶¶ 25, 28, 30. The ELAP-contracted plan ("Plan") submits the bills received to ELAP, which then decides how much of any given Plan member's

hospital bill the Plan should pay, allegedly in accordance with accepted Medicare rates. Compl. ¶¶ 30-31. ELAP calls its role "Designated Decision Maker." Compl. ¶ 30.

The dispute between the parties arises from the fact that IHC does not recognize ELAP's authority to decide the amount a Plan, or a patient, should pay absent a prior agreement with IHC. Compl. ¶¶ 25, 31. When patients are admitted to an IHC facility, they sign a "Patient Agreement." Compl. ¶ 20. By signing this contract, the patients agree to pay their full medical bill as charged by IHC, whatever that amount may be. Compl. ¶¶ 20, 24, 35. But patients who are enrolled in certain insurance plans are eligible for discounts and reduced rates. Compl. ¶ 24.

IHC "regularly enters into contracts with health insurers." Compl. ¶ 18. These contracts, "preferred-provider agreements," set mutually negotiated rates that "determine what amount [IHC] will accept as payment for the care provided." Compl. ¶¶ 18-20.  These amounts are at significantly reduced rates, which benefit IHC and patients. Compl. ¶ 21.

ELAP has not entered into preferred-provider agreements with IHC. Compl. ¶ 25. Nor have any of the ELAP Plans. Compl. ¶ 25. This means that IHC is under no contractual obligation to lower its rates for these Plans, or the Plan members who become IHC patients. Compl. ¶¶ 28-31. Thus, when an ELAP Plan member is admitted to an IHC clinic or hospital and signs a Patient Agreement with IHC, that patient is contractually obligated to pay the full amount of the bill and IHC is not obligated to accept the amount the Plan, through ELAP, decides to pay. Compl. ¶¶ 35-36.

IHC alleges that ELAP "purposefully, willfully, intentionally and knowingly" encourages Plan members "to obtain services and enter into Patient Agreements" without any intention of paying the full amount of the bill, but with the knowledge that IHC is not obligated to respect ELAP's price determinations. Compl. ¶¶ 35-38.  ELAP tells Plan members that they are not liable

for any bills the Plan and Plan members receive from hospitals after the Plan pays the ELAP determined amount because the bills are demands for "reimbursement in excess of what [the Plan] has already paid." Compl. ¶ 41. When IHC attempts to collect on these outstanding bills, ELAP "institutes and funds litigation against Intermountain." Compl. ¶ 54.

IHC alleges that the statements ELAP makes to its Plans and Plan members, including but not limited to statements published in advertising materials such as "Put Your Claims Costs Back in the Box," (Opposition to Motion to Dismiss ("Opposition"), Exhibit 1) and "Helpful Facts to Assist You with Any Balance Bill or Collection Notices" (Opposition, Exhibit 2), are "false, misleading and deceptive" and made with malice. Compl. ¶ 40.  IHC alleges that ELAP purposefully disguises its involvement in these self-funded Plans and intentionally interferes with IHC's Patient Agreements.  Compl. ¶¶ 38, 52-54.

ELAP denies that its business practice is tortious. ELAP alleges that it establishes the "reasonable value of the charges" and offers "ERISA plans the ability to control unreasonable health care costs" and that it does so in accordance with Utah law. Motion 4. ELAP denies misrepresenting any facts to its clients, including Plans and Plan members. Motion 5.

## ANALYSIS

### I.       FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) STANDARD

ELAP moves under Fed. R. Civ. P. 12(b)(6) to dismiss IHC's Complaint for failure to state a claim. A claim is properly dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to meet either the general pleading requirements of Fed. R. Civ. P. 8 or the specialized pleading requirements of Fed. R. Civ. P. 9. *Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986).

Under the general pleading standard of Fed. R. Civ. P. 8, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Oklahoma ex rel. Dept. of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks omitted). The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Some of IHC's claims for relief are governed by Fed. R. Civ. P. 9(b) and (g).  Fed. R. Civ. P. 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Under Fed. R. Civ. P. 9(g), special damages "must be specifically stated."

When applying either standard to the factual allegations levied against the defendant "[a]t the motion-to-dismiss stage, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)). In evaluating a complaint on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

IHC alleges six claims for relief against ELAP: 1. Tortious Interference with Economic Advantage ("Count 1"); 2. Injurious Falsehood ("Count 2"); 3. Fraud ("Count 3"); 4. Negligent Misrepresentation ("Count 4"); 5. Declaratory Judgment ("Count 5"); and 6. Preliminary and Permanent Injunction ("Count 6"). Compl. ¶ 47-96.  However, the court concludes that IHC has failed to plausibly allege Counts 2-5.  Those counts are therefore dismissed, but with leave to amend.

