# EXHIBIT A

Plaintiffs' Exhibit 5

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

**CARRIE STEPHENS**
DIRECT DIAL: 404.991.3787
E-MAIL: CARRIE.STEPHENS@LEWISBRISBOIS.COM

October 1, 2014

## VIA U.S. MAIL

Manager, Patient Accounts
Primary Children's Medical Center
c/o Intermountain Healthcare
4646 W Lake Park Boulevard
Salt Lake City, UT 84120

|  |  |  |
|---|---|---|
| **RE:** | **Patient:** | **R     'M     (minor)** |
|  | **Patient Account No.:** | **138-77460749** |
|  | **Date of Service:** | **November 11, 2013** |
|  | **Plan Name:** | **Check City/Softwise Health Benefit Plan** |
|  | **Alleged Amount:** | **$25,290.03** |

Dear Sir or Madam:

I write this letter to remind you that this firm represents the above-mentioned patient, k      M      , and plan participant Danielle Musick in connection with the above matter. From this point forward, please direct all communications regarding this matter to Carrie Stephens and _not_ to R      M      or Danielle Musick. Please cease direct communications with the Musick family immediately.

I write this letter in response to a statement dated September 4, 2014 that Primary Children's Medical Center sent directly to my client. The statement reflects an alleged amount due of $25,290.03. My client denies owing the amount alleged due to Primary Children's Medical Center. Danielle Musick stands by the audit of the medical treatment you previously received in connection with the above-referenced date of service.

October 1, 2014
Page 2

  If you have any further questions, please contact Carrie Stephens. The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation.

            Sincerely,

            Carrie Stephens for
            LEWIS BRISBOIS BISGAARD & SMITH LLP

CS:an
cc:  Danielle Musick

Plaintiffs' Exhibit 13

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

LINDSAY FORLINES
DIRECT DIAL: 404.991.2163
E-MAIL: LINDSAY.FORLINES@LEWISBRISBOIS.COM

September 16, 2014

## VIA U.S. MAIL

Manager, Patient Accounts
Intermountain Healthcare
Patient Financial Services
4646 W. Lake Park Blvd.
Salt Lake City, UT 84120

| RE: | Patient: | R. M. (Guardian Danielle Musick) |
| --- | --- | --- |
| | Patient Account No.: | 107-540201053 |
| | Date of Service: | multiple, including September 8, 2013; January 24, 2014; December 13, 2013; March 29, 2014; January 3, 2014; February 4, 2014 |
| | Plan Name: | Check City/Softwise Health Benefit Plan |
| | Alleged Amount: | $97,008.42 |

Dear Sir or Madam:

I write this letter to remind you that this firm represents the above-mentioned patient, R. M. (and Guardian Danielle Musick), in connection with the above matter. From this point forward, please direct all communications regarding this matter to Lindsay Forlines and *not* to R. M. (or Danielle Musick). Please cease direct communications with R. M. and/or Danielle Musick immediately.

I write this letter in response to a statement dated September 4, 2014 that Intermountain Healthcare sent directly to my client. The statement reflects an alleged amount due of $97,008.42.

4820-7765-5070.1

Page 2

My client denies owing the amount alleged due to Intermountain Healthcare. R           M.        and Danielle Musick stand by the audit of the medical treatment you previously received in connection with the above-referenced date of service.

If you have any further questions, please contact Lindsay Forlines. The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation.

Sincerely,

Lindsay Forlines for
LEWIS BRISBOIS BISGAARD & SMITH LLP

LF:an
cc:    Danielle Musick)

Plaintiffs' Exhibit 30

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

**DANIELLE BERRY**
DIRECT DIAL: 404.567.6575
E-MAIL: DANIELLE.BERRY@LEWISBRISBOIS.COM

March 28, 2014

**VIA U.S. MAIL**

Manager, Patient Accounts
Primary Children's Medical Center
100 Mario Capecchi Dr.
Salt Lake City, UT 84113

| RE: | Patient: | R     M     (Danielle Musick) |
|---|---|---|
| | Account No.: | FA13816410938 |
| | Claim No.: | 201401090269 |
| | Date of Service: | December 23, 2013 |
| | Plan Name: | Check City/Softwise Health Benefit Plan |

Dear Sir or Madam:

I write this letter to inform you that this firm represents the above-mentioned patient, R. M , in connection with the above matter. From this point forward, please direct all communication regarding this matter to Danielle Berry and not to R M or Danielle Musick. Please cease direct communications with R M and Danielle Musick immediately.

This letter follows a letter of January 22, 2014 you received from MBA Benefit Administrators, Inc. regarding the Check City/Softwise Health Benefit Plan (the "Plan"), of which R M (Danielle Musick) is a participant. The focus of that letter to you, and this letter as well, is the difference between the original amount of $528.91 billed by Primary Children's Medical Center and the eligible amount covered by the Plan, less any applicable deductible, which amounted to $145.07 and which was paid to Primary Children's Medical Center on or about January 22, 2014.