## II.    SUBSTANTIVE ANALYSIS

### A.  COUNT I: INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

To establish a prima facie case of intentional interference with existing and potential economic relations, a plaintiff must allege: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553, 565.  IHC has made sufficient factual allegations, when accepted as true, to state a plausible claim for tortious interference in accordance with *Twombley* and *Iqbal*.

#### 1.  Existing or Potential Economic Relations

IHC alleges that ELAP is intentionally interfering with the Patient Agreements between IHC and its patients and also the potential and existing economic relationships between IHC's preferred-providers and their members. Compl. ¶ 50-55.  ELAP admits to acting as an intermediary to protect small businesses and their employees from IHC's exorbitant healthcare costs.  Motion 3. ELAP "audits" IHC's bills and instructs Plans and members how much to pay. ELAP does not deny this behavior, and the court finds that IHC has sufficiently pled the first element of this claim.

#### 2.  Improper Means

ELAP asserts that IHC has failed to allege the second element of a tortious interference claim, improper means. Motion 9-12. According to ELAP, a deliberate breach of contract and/or

any alleged actions encouraging a deliberate breach of contract cannot constitute improper means. Motion 10. As IHC has not alleged that ELAP itself has breached any contracts, the court does not reach whether a deliberate breach can be grounds for tortious interference. As to the second argument, ELAP is correct that, "[m]erely persuading another company to withdraw its business from a competitor is not, without more, an improper means under Utah law." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1083–84 (10th Cir. 2018). But the real question is whether IHC has met its burden to establish that ELAP has done "more" than just merely "persuade." *Id.*

In *SCO Grp.*, 879 F.3d at 1083, the Tenth Circuit, quoting *Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 308 (Utah 1982), held "[t]he improper-means requirement is satisfied where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules. Commonly included among improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." (internal quotation marks omitted). Improper means can also include violations of "an established standard of a trade or profession." *Leigh Furniture*, 657 P.2d at 308.

IHC alleges that ELAP interfered with IHC's economic relations through unfounded litigation (Compl. ¶ 32), which is "[c]ommonly included among improper means. . . ." *Leigh Furniture*, 657 P.2d at 308. But IHC's conclusory allegation that ELAP's litigation is "unfounded" is insufficient to establish the improper means required to state a claim for tortious interference. Under Utah law, the torts of "wrongful civil proceedings and abuse of process" are "narrowly defined," and IHC has done nothing to plead the elements of either tort. *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 59, 116 P.3d 323, 339 (citing *Gilbert v. Ince,* 1999 UT 65, ¶¶ 17, 19, 981

P.2d 841). Nevertheless, the court does not dismiss IHC's tortious interference claim on this ground, because IHC has also alleged that ELAP interfered with IHC's economic relations through false statements to IHC patients and fraudulent misrepresentations, potentially made in violation of false advertising laws. Compl. ¶ 28-31, 40; Opposition 18-19. "[D]eceit or misrepresentation" and "violations of statutes," both constitute improper means under Utah law. *SCO Grp*, 879 F.3d, at 1083.

Under the pleading standard of Fed. R. Civ. P. 8, IHC has met its burden of alleging wrongful means. But ELAP argues that the more demanding pleading standard of Fed. R. Civ. P 9(b) applies, and that under Fed. R. Civ. P 9(b), IHC has failed to plead with particularity facts in support of a tortious interference claim. Motion 13. According to ELAP, Fed. R. Civ. P. 9(b) applies to all false statements, and any claim based on a false statement must be pled with particularity. Motion 13.

Fed. R. Civ. P. 9(b) states that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."  This pleading requirement must be applied to any case brought in federal court where *federal* law has held that it should be applied.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Id.* "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Id.* (emphasis in original) (quoting *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985). Although there is no Tenth Circuit case on point, *Vess* cites to First, Sixth, Eighth, and Ninth Circuit cases. *See Jenkins v. Commonwealth Land Title Ins. Co.,* 95 F.3d 791, 796 (9th Cir.1996) (applying Rule

9(b) to pleading of state-law cause of action); *Minger v. Green,* 239 F.3d 793, 800 (6th Cir.2001) (same); *Roberts v. Francis,* 128 F.3d 647, 650–51 (8th Cir.1997) (same).