In the letter from MBA Benefit Administrators, Inc., you were made aware of the ERISA appeal process in the event of an Adverse Benefit Determination. This letter will again remind you of the appeal process, as well as the 180 day deadline within which Primary Children's Medical Center may file such an appeal. I am not in a position to give you legal advice, as I represent the aforementioned client in this matter, but Primary Children's Medical Center is again encouraged to

March 28, 2014
Page 2

avail itself of the appeals process if it does not believe it was properly reimbursed by receipt of $145.07.

My client stands by the audit of the medical bills in connection with the above-referenced date(s) of service. Primary Children's Medical Center billed R        M        (Danielle Musick) in the amount of $528.91 for the treatment received on December 23, 2013. The independent audit performed during this claim determined the amount that should be paid, and Primary Children's Medical Center has been timely paid the appropriate amount of $145.07 on or about January 22, 2014. This amount paid was the Allowable Claim Limit of the Medicare allowed amount in a geographic region, plus 20%, which constitutes the maximum Applicable Plan Limit for the service provided. This payment constitutes fair reimbursement for the medical care provided. We are prepared to defend the audit and payment made in this case against any further collection attempts by Primary Children's Medical Center or its agents.

Additionally, on behalf of R        M        (Danielle Musick), this letter hereby revokes any waiver of R        M        (Danielle Musick)'s HIPAA privacy rights as obtained by Primary Children's Medical Center and also revokes any previous HIPAA authorizations that would enable Primary Children's Medical Center to disseminate any of R        M        (Danielle Musick)'s confidential medical records or information. This revocation of authorization does not revoke any authorization that R        M        (Danielle Musick) has provided which authorizes the provision of Protected Health Information to R        M        (Danielle Musick)'s undersigned attorneys and their staff.

Again, if you have any further questions, please contact me and not my client. Further attempts by Primary Children's Medical Center to balance bill R        M        (Danielle Musick) will be evaluated with respect to applicable state law. The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation.

Sincerely,


Danielle Berry of
LEWIS BRISBOIS BISGAARD & SMITH LLP


DKB:rs
cc:    R        M        (Danielle Musick)

Plaintiff's Exhibit 37

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

**DANIELLE BERRY**
DIRECT DIAL:404.567.6575
E-MAIL: DANIELLE.BERRY@LEWISBRISBOIS.COM

April 25, 2014

**R  M  (Danielle Musick)**
**2177 N 2600 W**
**Lehi, UT 84043**

        RE:     Settlement Offer

Dear R  M  (Danielle Musick):

        This firm represents you and Check City/Softwise Health Benefit Plan for claims associated with the reimbursement of medical care provided at Primary Children's Hospital. Enclosed please find a settlement offer recently made in an attempt to resolve the dispute over the outstanding balance which Primary Children's Hospital claims is owed.   If the offer is accepted, the Plan will pay the offer amount and the matter will be closed.

        Please note this correspondence is simply for your information. **There is no need for any action on your part at this time.**  Please feel free to contact us if you have any questions.

                                Very Truly Yours,


                                Danielle Berry of
                                LEWIS BRISBOIS BISGAARD & SMITH LLP

DKB:md
cc:     Check City/Softwise Health Benefit Plan

4840-1694-5164.1

**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

**Danielle Berry**                              April 25, 2014
DIRECT DIAL: 404.567.6575
EMAIL: DANIELLE.BERRY@LEWISBRISBOIS.COM

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

CBE Group
1309 Technology Pkwy
Cedar Falls, IA 50613

|  | | |
|---|---|---|
| **RE:** | **My Client:** | **R   M   (minor)** |
| | **Your Client** | **Primary Children`s Hospital** |
| | **Patient Account No.:** | **138-77176493** |
| | **Date of Service:** | **September 26, 2013** |
| | **Alleged Amount:** | **$1106.53** |
| | **Plan Name:** | **Check City/Softwise Health Benefit Plan** |

Dear Sir or Madam:

I write this letter to inform you that this firm represents the above-mentioned patient, R   M   and plan participant Danielle Musick, in connection with the above matter. From this point forward, please direct all communication regarding this matter to Danielle Berry and *not* to R   M   or Danielle Musick. Please cease direct communications with R   M   and Danielle Musick immediately.

We are in receipt of a statement that CBE Group sent to R   M   (Danielle Musick). The amount claimed to be due is $1106.53. We dispute the validity of this debt and/or a portion thereof. Please verify this debt and provide a copy of all verification documents so that we may further assess this claimed amount due.