In this case, IHC's claim of intentional interference through improper means is based on allegedly false or misleading representations made by ELAP. These allegations of deceit and misrepresentation, at least to the extent they form the grounds for the claim of tortious interference, must be pled with particularity. This conclusion is consistent with Tenth Circuit law applying Fed. R. Civ. P. 9(b) to other causes of actions based on underlying fraudulent representations.[1]

To satisfy the particularity standard of Fed. R. Civ. P. 9(b), a plaintiff alleging fraud or deceit must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir.1991). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how," of alleged fraudulent behavior. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (citation omitted). The purpose of this requirement is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . ." *Koch*, 203 F.3d at 1236 (quoting *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 987 (10th Cir.1992)).

---

[1] *See U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006) (applying Fed. R. Civ. P. 9(b) to False Claims Act claims); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1210 (10th Cir. 2000) (applying Fed. R. Civ. P. 9(b) to securities fraud claims); *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008) (applying Fed. R. Civ. P. 9(b) to false representations in a Racketeer Influenced and Corrupt Organizations Act violation claim).

While IHC's initial complaint leaves much to be desired in the way of particularity, in IHC's responsive pleading, IHC asks the court to consider two exhibits provided in IHC's Opposition to the Motion to Dismiss ("Opposition"), as well as facts taken from related litigation.

"Generally, a district court must convert a motion to dismiss into a motion for summary judgment when matters outside the pleadings are relied upon." However, additional materials may be considered when they are central to the plaintiff's claim and are referenced in the complaint. *Utah Gospel Mission v. Salt Lake City Corp.,* 425 F.3d 1249, 1253–54 (10th Cir. 2005) (citing Fed. R. Civ. P. 12(b); *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991)).   IHC attached two exhibits to its Opposition: Exhibit 1, "Put Your Claims Costs Back in the Box" and Exhibit 2, "Helpful Facts to Assist You with any Balance Bill or Collection Notices." These documents fall within the exception recognized in *Utah Gospel Mission* because they are "central to the plaintiff's claim" and language from the two documents was referenced in the complaint.  *Id.* (citing *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1045 (10th Cir.2002); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997).  Furthermore, although, the documents were not identified or submitted to the court until IHC attached them to its opposition memorandum, their authenticity is not questioned by ELAP. Indeed, ELAP fully "encourages the Court to read [these] document[s] carefully and in [their] entirety." Reply in Support of Motion to Dismiss ("Reply") 8-9.  The court will therefore consider them.

IHC also asks the court to take judicial notice of certain documents from a case brought against IHC in 2015, *Musick et al v. Intermountain Health Care Inc.*, No. 2:15-cv-00450 (D. Utah 2017), which was dismissed by this court in 2017 for lack of subject matter jurisdiction (2:15-cv-00450, ECF No. 69) after the stipulated dismissal with prejudice of Counts One and Three of plaintiff's complaint (2:15-cv-00450, ECF No. 65). Opposition, 11. While a court may take

judicial notice of matters of public record, *Tal v. Hogan,* 453 F.3d 1244, 1265 (10th Cir. 2006),[2] at this stage of the proceedings, the court is not persuaded that it is appropriate to take judicial notice of exhibits filed in separate litigation.[3]

After considering the additional exhibits, the court concludes that IHC has successfully alleged with particularity the allegedly false representations necessary to establish the wrongful means element of the tortious interference claim. IHC alleges that in advertisements and communications to Plan members, including but not limited to Exhibit 1, "Put Your Claim Costs Back in the Box" and Exhibit 2, "Helpful Facts to Assist you with any Balance Bill or Collection Notices," ELAP makes false representations of material fact and half-truths that are deliberately misleading. Opposition 9-10. These statements include telling Plan members they are not liable for any health care services beyond "out-of-pocket-expenses" paid to the plan, despite having signed Patient Agreements with IHC. Compl. ¶ 41; Opposition 10. The documents then instruct Plan members not to pay their bills and to submit any additional claims to ELAP. *Id.* Additionally, "Put Your Claim Costs Back in the Box" advertises "the only way to pay less for health care – is to pay less for health care," and states that ELAP's practices are "100% defensible." Compl. ¶¶ 27, 34.

---

[2] In *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503 (10th Cir.1997), for example the court "properly took judicial notice of a 2003 ordinance," and in *Tal v. Hogan,* the Tenth Circuit upheld the lower court's consideration of public filings, including a "Fictitious Name Certificate." *Tal v. Hogan*, at 1264.

[3] In *Van Woudenberg ex rel. Foor v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir. 2001), the court took judicial notice of the public record in resolving motions related to a petition for a writ of habeas corpus where the court allows petitioners more leeway. And in *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171 (10th Cir. 1979), the court took judicial notice of records in order to resolve motions for summary judgment. Neither precedent persuades the court that exhibits submitted in the *Musick* case should be considered here.