While we continue to dispute the validity of this debt and/or a portion thereof, in lieu of prolonging this dispute, my client has authorized me to make an offer of settlement and compromise to resolve the above-referenced claim(s) under the following terms:

- Primary Children`s Hospital will be paid a lump sum payment of **FOUR HUNDRED FORTY-TWO DOLLARS AND 61/100 ($442.61)** within thirty (30) days of receipt of the written acceptance of this offer;

4840-1694-5164.1

- Primary Children's Hospital will accept the above amount as full and final settlement, satisfaction, and compromise of the above-referenced amount, and will write off any and all remaining balances for the above-named patient for the date of service indicated above;

- Primary Children's Hospital will make no further attempts to collect any portion of the remaining balance against R   M   (Danielle Musick), Check City/Softwise Health Benefit Plan, any of the Plan's participants or fiduciaries, and/or any other third-party guarantor of the above-referenced medical bill(s);

- Primary Children's Hospital will agree not to report this matter to any credit reporting agency, or if already reported, will agree to immediately completely and totally remove any and all adverse credit reports from the patient's credit report. Reporting the debt as "Amount Paid in Full for Less Than Full Amount," "Settled in Full," or similar language, expressly does not satisfy the terms of this settlement agreement, as only total removal will comply with the terms of this agreement;

- Primary Children's Hospital will acknowledge receipt of this offer in writing by signature below, and shall return this signed acknowledgment via certified U.S. Mail, return receipt requested and/or fax to the address and/or fax number listed in the letterhead above; and

- By signing on behalf of Primary Children's Hospital, the person signing represents and warrants that he/she has the full authority necessary to bind Primary Children's Hospital to the terms of this offer as set forth herein.

Based on the terms of the offer extended herein, and if you choose to accept the offer, this will be resolved within thirty (30) days of the written acceptance of this offer. If you choose not to accept the offer prior to its expiration, we will vigorously defend any future attempts by Primary Children's Hospital and/or its agents to collect any amounts on the above-referenced bill. Further, if you choose not to accept this offer, please be advised that the alleged debt is disputed.

The entire contents of this letter represent an offer of compromise and settlement and shall not be used against any of the above-named parties in any legal action. If you have any questions, please contact Danielle Berry. Thank you for your prompt attention to this matter. My client looks forward to your response.

Sincerely,

Danielle Berry of
LEWIS BRISBOIS BISGAARD & SMITH LLP

DKB:md
cc:   R   M   (Danielle Musick)

4840-1694-5164.1

By my signature below, I hereby accept the above offer related to R   M (Danielle Musick) on behalf of Primary Children`s Hospital on the terms listed above.  I hereby represent and warrant that I have the full authority necessary to bind Primary Children`s Hospital to the terms of this offer as set forth herein.

This _____ day of _____, 2014.


_____
(Signature of Primary Children`s Hospital representative)


_____
(Print name of person signing above)


**Payment Information**
(To be completed by person signing above)

| Payee on check | |
|---|---|
| Remittance Address | |

Plaintiffs' Exhibit 42



May 30, 2014

Via FedEx

Intermountain Revenue Cycle Organization
Ms. Tina Perry
Appeals Specialist
1104 Country Hills, Dr., Suite 300
Ogden, UT 84403

Re:     Check City/Softwise Health Benefit Plan (the "Plan")
        Claimant:           R       M
        Date of Service:    10/17/2013

Dear Ms. Perry:

ELAP Services, LLC ("ELAP") is the Designated Decision Maker (the "DDM") for the self-funded Check City/Softwise Health Benefit Plan (the "Plan"), and accordingly, ELAP, acts with certain fiduciary authority on behalf of the Plan. In accordance with the Plan's procedures for claims and appeals which may be found in the Summary Plan Description (the "SPD"), for purposes of the response on appeal, the term "Plan Administrator" shall be deemed to mean the DDM.

This letter is in response to your appeal letter dated April 24, 2014, regarding the Plan's denial of charges which were found to be in excess of the Allowable Claim Limits, as those are defined in the Plan's SPD.

**Please note:** In an effort to protect the Plan participant and fairly resolve any dispute of a benefit denial, this Plan also grants you, as representative of the provider of service, full appeal rights in addition to those rights accorded to the Plan participant. When you, representing the provider of service, exercise this right of appeal in accordance with the terms of this Plan which are applicable to participant claims and appeals, you are agreeing to the same terms and conditions through which the participant's right is granted. Also, for purposes of this Plan provision, if a provider indicates on a Form UB or on a Form HCFA (or similar claim form) that the provider has an assignment of benefits, then the Plan will require no further evidence that benefits are legally assigned to that provider. You must also agree to pursue recovery of expenses denied as being in excess of the Allowable Claim Limits directly from the Plan, waiving any right to recover those certain expenses from the Plan participant.

We have reviewed your request and are responding, affording all considerations related to a formal appeal.

Unfortunately, the medical review that you have attached to the appeal was 100% unnecessary. The Notice of Adverse Benefits Determination and the Excel spreadsheet along with the payment made on this claim clearly and unambiguously explain this claim. This Plan does welcome a second level appeal directed more to the issue of excessive charges. You have requested several documents in your appeal but they were all attached to your appeal. Please review the Excel spreadsheet along with the NOABD letter you have attached and the payment explanation is there. All the remaining information you were looking for you have attached to your appeal. If you have difficulty understanding the information you attached to this appeal I will gladly explain them to you.