IHC has alleged these statements were made by ELAP to its customers. Compl. ¶¶ 27, 34, 41. And ELAP admits to publishing the documents and distributing them to clients. Reply 8-9. This is the "who," "what," "when," "where," and "how" necessary to plead with particularity. And the statements suggesting that patients would not be liable to IHC are plausibly false. In the complaint, IHC alleges that ELAP makes these statements to ELAP Plans and Plan members, who then seek IHC provided health services with no intention of paying, because the Plan members rely on ELAP's representations that they are not liable under the Patient Agreements. Compl. ¶¶ 28-34. Thus, the court concludes that IHC has successfully alleged wrongful means.

**3.  Injury**

The third element of a claim for tortious interference with economic relations is "injury to the plaintiff." *Eldridge*, 345 P.3d at 565. IHC alleges two harms. First, IHC alleges it has been harmed by ELAP encouraging patients and employers to leave plans with whom IHC has relationships as a preferred provider to join ELAP controlled plans. Compl. ¶ 50-51.  But this is not the sort of harm for which IHC can recover. It is the providers who are harmed by the alleged conduct, not IHC. In a suit for tortious interference, IHC must be the one harmed by the alleged interference. *See* Restatement (Second) of Torts § 766 cmt. p.[4]

Second, IHC alleges that ELAP is interfering with the agreements between IHC and patients ("Patient Agreements") by encouraging patients not to pay their bills and subsequently

---

[4] Only parties to the contract or economic relationship have standing to bring a tortious interference claim; third-parties who are affected by the wrongful interference may not recover unless they are intended beneficiaries of the relationship or contract. See Restatement (Second) of Torts § 766 cmt. p ("If A induces B to break a contract with C, persons other than C who may be harmed by the action as, for example, his employees or suppliers, are not within the scope of the protection afforded by this rule, unless A intends to affect them. Even then they may not be able to recover unless A acted for the purpose of interfering with their [the employees' or the suppliers'] contracts.")

funding litigation to prevent IHC from enforcing the Patient Agreements. Compl. ¶ 52-55. This is the type of harm contemplated by the tort of intentional interference with economic relations. *See Am. Airlines, Inc. v. Platinum Worlds Travel,* 769 F. Supp. 1203, 1207 (D. Utah 1990), *aff'd sub nom. Am. Airlines v. Christensen,* 967 F.2d 410 (10th Cir. 1992) ("If the defendants are allowed to persist, the plaintiff must either cease efforts to enforce an otherwise valid contract provision or else constantly question the veracity of the customers it attempts to service. There is no reason the plaintiff should be forced into this position. The court believes the defendants are liable for tortious interference with performance of contract as a matter of law.").

Finally, although IHC has alleged its damages generally, it is not required to plead the damages with particularity. The court concludes that IHC has successfully pled a plausible claim for interference with economic relations.

## B. Count 2: Injurious Falsehood

IHC's second claim is one for injurious falsehood. Under Utah law, injurious falsehood combines the two related torts of slander of title and trade libel. *See Jack B. Parson Companies v. Nield*, 751 P.2d 1131, 1134 (Utah 1988); *see also* Model Utah Civil Jury Instructions, Second Edition CV 1901 ("The tort of injurious falsehood encompasses two related claims known at common law as 'slander of title' and 'trade libel.'") (internal citations omitted). To establish a claim for injurious falsehood, plaintiff "must prove falsity of the statements made, malice, and special damages." *Direct Imp. Buyers Ass'n v. KSL, Inc.*, 538 P.2d 1040, 1042 (Utah 1975), *overruled on other grounds in later appeal sub nom. Direct Imp. Buyer's Ass'n v. K. S. L., Inc.*, 572 P.2d 692 (Utah 1977). The action is also known as disparagement. *See Harper, James, and Gray on Torts* 312, v.2 (3rd ed. 2006).

As to the first element of an injurious falsehood claim, although some courts have interpreted the tort more broadly,[5] to be actionable under Utah law, the false statements must either disparage plaintiff's title or the quality of plaintiff's product.  *See Harper, James and Gray on Torts* 312 ("There may be disparagement of the title to one's property or disparagement of the quality thereof"); *see also* Model Utah Civil Jury Instructions, Second Edition CV 1901. ("Trade libel, . . . provides compensation for false derogatory statements about the quality, rather than the ownership, of property, most often a product or service being sold.")

The second element, malice, "may either be implied in law or be affirmatively proven by the plaintiff." *Jack B. Parson Companies*, 751 P.2d at 1134. Affirmative proof "requires a showing that the wrong was done with the intent to injure, vex, or annoy." *Id.* To be implied in law, plaintiff must establish that "a party knowingly and wrongfully records or publishes something which is spurious or untrue, or which gives a false or misleading impression, adverse to another's title [or product], under such circumstances that he should reasonably foresee might result in damage to the property owner." *Howarth v. Ostergaard*, 30 Utah 2d 183, 185, 515 P.2d 442, 444 (1973).