The Claim Review and Audit Program is designed to evaluate the line-item detail of the charges by the provider of service for the sole purpose of identifying the covered expenses that may be considered for reimbursement. As a resource to fairly and accurately identify the true cost for certain services and supplies, the Plan looks to the actual costs reported to the Centers for Medicare and Medicaid ("CMS") by Intermountain Medical Center, ratios

are audited by CMS and they are recognized as an industry standard. The Plan allows for coverage of the provider's cost plus an additional 12% for these expenses as a reasonable charge.

The Plan looked at the Medicare allowable amount under the Medicare Inpatient Prospective Payment System (DRG) for the services specific to this facility and allows for consideration of that amount plus an additional 20% as a reasonable charge. In this case, the departmental specific cost to charge ratio yielded a greater covered expense, and was the basis for this determination.

This determination is not based upon eligibility or entitlement to Medicare; rather, it is applied to covered services for Plan participants, uniformly applied without discrimination to any covered person or medical condition.

Unfortunately, you did not include any information specific to the claim, plan provisions or otherwise related to the benefit determination, and therefore the Plan has no basis for an additional independent review on this appeal. Based upon the information currently available, the Plan Administrator has determined that no additional benefits are payable for the above-referenced claim at this time. This response on first appeal includes information that we hope will assist you in filing a second appeal for additional benefits under the terms of Plan.

## PLAN PROVISIONS

The SPD includes a section, entitled "Claim Audits", which states that, "Once a written Claim for benefits is received, the Claims Administrator, acting on the discretionary authority of the Plan Administrator, may elect to have such Claim reviewed or audited for accuracy and reasonableness of charges as part of the adjudication process. This process may include, but may not be limited to, identifying: (a) charges for items/services that may not be covered or may not have been delivered, (b) duplicate charges, and (c) charges beyond the reasonable, necessary, and U&C guidelines as determined by the Plan. In addition, please refer to the section entitled "Claim Review and Audit Program" for information regarding Plan provisions related to the audit and adjudication of certain eligible Claims under that Program."

The SPD section under the "Schedule of Benefits" which describes the PPO and non-PPO benefits includes hospitals as a Level I provider. Benefits for Level I providers are based upon the Allowable Claim Limits.

The SPD includes a section entitled, "Major Medical Plan Exclusions and Limitations", which states:

- "Charges in excess of Usual and Customary charges, in excess of Allowable Claim Limits or charges not recommended and approved by a Physician."

The Plan's SPD definition of Covered Medical Expenses states:

"The Usual and Customary (U&C) charges, Allowable Claim Limit charges and/or contracted PPO charges incurred by or on behalf of a Covered Person for the Hospital or other medical services listed below which are:

1. Ordered by a Physician or licensed Practitioner;
2. Medically Necessary for the treatment of an Illness or Injury;
3. Not of a luxury or personal nature; and
4. Not excluded under the Major Medical Exclusions and Limitations section of this Plan.

The Plan section for Comprehensive Medical Benefits states:

### HOSPITALS, AMBULATORY SURGERY CENTERS AND DIALYSIS FACILITIES
These types of facilities do not participate in the PPO Network. Charges for services rendered in these facilities will be evaluated under the Claim Review and Audit Program, and Covered Charges will be

determined based upon the Allowable Claim Limits. Please refer to the Claim Review and Audit Program section for additional information about the program and Allowable Claim Limits.

The Plan fully describes the Claim Review and Audit Program, and defines Allowable Claim Limits, in pertinent part, as follows:

"Allowable Claim Limits" means the charges for services and supplies, listed and included as Covered Medical Expenses under the Plan, which are Medically Necessary for the care and treatment of Illness or Injury, but only to the extent that such fees are within the Allowable Claim Limits. Determination that a charge is within the Allowable Claim Limit will be made by the Plan Administrator and will include, but not be limited to, the following guidelines:

1. Hospital: The Allowable Claim Limit for charges by a Hospital facility and for charges by facilities which are owned and operated by a Hospital may be based upon 112% of the Hospital's most recent departmental cost ratio, reported to the Centers for Medicare and Medicaid Services ("CMS") and published in the American Hospital Directory as the "Medicare Cost Report" (the "CMS" Cost Ratio"), or may be based upon the Medicare allow

... The Plan Administrator reserves the right, in its sole discretion, to determine any Allowable Claim Limit amount for certain conditions, services and supplies using accepted industry-standard documentation, uniformly applied without discrimination to any Covered Person.

Determinations that a charge is within the Allowable Claim Limit are made by the Plan Administrator, using highly qualified and credentialed experts to perform the claim audit according to well-established and recognized industry-standard resources. Such industry-standard resources include, but are not limited to:

• American Hospital Directory is a source for information on hospital and facility claims data and costs associated with room and board and other ancillary charges. The database of information is hospital-specific and is built from Medicare claims data, cost reports, and other public use files obtained from the federal Centers for Medicare and Medicaid Services (CMS).