Finally, Plaintiff must allege special damages. *Direct Imp. Buyer's Ass'n v. K. S. L., Inc.*, 572 P.2d 692, 694 (Utah 1977).[6]  The damages must specifically relate to the economic harm

---

[5] *See Bankwest v. Fid. & Deposit Co. of Maryland*, 63 F.3d 974, 980 (10th Cir. 1995) (applying Kansas law) ("The tort has been broadly interpreted to include the publication of other falsehoods harmful to any legal interest of another that has pecuniary value." (internal citations omitted)) and see *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892–93 (10th Cir. 1991) (applying New Mexico law).  *See also Restatement (Second) of Torts* § 623A (1977) ("One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other. . . .").

[6] "In case of words falsely broadcast relating to the quality of an article that is made, produced, furnished, or sold by a person, no action will lie unless special damages are alleged, and no recovery can be had unless such special damages are proved. Furthermore, the burden is on the plaintiff in such a case to prove that the product is not as represented by the defendant but is in fact as the plaintiff claims it to be."

caused by the disparagement of title, product, or business. *Watkins v. Gen. Refractories Co.*, 805 F. Supp. 911, 917 (D. Utah 1992); *See also Farm Bureau Life Ins. Co. v. Am. Nat. Ins. Co.*, 505 F. Supp. 2d 1178, 1191 (D. Utah 2007) (referencing *Watkins v. Gen. Refractories*.) And under Fed. R. Civ. P. 9(g), the special damages must be specifically stated.

In this case, IHC has failed to state a claim for injurious falsehood. IHC has not alleged a loss of business or loss of income caused by disparaging statements about its services. For example, although IHC has alleged that ELAP's false statements have caused preferred-providers to lose business, IHC has not alleged that ELAP's statements have caused patients to refrain from using IHC's health services. Compl. ¶ 50, 51. Rather, IHC alleges the false statements have harmed its pecuniary interests in ways more appropriately remedied through a claim for tortious interference with economic relations. Additionally, IHC has not alleged any statements by ELAP disparaging its services, and thus there are no statements related to the injurious falsehood claim that ELAP could have made with malice. Finally, even under a broader conceptualization of injurious falsehood,[7] IHC has failed to specifically state its special damages under Fed. R. Civ. P. 9(g). While IHC alleges generally that "ELAP's statements result in special damages, including the balance bills that Intermountain is unable to collect from Plans and/or Plan members," it does not specifically state its damages. Compl. ¶ 60-61. Thus, IHC has failed to state a claim for relief under Count 2.

### C. COUNT 3: FRAUD

To state a claim for fraud, IHC must allege nine elements:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly,

---

[7] The Restatement (Second) of Torts § 623A (1977) defines injurious falsehood more broadly. "One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other. . . ."

> knowing that there was insufficient knowledge upon which to base
> such a representation, (5) for the purpose of inducing the other party
> to act upon it and (6) that the other party, acting reasonably and in
> ignorance of its falsity, (7) did in fact rely upon it (8) and was
> thereby induced to act (9) to that party's injury and damage.

*Arnett v. Howard*, No. 2:13-CV-591 TS, 2014 WL 1165851, at *3 (D. Utah Mar. 21, 2014) (citing

*Daines v. Vincent.* 190 P.3d 1269, 1279 (Utah 2008)). Fed. R. Civ. P. 9(b), as interpreted by the

Tenth Circuit, "requires a complaint alleging fraud to "set forth the time, place and contents of the

false representation, the identity of the party making the false statements and the consequences

thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236–37 (10th Cir. 2000) (internal citations

omitted).

Although IHC has identified statements by ELAP that may indeed be false, IHC has failed

to allege that IHC reasonably relied on any of these statements.  ELAP did not make any of the

allegedly false claims to IHC or any of its agents. Although a false representation does not

necessarily have to be made directly to the plaintiff,[8] the plaintiff still has to rely on it. *Carlton v.*

*Brown*, 2014 UT 6, ¶ 39, 323 P.3d 571, 582 (holding that plaintiff failed to plead detrimental

reliance).  Furthermore, the reliance must be reasonable. *Jardine v. Brunswick Corp.*, 18 Utah 2d

378, 381, 423 P.2d 659, 662 (1967) ("Where one . . . carelessly or negligently makes a false

representation . . . , expecting the other party to rely and act thereon, and the other party reasonably

does so and suffers loss in that transaction, the representor can be held responsible if the other

elements of fraud are also present."). Here, the allegedly false statements were made to ELAP

---

[8] See *Ellis v. Hale*, 13 Utah 2d 279, 283, 373 P.2d 382, 384-85 (1962) ("The usual action for
fraud, whether negligent or intentional, requires that a representation be made with the intention
that it be relied on."). According to the Restatement (Second) of Torts § 533 (1977), a defendant
may be held liable if the misrepresentation, "although not made directly to the other," is "made
to a third person and the maker intends or has reason to expect that its terms will be repeated or
its substance communicated to the other, and that it will influence his conduct in the transaction."