## REASONS FOR DECISION

The Plan excludes any charges which are in excess of the Allowable Claim Limits as explained above.

### Specific Reasons for Denial

The following internal rules, guidelines, protocols, or other similar criteria were relied upon in making this claim determination:

• The Allowable Claim Limits for hospital charges adjusted under Reason Code "H" are based upon the departmental specific cost to charge ratio as those ratios have been reported by the facility itself to the Center for Medicare and Medicaid Services (CMS), plus an additional 12%.

Medical or vocational expert(s) have been consulted in connection with this claim.

**Additional Information Necessary to Perfect the Claim**

For any charges excluded in the calculation of Allowable Claim Limits, you will find an Adjustment Code explanation in the audit review report. Following is an explanation of what is required in order for you to perfect the claim for benefits for each Adjustment Code:

Adjustment Code 'H': Hospital Outpatient. Allowable Claim Limits have been determined using the most recent departmental specific cost to charge ratio as those ratios have been reported by the facility itself to the Center for Medicare and Medicaid Services (CMS). **Please submit documentation for any adjustment to the cost/charge ratio and/or actual costs to the provider for specific services or supplies.**

If the reimbursement allowed under the Plan should be reconsidered based upon actual costs to the provider, or if the costs reported to CMS have not been correctly allocated to the revenue codes billed, we encourage you to explain this and include supporting documentation. In the interest of providing a full and fair review of the determination of covered expenses and any issues raised regarding the ability of the Plan to determine benefits in accordance with the Claim Review and Audit Program, ELAP will authorize an expert independent legal and/or medical review on appeal. You will be provided with the complete results of the review and the credentials of the reviewer. For your convenience, we are enclosing a copy of the audit report.

## APPEAL OF DECISION

**Full and Fair Review of All Claims**

In cases where a claim for benefits is denied, in whole or in part, and the claimant believes the claim has been denied wrongly, the claimant may appeal the denial and review pertinent documents. The claims procedures of this Plan provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination. More specifically, the Plan provides:

(1) Claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination;

(2) Claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;

(3) For a review that does not afford deference to the previous adverse benefit determination and that is conducted by the Plan Administrator, who shall be neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual;

(4) For a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in any prior benefit determination;

(5) That, in deciding an appeal of any adverse benefit determination that is based in whole or in part upon a medical judgment, the Plan Administrator shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment, who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual ;

(6) For the identification of medical or vocational experts whose advice was obtained on behalf of the Plan in connection with a claim, even if the Plan did not rely upon their advice; and

(7) That a claimant will be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits in possession of

the Plan Administrator or the Third Party Administrator; information regarding any voluntary appeals procedures offered by the Plan; any internal rule, guideline, protocol or other similar criterion relied upon in making the adverse determination; and an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's medical circumstances.

### Requirements for Second Appeal

If you elect to file a second appeal, that appeal must be in writing and filed within 60 days following receipt of this notification. That appeal must be addressed as follows:

**Nicole B. Guerin**
**Appeal Services**
**ELAP Services, LLC**
**961 Pottstown Pike**
**Chester Springs, PA 19425**

It is your responsibility to submit proof that the claim for benefits is covered and payable under the provisions of the Plan. Any appeal must include:

(1) The name of the Employee/Plan member;

(2) The Employee/Plan member's social security number;

(3) The group name or identification number;

(4) All facts and theories supporting the claim for benefits. **Failure to include any theories or facts in the appeal will result in their being deemed waived. In other words, the Plan member will lose the right to raise factual arguments and theories which support this claim if the Plan member fails to include them in the appeal;**

(5) A statement in clear and concise terms of the reason or reasons for disagreement with the handling of the claim; and

(6) Any material or information that the Plan member has which indicates that the Plan member is entitled to benefits under the Plan.

If you provide all of the required information, it may be that additional health benefits will be available under the Plan.

### Timing of Notification of Benefit Determination on Second Appeal

The Plan Administrator shall notify you and the claimant of the Plan's benefit determination on review within a reasonable period of time. Such notification shall be provided not later than 30 days after receipt by the Plan of the request for review.

The period of time within which the Plan's determination is required to be made shall begin at the time an appeal is filed in accordance with the procedures of this Plan, without regard to whether all information necessary to make the determination accompanies the filing.