Plans or Plan members, not to IHC. And because IHC vigorously contests the accuracy of those statements, it cannot plausibly allege that it reasonably relied on them.

IHC also alleges that ELAP encourages Plan members to solicit IHC services while concealing ELAP's role as Designated Decision Maker and the patient's intent not to pay the full bill, thus causing IHC to treat patients who have no intention of paying. But IHC also continues to assert that the patients are bound by the Patient Agreements regardless of ELAP's statements and that IHC fully intends to collect the full bill from these patients. While litigation to collect on outstanding bills certainly costs time and money, IHC has not actually relied on anything ELAP has represented to them, or to the patients. At most, the patients have failed to inform IHC that they are participants in an ELAP plan, but IHC does not suggest that the patients were under any legal duty to pass on that information. Moreover, IHC still has the legal right to collect the patients' bills under the Patient Agreements. Thus, IHC has failed to plead detrimental reliance. *See Jardine*, 18 Utah 2d 378, 381.

Because IHC has not successfully alleged reasonable reliance, the court need not reach whether IHC has pled the allegedly fraudulent statements with particularity. However, as the court is granting IHC leave to amend, the court will address the sufficiency of the current pleadings. Fraud must be pled with particularity under Fed. R. Civ. P. 9(b). Under federal law, "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how,'" of alleged fraudulent behavior. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (citation omitted). Yet IHC does not identify a single misrepresentation on which it relied. To the extent that IHC alleges that it has reasonably relied on

statements or omissions made by patients at the behest of ELAP, IHC needs to identify particular instances where this has occurred.[9]

IHC argues that the fraud perpetuated by ELAP is a case where "essential information about the misrepresentations is in the defendant's exclusive possession," and thus the court should apply a "relaxed particularity standard." Opposition 3-4.  According to IHC, because of the way the ELAP scheme allegedly works, IHC enters into contracts with patients who do not list ELAP as their insurer, but rather list the self-funded Plan name, which is connected to ELAP, but does not have ELAP named on the document. Compl. ¶¶ 28-30, 37-38. The Plans then submit the medical claims to ELAP. *Id*. at 30.  Thus, IHC cannot do a search of its current outstanding patient bills to uncover ELAP's name, and it alleges that there may be hundreds of examples. Compl. ¶ 44.

But the relaxed standard does not excuse a plaintiff from alleging at least some specifics of the fraudulent misrepresentations. In *George v. Urban Settlement*, 833 F.3d 1242, 1256-57 (10th Cir. 2016) the court required the plaintiff to allege at least some instances of specific dates and times.  Similarly, in *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018), plaintiff-relator Polukoff was excused from identifying the specific individuals at Intermountain Healthcare, Inc. and St. Mark's Hospital who allegedly participated in the fraud, but he still had given the court a time frame for when the fraud was allegedly occurring. *Id.*; *see also United States v. St. Mark's Hosp.*, 2017 WL 237615, at *7 (D. Utah 2017), *rev'd and remanded sub nom. United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730 (10th Cir. 2018).

---

[9] This analysis differs from the tortious interference with economic advantage analysis because, to establish fraud, IHC must have relied on something the patients said. It is not enough to allege that ELAP made false statements to third parties.

Here IHC has failed to allege fraud with the requisite particularity. And its failure to do so cannot be excused on the grounds that IHC "cannot readily identify all such transactions, their date of occurrence, and/or the extent of injury to Intermountain" due to the overwhelming number of these claims. Compl. ¶ 44. Even in *State v. Apotex Corp.*, 2012 UT 36, 282 P.3d 66, a Utah Supreme Court Case dealing with the parallel particularity standard in Utah Rule 9(c), which IHC cites to excuse its lack of particularity, the court held that the State was not required to provide detailed information on "every false claim submitted or fraudulent misrepresentation made," but it was required to provide "reliable indicia" such as "factual or statistical evidence" or "representative examples." *State v. Apotex Corp.*, 2012 UT 36, ¶ 35, 282 P.3d 66, 76 (citations omitted). IHC has failed to meet this requirement here.