**Manner and Content of Notification of Benefit Determination on Second Appeal**
Adverse benefit determination means a denial, reduction, termination of or a failure to provide or make payment, in whole or in part, for a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's eligibility to participate in the plan. The plan will provide written or electronic notification of the adverse benefit determination, however, in the case of urgent care claims, notification may be oral. The notice will state:

(1) The specific reason or reasons for the denial;

(2) Reference to the specific portion(s) of the summary plan description on which the denial is based;

(3) The identity of any medical or vocational experts consulted in connection with the claim, even if the Plan did not rely upon their advice;

(4) A statement that the Plan member is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Plan members claim for benefits;

(5) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided free of charge to the Plan member upon request;

(6) If the adverse benefit determination is based upon a medical judgment, a statement that an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan member's medical circumstances, will be provided free of charge on request;

(7) A description of any additional information necessary for the Plan member to perfect the claim and an explanation of why such information is necessary;

(8) A description of the Plan's review procedures (including instructions that all second appeals must be sent to both the Plan Administrator and the DDM) and the time limits applicable to the procedures;

(9) A statement of the Plan member's right to bring an action under section 502(a) of ERISA, following an adverse benefit determination on final review; and

(10) The following statement: You and your Plan may have other voluntary alternative dispute resolution options, such as meditation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your state insurance regulatory agency."

**Furnishing Documents in the Event of an Adverse Determination**
In the case of an adverse benefit determination on review, the Plan Administrator shall provide, such access to, and copies of, documents, records, and other information described in items (3) through (6) of the section relating to "Manner and Content of Notification of Benefit Determination on Appeal" as appropriate.

**Decision on Second Appeal to be Final**

If, for any reason, the Plan member does not receive a written response to the appeal within the appropriate time period set forth above, the Plan member may assume that the appeal has been denied. The decision by the Plan Administrator or other appropriate named fiduciary of the Plan on review will be final, binding and conclusive and will be afforded the maximum deference permitted by law. **All claim review procedures provided for in the Plan must be exhausted before any legal action is brought. Any legal action for the recovery of any benefits must be commenced within One year after the Plan's claim review procedures have been exhausted.**

You and the Plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your state insurance regulatory agency.

If you have any questions regarding this notice, please feel free to contact the undersigned.

Very truly yours,

Tom Rogers

Tom Rogers
Manager, Appeals Processing

cc:     MBA for
        Check/City Softwise

From: (610) 321-1000     Origin ID: NMZA     
Jo Ann Sopko

981 Pottstown Pike

Chester Springs, PA 19425

J141014020X0326

SHIP TO: (610) 321-1038     **BILL SENDER**
**Tina Perry, Appeals Specialist**
**Intermountain Revenue Cycle Org.**
**1104 Country Hills Drive**
**Suite 300**
**OGDEN, UT 84403**

Ship Date: 30MAY14
ActWgt: 1.0 LB
CAD: 103568369/INET3490

Delivery Address Bar Code

Ref #     Appeals Response
Invoice #
PO #
Dept #

**WED - 04 JUN AA**
**EXPRESS SAVER**

TRK#  7701 4649 2491
0201



**84403**
UT-US

**SLC**

**SH OGDA**

522G (/02/23/P220

Plaintiffs' Exhibit 47

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

**CARRIE STEPHENS**
DIRECT DIAL: 404.991.3787
E-MAIL: CARRIE.STEPHENS@LEWISBRISBOIS.COM

June 20, 2014

## VIA U.S. MAIL

Manager, Patient Accounts
Primary Children's Hospital
c/o Intermountain Healthcare
4646 Lake Park Blvd
Salt Lake City, UT 84120

|  | RE: | **Patient:** | **R****        M** |
|--|-----|--------------|---------------------|
|  |     | **Account No.:** | **138-77460749** |
|  |     | **Claim No.:** | **201311220462** |
|  |     | **Date of Service:** | **November 11, 2013** |
|  |     | **Plan Name:** | **Check City/Softwise Health Benefit Plan** |

Dear Sir or Madam:

I write this letter to inform you that this firm represents the above-mentioned patient, R        M      , in connection with the above matter. From this point forward, please direct all communication regarding this matter to Carrie Stephens and not to R        M      . Please cease direct communications with R      . M    immediately.

This letter follows a letter of March 27, 2014 you received from MBA Benefit Administrators, Inc. regarding the Check City/Softwise Health Benefit Plan (the "Plan"), of which R        M     is a participant. The focus of that letter to you, and this letter as well, is the difference between the original amount of $29,663.78 billed by Primary Children's Hospital and the eligible amount covered by the Plan, less any applicable deductible, which amounted to $4,373.75 and which was paid to Primary Children's Hospital on or about March 27, 2014.

In the letter from MBA Benefit Administrators, Inc., you were made aware of the ERISA appeal process in the event of an Adverse Benefit Determination. This letter will again remind you of the appeal process, as well as the 180 day deadline within which Primary Children's Hospital may file such an appeal. I am not in a position to give you legal advice, as I represent the aforementioned client in this matter, but Primary Children's Hospital is again encouraged to avail

June 20, 2014
Page 2

itself of the appeals process if it does not believe it was properly reimbursed by receipt of $4,373.75.