Count 3 fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6) and must be dismissed.

### D. COUNT 4: NEGLIGENT MISREPRESENTATION

IHC alleges that ELAP is liable for negligent misrepresentation. Compl. ¶ 73-79. To establish a claim for negligent misrepresentation, IHC must establish, in addition to "the other elements of fraud," that ELAP:

> (1) [has] a pecuniary interest in a transaction, (2) is in a superior position to know material facts, and (3) carelessly or negligently makes a false representation concerning them, (4) expecting the other party to rely and act thereon, and (5) the other party reasonably does so and (6) suffers loss in that transaction….

*Christenson v. Commonwealth Land Title Ins. Co.,* 666 P.2d 302, 305 (Utah 1983) (quoting *Jardine v. Brunswick Corp.*, 18 Utah 2d 378, 381, 423 P.2d 659, 662 (1967)).

IHC has failed to state a plausible claim for relief. First IHC has failed to assert any statements on which it justifiably relied. Second, IHC has failed to a special duty between plaintiff and defendant. "Negligent misrepresentation differs from intentional misrepresentation in that . . . liability will only lie for a negligent misrepresentation when there is a special duty of care running

from the representor to the representee." *Ellis v. Hale*, 13 Utah 2d 279, 282–83, 373 P.2d 382, 384–85 (1962). The duty of care does not have to be based on privity of contract, but it does require more than intent to induce reliance. *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986). IHC has not alleged that ELAP owes IHC any special duty. Its claim for negligent misrepresentation is therefore dismissed.

### E.   COUNTS 5 & 6: DECLARATORY AND EQUITABLE RELIEF

IHC asserts two additional claims. The first is for Declaratory Judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 (Compl. ¶¶ 80-86) and the second is for Preliminary and Permanent Injunction (Compl. ¶¶ 87-96). ELAP moves to dismiss both.

#### 1.   Count 5: Declaratory Relief

IHC's fifth claim for relief is one for declaratory judgment. Specifically, IHC asks the court to "(1) declare that Intermountain may turn away patients seeking non-emergent care under Plans for which ELAP is the 'Designated Decision Maker'; (2) declare that ELAP must stop making misleading statements; (3) declare that ELAP's conduct as 'Designated Decision Maker' does not affect IHC's separate rights under the Patient Agreement," and (4) "state that Plan members that execute Patient Agreements upon admission to an Intermountain facility . . . are obligated to disclose that ELAP has a role in determining the amounts to be paid." Compl. ¶¶ 84-86; Opposition 23.

ELAP argues that IHC is not entitled to declaratory relief for two reasons.  First, ELAP argues that IHC's claim for such relief is premised on the same conduct giving rise to its other claims for relief. Therefore, if its other claims for relief are dismissed, its request for a declaratory judgment must also fail. Second, ELAP argues that the requested declaratory relief is unavailable because it would affect the rights of those who are not party to this suit.  The court addresses each argument in turn.

In *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016), the Tenth Circuit held that "[t]he availability of declaratory relief presupposes the existence of a judicially remediable right" and if the "substantive claims have failed," the "request for declaratory relief in relation to those claims is not viable." (citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Because the court has dismissed IHC's claims for injurious falsehood, fraud, and negligent misrepresentation, IHC's claim for declaratory relief, to the extent it is premised on these claims, must also be dismissed. To the extent IHC's request for declaratory relief is premised on the conduct giving rise to its claim for intentional interference, IHC has failed to explain why a favorable ruling on its underlying interference claim would be inadequate to protect its rights or to identify the legal basis on which it is entitled to the declaratory relief it requests. IHC's opposition memorandum does not even separately address its request for declaratory relief. Instead it combines its arguments regarding declaratory relief with those regarding its request for injunctive relief and devotes less than two pages to the combined argument. *See* Opposition at 23-24.

Moreover, there is no question that the declaration IHC seeks would affect the rights of individuals not parties to this lawsuit. The requested declaration would allow IHC to refuse to treat these individuals, declare IHC's rights under its agreements with these individuals, and impose affirmative obligations of disclosure on them. But the law is clear that parties are not entitled to a declaratory judgment that would affect non-parties to the suit.  Fed. R. Civ. P. 57 advisory committee's note to 1937 adoption. The court therefore grants ELAP's motion to dismiss IHC's request for declaratory relief.

## 2.  Count 6: Preliminary and Permanent Injunction

IHC's sixth claim for relief asks the court to (1) "enjoin ELAP, directly or through its agents, from making misleading statements to Utah employers, Plans or Plan members;" and (2)

"require ELAP to disclose when it has a role in determining amounts to be paid to Intermountain under a Plan." Compl. ¶¶ 88-89; Opposition 23.