My client stands by the audit of the medical bills in connection with the above-referenced date(s) of service. Primary Children's Hospital billed R    M    in the amount of $29,663.78 for the treatment received on November 11, 2013. The independent audit performed during this claim determined the amount that should be paid, and Primary Children's Hospital has been timely paid the appropriate amount of $4,373.75 on or about March 27, 2014. This amount paid was the Allowable Claim Limit of 112% of the department-specific cost-ratio, as reported to CMS. This payment constitutes fair reimbursement for the medical care provided. We are prepared to defend the audit and payment made in this case against any further collection attempts by Primary Children's Hospital or its agents.

Additionally, on behalf of R    M    , this letter hereby revokes any waiver of R    M    's HIPAA privacy rights as obtained by Primary Children's Hospital and also revokes any previous HIPAA authorizations that would enable Primary Children's Hospital to disseminate any of Richard Musick's confidential medical records or information. This revocation of authorization does not revoke any authorization that R    M    has provided which authorizes the provision of Protected Health Information to R    M    's undersigned attorneys and their staff.

Again, if you have any further questions, please contact me and not my client. Further attempts by Primary Children's Hospital to balance bill R    M    will be evaluated with respect to applicable state law. The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation.

Sincerely,

Carrie Stephens for
LEWIS BRISBOIS BISGAARD & SMITH LLP

KA:rs
cc:    R    M

Plaintiffs' Exhibit 48

**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

CARRIE STEPHENS
Direct Dial: 404-991-3787
E-mail: carrie.stephens@lewisbrisbois.com

June 23, 2014

## VIA U.S. MAIL

Manager, Patient Accounts
Primary Children's Medical Center
c/o Intermountain Healthcare
4646 Lake Park Blvd
Salt Lake City, UT 84120

| RE: | **Your Patient:** | **R        M        (minor)** |
|-----|-------------------|-------------------------------|
|     | **Encounter No.:** | **138-77323293** |
|     | **Claim No.:** | **201310300136** |
|     | **Date of Service:** | **October 17, 2013 – October 20, 2013** |
|     | **Plan Name:** | **Check City/Softwise Health Benefit Plan** |

Dear Sir or Madam,

    I write this letter to inform you that this firm represents the above-mentioned patient, R
M    , and plan participant Spencer Musick in connection with the above matter. From this point
forward, please direct all communication regarding this matter to Carrie Stephens and not to R        or
Spencer Musick. Please cease direct communications with the Musick family immediately.

    Spencer Musick is a participant in the Check City/Softwise Health Benefit Plan ("the Plan").
On January 9, 2014, the Plan's administrator, MBA Benefit Administrators, Inc. ("MBA"), sent
Primary Children's Medical Center a payment and a Notice of Adverse Benefits Determination. In this
letter, MBA explained that R        M        's hospital bill had been reviewed and audited. Because
certain charges were found to exceed the Plan's Allowable Claim Limit, those charges were denied.
The charges within the Allowable Claim Limit were paid by the Plan on that date.

    In an effort to resolve disputes and ensure fairness, the Plan allows for a medical provider to
appeal the results of the claim review and audit should the provider believe these determinations were
made in error. The requirements for such an appeal by a provider of services were fully explained in
MBA's January 9, 2014 letter to Primary Children's Medical Center. Among these enumerated

4829-1439-8235.1

June 23, 2014
Page 2

requirements was the fact that, "[p]roviders requesting such appeal rights under the Plan must agree to pursue reimbursement for covered medical expenses directly from the Plan, waiving any right to recover such expenses from the claimant." (emphasis in original.) MBA's letter reiterates two separate times – once in bold face – that by exercising its privilege to appeal, Primary Children's Medical Center would waive its right to recover expenses from Spencer Musick.

Primary Children's Medical Center filed a first appeal to ELAP Services, LLC, the Plan's Designated Decision Maker on April 24, 2014. By exercising its privilege to appeal, Primary Children's Medical Center agreed "to pursue recovery of certain denied expenses directly from the Plan and waiv[e] any right to recover those certain expenses from the Plan participant." This was confirmed in ELAP's response to the appeal on May 30, 2014. **Primary Children's Medical Center informed decision to appeal means it has waived its right to balance bill this patient on this claim.**

The Musick family received a balance bill from Intermountain Healthcare as recently as June 10, 2014, indicating that Primary Children's Medical Center has impermissibly violated the terms of the appeal. If you have any questions about the appeal process, please contact me. **In the interim, cease all billing attempts against the Musick family immediately.**

Additionally, on behalf of Spencer Musick, this letter hereby revokes any waiver of R M 's HIPAA privacy rights as obtained by Primary Children's Medical Center and also revokes any previous HIPAA authorizations that would enable Primary Children's Medical Center to disseminate any of R M 's confidential medical records or information. This revocation of authorization does not revoke any authorization that Spencer Musick has provided which authorizes the provision of Protected Health Information to the undersigned attorneys and their staff.

The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation. Please contact me if you have any questions. Thank you for your assistance in this matter.