"A federal court's equity jurisdiction affords it the power to enjoin otherwise lawful activity when necessary and appropriate in the public interest to correct or dissipate the evil effects of past unlawful conduct." *Garrison v. Baker Hughes Oilfield Operations, Inc*., 287 F.3d 955, 961 (10th Cir. 2002) (quoting *United States v. Holtzman*, 762 F.2d 720, 724 (9th Cir.1985)). Before ordering injunctive relief, the court must decide whether there is a case or controversy between the parties justiciable under Article III and then the court must evaluate whether injunctive relief is appropriate. These two evaluations often overlap. "Case or controversy considerations obviously shade into those determining whether the complaint states a sound basis for equitable relief." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

To establish Article III standing, "[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.* at 101-02. In this case, the factual allegations, when taken as true, support IHC's assertion that it is sustaining and will continue to sustain injury from ELAP's alleged interference with its economic relations. Indeed, ELAP has given no indication it intends to halt the alleged harmful activity. "It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress." *Tandy v. City of Wichita*, 380 F.3d 1277, 1285 (10th Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 185–86 (2000)).  IHC has successfully alleged a case or controversy under Article III.

"[T]he basic requisites of the issuance of equitable relief . . . [are] the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *Lyons*, 461 U.S. at 103. While resolution of IHC's request for injunctive relief must await proof of immediate and irreparable injury that can be adequately remedied only by equitable relief, the court is not prepared at this juncture to rule out such a possibility. It therefore denies the motion to dismiss IHC's sixth claim for relief.

### III.   LEAVE TO AMEND

Under Fed. R. Civ. P. 12(b)(6), IHC has failed to properly state a claim for relief under Counts 2-5, the claims for injurious falsehood, fraud, negligent misrepresentation, and declaratory relief. But IHC has properly stated a claim for intentional interference with economic relations and injunctive relief under Counts 1 and 6.

In IHC's opposition to ELAP's motion to dismiss, IHC requested leave to amend its complaint in the event that any part of the complaint is dismissed. Opposition 24-25. Amendments that are not permitted as a matter of course under Fed. R. Civ. P. 15(a)(1) require written consent from the opposing party or leave of court. Fed. R. Civ. P. 15(a)(2). Although ELAP has not specifically objected to IHC's request to amend made in its opposition memorandum, ELAP has filed an objection (Memorandum in Opposition, ECF No. 27) to IHC's separate motion in which it seeks leave to amend its complaint to add a claim for unjust enrichment (ECF No. 26).

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted). None of these justifications are present here.

IHC cannot be faulted for undue delay. In addition to the request to amend contained in its opposition memorandum, IHC filed a motion for leave to amend its complaint on August 31, 2018. Motion to Amend, ECF No. 26.  This was the deadline for amended pleadings set by Magistrate Judge Evelyn J. Furse. Scheduling Order 4, ECF No. 24.  At the time IHC filed the motion, no trial date had been set, and the court had not ruled on ELAP's motion to dismiss.  Thus, IHC cannot be faulted for undue delay.

Furthermore, ELAP will not be prejudiced by allowing IHC an opportunity to amend. Undue prejudice often "occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (comparing new claims proposed two months before trial in *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir.1996) with claims which "track the factual situations set forth" in *Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir.1994) and claims involving substantially similar issues in *R.E.B., Inc. v. Ralston Purina Co*., 525 F.2d 749, 751–52 (10th Cir. 1975)).  But there is no indication that IHC intends to inject new factual issues into the lawsuit. Rather, it presumably will attempt to plead correctly the elements of the dismissed claims. Moreover, the discovery cutoff is almost a year away and no trial date has yet been set. Under these circumstances, IHC is entitled to amend its complaint. Any amended complaint must be filed within 14 days from the date of this order.

## CONCLUSION

The court DENIES Defendant's Rule 12(b)(6) Motion to Dismiss (ECF No. 7) as to Count 1: Intentional Interference with Existing and Potential Economic Relations (Compl. ¶ 47-56) and Count 6: Preliminary and Permanent Injunction (Compl. ¶ 87-96). The court GRANTS Defendant's motion to dismiss as to Counts 2-5: Injurious Falsehood, Fraud, Negligent

Misrepresentation, and Declaratory Judgment (Compl. ¶ 57-86) and GRANTS IHC leave to amend

the Complaint and Jury Demand (ECF No. 2) within 14 days from the date of this order.


Signed September 28, 2018


BY THE COURT

_____

Jill N. Parrish
United States District Court Judge