Sincerely,

Carrie Stephens for
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:     Spencer Musick

4814-3641-3220, v. 1

Plaintiffs' Exhibit 59

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

LINDSAY FORLINES                                September 16, 2014
DIRECT DIAL: 404.991.2163
E-MAIL: LINDSAY.FORLINES@LEWISBRISBOIS.COM

## VIA U.S. MAIL

Manager, Patient Accounts
Intermountain Healthcare
Patient Financial Services
4646 W. Lake Park Blvd.
Salt Lake City, UT 84120

| | | |
|---|---|---|
| **RE:** | **Patient:** | **R     M     (Guardian Danielle Musick)** |
| | **Patient Account No.:** | **107-540201053** |
| | **Date of Service:** | **multiple, including September 8, 2013; January 24, 2014; December 13, 2013; March 29, 2014; January 3, 2014; February 4, 2014** |
| | **Plan Name:** | **Check City/Softwise Health Benefit Plan** |
| | **Alleged Amount:** | **$97,008.42** |

Dear Sir or Madam:

I write this letter to remind you that this firm represents the above-mentioned patient, R     M     (and Guardian Danielle Musick), in connection with the above matter. From this point forward, please direct all communications regarding this matter to Lindsay Forlines and _not_ to R     M     (or Danielle Musick). Please cease direct communications with R     M     and/or Danielle Musick immediately.

I write this letter in response to a statement dated September 4, 2014 that Intermountain Healthcare sent directly to my client. The statement reflects an alleged amount due of $97,008.42.

Page 2

My client denies owing the amount alleged due to Intermountain Healthcare. R      M      and Danielle Musick stand by the audit of the medical treatment you previously received in connection with the above-referenced date of service.

If you have any further questions, please contact Lindsay Forlines. The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation.

Sincerely,

Lindsay Forlines for
LEWIS BRISBOIS BISGAARD & SMITH LLP

LF:an
cc:     Danielle Musick)

4820-7765-5070.1

Plaintiff's Exhibit 64

**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

**CARRIE STEPHENS**
DIRECT DIAL: 404.991.3787
E-MAIL: CARRIE.STEPHENS@LEWISBRISBOIS.COM

October 1, 2014

**VIA U.S. MAIL**

Manager, Patient Accounts
Primary Children's Medical Center
c/o Intermountain Healthcare
4646 W Lake Park Boulevard
Salt Lake City, UT 84120

> RE: **Patient:**                 **Richard Musick (minor)**
>         **Patient Account No.:**     **138-77460749**
>         **Date of Service:**         **November 11, 2013**
>         **Plan Name:**              **Check City/Softwise Health Benefit Plan**
>         **Alleged Amount:**       **$25,290.03**

Dear Sir or Madam:

        I write this letter to remind you that this firm represents the above-mentioned patient, Richard Musick, and plan participant Danielle Musick in connection with the above matter. From this point forward, please direct all communications regarding this matter to Carrie Stephens and _not_ to Richard Musick or Danielle Musick. Please cease direct communications with the Musick family immediately.

        I write this letter in response to a statement dated September 4, 2014 that Primary Children's Medical Center sent directly to my client. The statement reflects an alleged amount due of $25,290.03. My client denies owing the amount alleged due to Primary Children's Medical Center. Danielle Musick stands by the audit of the medical treatment you previously received in connection with the above-referenced date of service.

October 1, 2014
Page 2


      If you have any further questions, please contact Carrie Stephens. The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation.

                                        Sincerely,


                                        Carrie Stephens for
                                        LEWIS BRISBOIS BISGAARD & SMITH LLP

CS:an
cc:    Danielle Musick

Plaintiff's Exhibit 65

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

**ALISON LEE CURRIE**
DIRECT DIAL:404.567.6587
E-MAIL: ALISON.CURRIE@LEWISBRISBOIS.COM

October 7, 2014

**VIA U.S. MAIL**

Manager, Patient Accounts
American Fork Hospital
170 North 1100 East
American Fork, UT 84003

|  | | |
|---|---|---|
| **RE:** | **Patient:** | **Richard Musick (minor)** |
| | **Patient Account No.:** | **FA11832700072** |
| | **Date of Service:** | **March 10, 2014** |
| | **Plan Name:** | **Check City/Softwise Health Benefit Plan** |
| | **Alleged Amount:** | **$97,008.42** |

Dear Sir or Madam:

I write this letter to remind you that this firm represents the above-mentioned patient, Richard Musick, and plan participant, Spencer Musick, in connection with the above matter. Please direct all communication regarding this matter to Alison Currie and _not_ to Richard or Spencer Musick.  Please cease direct communications with the Musicks immediately.

I write this letter in response to a statement dated September 23, 2014, that American Fork Hospital sent directly to my client. The statement reflects an alleged amount due of $97,008.42. My client denies owing the amount alleged due to American Fork Hospital.  Richard Musick stands by the audit of the medical treatment you previously received in connection with the above-referenced date of service.

If you have any further questions, please contact Lewis Brisbois Bisgaard & Smith, LLC. The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation

Sincerely,

Alison L. Currie for
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:     Spencer  Musick