Stephen E. W. Hale (5285)
Bentley J. Tolk (6665)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
btolk@parrbrown.com
shale@parrbrown.com

John W. Mackay (6923)
Brett L. Tolman (8821)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
jmackay@rqn.com
btolman@rqn.com

Thomas E. Lavender III (pro hac vice forthcoming)
Kristopher R. Alderman (pro hac vice forthcoming)
**FISHER BROYLES, LLP**
945 East Paces Ferry Road, Suite 2000
Atlanta, Georgia 30326
Telephone: (404) 400-4500
Facsimile: (404) 596-8887
ted.lavender@fisherbroyles.com
kris.alderman@fisherbroyles.com

*Attorneys for Defendant ELAP Services, LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., a non-profit Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>ELAP SERVICES, LLC, a limited liability company,<br><br>Defendant. | **REPLY MEMORANDUM IN SUPPORT OF ELAP'S PARTIAL MOTION TO DISMISS**<br><br>**(Oral Argument Requested)**<br><br>Case No. 2:17-cv-01245-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

Defendant ELAP Services, LLC hereby files this reply memorandum in support of its partial motion to dismiss the second, third, fourth, and fifth claims for relief pled in the Second Amended Complaint (the "SAC") filed by Plaintiff IHC Health Services, Inc. (hereinafter "IHC").

## ARGUMENT

In its Opposition to ELAP's Partial Motion to Dismiss, IHC takes a novel approach to the well-established elements of the claims at issue. IHC searches through its SAC to shoehorn otherwise clear allegations to meet elements when those allegations in reality are unsupportive.

**I.  Although IHC Concedes It Did Not Rely on Any Misrepresentations Allegedly Made by ELAP, IHC Seeks to Impose Liability for Fraud Based on an Unprecedented Theory Unsupported by Law or Citation to Authority.**

Fraud carries a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). Further, each element of fraud must be pled with particularity. *Id.* However, IHC fails to allege several of the required elements, including when the purported statements were made, the substance of the purported statements, who made the statements, and to whom the purported statements were made. General fraud allegations cannot be a pathway to discovery. *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000). Not even IHC's brief attempts to answer these questions. In fact, IHC concedes this issue in its brief: "the time, place, and manner of ELAP's misrepresentations to Members are not yet identified."[1] While the SAC includes dates when IHC admitted patients, those dates are insufficient because the dates as a matter of law must relate to when the allegedly false representations were made.

---

[1] Intermountain's Opposition to Motion for Partial Dismissal (hereinafter "Opposition") (Dkt. No. 41) at 15.

More specifically, the Court previously found that "the allegedly false statements were made to ELAP Plans or Plan Members, not to IHC. And because IHC vigorously contests the accuracy of those statements, it cannot plausibly allege that it reasonably relied on them." (Prior Motion to Dismiss Order at 15–16.) However, nothing has changed in this regard in the SAC. IHC asserts "ELAP is directly responsible for the false promises that Members make to pay Intermountain's bill without any intent to do so and that Intermountain relies on those promises to its detriment."[2] Utah law permits a party to recover for fraudulent statements **only** where the maker of the statement had reason to believe the statement would be repeated to the plaintiff and the plaintiff would rely on the statement. *Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶ 29 n.12, 78 P.3d 616. This Court previously recognized this was the applicable standard.[3] IHC fatally admits it "does not allege reliance on the verbatim repetition of the statements ELAP made to its Members."[4] IHC contends ELAP defrauded it by allegedly making false statements to Members causing Members to make completely different false promises to IHC.

Specifically, IHC claims that ELAP told Members they could go to IHC and would not have to pay balance bills; that Members told IHC they would pay balance bills; and that IHC relied on the Members' alleged statements.[5] IHC does not cite any authority—and ELAP is not aware of any—to support a claim for fraud where the allegedly false statements made to third parties are not repeated to the plaintiff. Here, the allegedly false statement purportedly made by Members to IHC is the exact opposite of the allegedly false statement purportedly made to

---

[2] Opposition at 3.
[3] Memorandum Decision and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss with Leave to Amend (hereinafter, "Prior Motion to Dismiss Order") (Dkt. No. 29) at 15 n.8.
[4] Opposition at 5.
[5] SAC at ¶¶ 64–65 and 73–74; Opposition at 5–6.

Members by ELAP; *i.e.*, IHC alleges ELAP told Members they would not have to pay IHC and alleges Members told IHC they would pay.[6] IHC's admissions that it did not rely on the allegedly false statements made by ELAP, and that those false statements were not communicated to IHC, are fatal to IHC's fraud claim. *See Carson*, 2003 UT App 316, ¶ 29 n.12.

Additionally, IHC responds that it "relies on false promises made in Patient Agreements."[7] This is an unjustifiable expansion of *Carson*. The Patient Agreement is a document created by IHC, not ELAP. It is a document signed by the patient, not ELAP. It is a document upon which IHC claims to rely. ELAP made and makes no representations to IHC, and none are alleged or even alleged to have been repeated. *See also Ellis v. Hale*, 373 P.2d 382, 385 (Utah 1962) (party must intend that the content of misrepresentation be repeated); *Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶ 29 n.12 (party must intend that the substance of communication be repeated). Moreover, even taking the allegations as true, IHC alleges elsewhere in the SAC that ELAP purposely hides its involvement by omitting its involvement.[8] The allegations in the SAC will control over new argument found in the Opposition.

Recognizing it cannot plead a fraud claim based on ELAP's alleged statements, IHC pivots and without support asserts the Members are ELAP's agents, such that any allegedly false statements made by Members to IHC are attributable to ELAP. This is a novel theory brought up in a response brief and is unsupported by the alleged facts.

---

[6] SAC at ¶¶ 64, 74.
[7] Opposition at 5.
[8] *See, e.g.*, SAC at ¶ 39.

As IHC states, an agency relationship requires the existence of three elements: "(1) the principal must manifest its intent that the agent act on its behalf, (2) the agent must consent to so act, and (3) both parties must understand that the agent is subject to the principal's control." *Sutton v. Miles*, 2014 UT App 197, ¶ 10, 333 P.3d 1279. IHC carefully selects unsupportive allegations to shoehorn this claim. None of the paragraphs isolated by IHC supports the first element. ELAP has never asked a Member to act on its behalf. Indeed, the allegations indicate that the Members are simply instrumentalities, and not agents.[9]

IHC next suggests that because unidentified members on unspecified dates have made unspecified fraudulent comments, that the Court may infer that the members are consenting to act. This argument is exactly what Rule 9(b) and the federal pleading standard were meant to prevent, and the argument fails to meet the pleading standard. In fact, the entire SAC reads as a conspiracy theory where ELAP uses members as mere instrumentalities, and not as agents.

For the third element, IHC relies on marketing materials sent to Plans and employers to suggest that the Members understand ELAP is in control. However, IHC ignores the rest of its SAC to make this allegation. Throughout the SAC, IHC alleges that ELAP merely "encourages" Members to disregard the Patient Services agreement.[10] IHC does not allege that ELAP controls or requires such conduct. And furthermore, IHC alleges that ELAP hides information from the Members.[11] Finally, and fatally, the SAC indicates that ELAP merely encourages the employers in Utah to adopt an ERISA plan.

---

[9] SAC at ¶ 74.
[10] SAC at ¶¶ 31, 65, 69, 72, 93, 95, 99, 114.
[11] SAC at ¶¶ 37–38.

IHC next alleges ratification of the actions to satisfy the third element of an agency relationship. This is a tertiary argument, and the express allegations in the SAC foreclose this issue. Indeed, the allegations identified above show that there is no control; no understanding of control; and no allegation of consent. The allegations of the SAC fail to support this new theory.

## II. IHC Fails to Support its Negligent Misrepresentation Claim.

IHC takes another novel swing at a well-established cause of action. In addition to the other elements of fraud, to state a claim for negligent misrepresentation, IHC must allege that ELAP:

> (1) [has] a pecuniary interest in a transaction, (2) is in a superior position to know material facts, and (3) carelessly or negligently makes a false representation concerning them, (4) expecting the other party to rely and act thereon, and (5) the other party reasonably does so and (6) suffers loss in that transaction . . . .

*Christenson v. Commonwealth Land Title Ins. Co.*, 666 P.2d 302, 305 (Utah 1983) (quoting *Jardine v. Brunswick Corp.*, 423 P.2d 659, 662 (Utah 1967)). Additionally, "liability will only lie for a negligent misrepresentation when there is a special duty of care running from the representor to the representee." *Ellis v. Hale*, 373 P.2d 382, 385 (Utah 1962). Like a claim for fraud, negligent misrepresentation claims must be pled with particularity. *Heaton v. American Brokers Conduit*, 496 F. App'x 873, 876, 2012 WL 4096284 (10th Cir. 2012); *see also Christison v. Biogen Idec Inc.*, No. 2:11-cv-01140-DN-DBP, 2014 WL 7261300, at *9 (D. Utah Dec. 18, 2014). IHC fails to allege any sort of special duty between ELAP and itself and fails to allege with specificity the dates and content of the alleged representations. Those failures are fatal.

ELAP relies on the same argument set forth above regarding fraud as to the failure to sufficiently allege the representations. Without any supporting case law, IHC attempts avoid the

special duty requirement by simply saying it may not be an element of a claim for negligent misrepresentation.[12] However, the special duty requirement is an element of the claim, and IHC fails to identify any allegations in the SAC supporting that element. ELAP has no special duty to IHC, and no such duty is alleged.

### III. IHC Fails to Identify Any Allegations Supporting its Unjust Enrichment Claim.

IHC omits important legal analysis in an attempt to shoehorn its claim of unjust enrichment. IHC generally alleges that if **anyone at all** conferred a benefit on ELAP, IHC may sustain a claim. That is not the law. Indeed, the *EPIC* case so heavily relied on by IHC states that "[t]he first element of quantum meruit requires the court to measure the benefit conferred on the defendant **by the plaintiff**." *EPIC v. Salt Lake Cty.*, 2007 UT 72, ¶ 26, 167 P.3d 1080. There, EPIC served as a billing and collection company for emergency physician groups in Utah. *Id.* ¶ 1. EPIC sued the County on behalf of those physician groups for goods and services those physicians provided to County inmates. *Id.* The court found a sufficient benefit conferred because the County "ha[d] complete control over when and where medical services are provided and therefore dictates the means by which its constitutional obligation is fulfilled." *Id.* at ¶ 27. The court further relied on the fact that had the County not contracted out to EPIC and its physician groups, the County would have had to "employ more on-site medical staff or bear increased liability for providing inadequate care." *Id.* Based on those realities of that particular

---

[12] When researching the headnote in *Ellis*, counsel for ELAP also found *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 30, 21 P.3d 219 (Billings, J. dissenting) (discussing special duty between litigants); *DeBry v. Valley Mortg. Co.*, 835 P.2d 1000, 1005–07 & n.1 (Utah Ct. App. 1992) (discussing special duty and listing cases). *Compare* Opposition at 17, n.9.

relationship, the Court found "[t]hese are real benefits that are sufficient to establish the first prong of a quantum meruit claim." *Id.*

IHC's argument does nothing more than attempt to conflate all medical care in this case into the particular fact pattern in *EPIC*. However, the two situations are significantly different. Per the SAC, ELAP markets itself to companies by explaining it can help them save money on health care costs.[13] ELAP reviews hospital bills for its clients and determines the appropriate amount of benefits to be paid by the health plan.[14] According to IHC, ELAP determines the payment amount by reference to the amounts hospitals accept from Medicare.[15] If hospitals seek to collect additional amounts from health plan members, ELAP provides a defense to the plan member.[16] Companies that hire ELAP pay fees in exchange for its services.[17]

IHC does not share the same constitutional responsibilities of the County in *EPIC*, much the same as ELAP does not perform any functions like EPIC. *See EPIC*, 2007 UT 72, ¶¶ 13–14. IHC is a successful provider of healthcare services that absent an emergent situation, can refuse to provide care.[18] ELAP is a bill auditor and does not facilitate or assist in the provision of care. IHC cannot be said to have outsourced any duties to ELAP and vice versa. Moreover, IHC did not plead these allegations in the SAC. Lastly, the Court relied on EPIC's obligations under EMTALA because those were the sole type of services that EPIC provided. *Id.* ¶ 28. The same is, again, not true here. There is no credible argument that IHC conferred any benefit on ELAP.

---

[13] SAC at ¶¶ 5, 20, 23, 29.
[14] SAC at ¶ 25.
[15] SAC at ¶ 26.
[16] SAC at ¶ 27.
[17] SAC at ¶¶ 23, 56.
[18] SAC at ¶¶ 13-19, 39.

The Court must "measure the benefit conferred on the defendant by the plaintiff." *Id.* ¶ 26. Here, there is none.

IHC argues that when it cares for its patient, it does not do so gratuitously or "for [its] own advantage" thereby attempting to distinguish *Baugh v. Darley*, 184 P.2d 335 (Utah 1947). "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Id.* at 337. IHC receives reasonable compensation from the Plan and its members. IHC identifies no benefit that it conferred on ELAP. IHC does not care for a patient for the benefit of ELAP—it cares for it to continue producing its $7,000,000,000.00 in revenue. Moreover, as stated in the SAC, care is provided to a patient, not ELAP;[19] the Plan and the member receive the bill;[20] and the Plan and/or the member then pays the reasonable value of the goods and services rendered.[21] IHC then receives the payment – payment that benefits itself, and which contributes to IHC's $7 billion in revenue.[22]

The SAC identifies no benefit that IHC conferred on ELAP sufficient to meet the first element. Much the same, the SAC is devoid of any allegation that ELAP appreciated any benefit conferred by IHC. Looking to the other allegations, there could not be any benefit as ELAP works directly with the Member and the Plan. Based on the services ELAP provides to the Member and the Plan, ELAP is paid by the Plan using funds it maintains pursuant to ERISA. Therefore, ELAP does not appreciate any benefit IHC conferred because there is none.

---

[19] SAC at ¶ 25.
[20] SAC at ¶ 25.
[21] SAC at ¶¶ 25–26.
[22] SAC at ¶ 26.

4815-2082-2915

Finally, ELAP provides a service to the Plan and the member. The Plan then compensates ELAP for that service. To the extent this somehow can be contrived as a benefit conferred by IHC on ELAP, it is not unjust for ELAP to maintain compensation for a service it provides.

## IV. IHC Fails to Allege a Proper Claim for Declaratory Judgment.

The declaratory judgment claim does nothing more than veil the other claims IHC makes in an improper attempt to side-step obvious deficiencies. However, where declaratory relief is premised on the existence of a substantive cause of action, relief is inherently unavailable if the substantive claim fails as a matter of law. *Long v. Wells Fargo Bank, N.A.*, 670 Fed. Appx. 670, 671 (10th Cir. 2016). As discussed above, the claims for which IHC seeks declaratory judgment are meritless. Thus, so too is the declaratory judgment action.

Furthermore, IHC has no standing. IHC has failed to allege any representation that has caused harm. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). IHC merely alleges such representations could have possibly happened but has admittedly yet to identify when or how that harm occurred. *See id.* The claimed relief similarly is premised on what are admittedly assumptions. This is the very reason why the law does not permit declaratory relief for conjectural harms. Moreover, the relief requested suffers from speculative deficiencies.

## CONCLUSION

For the foregoing reasons, and those set forth in ELAP's Partial Motion to Dismiss, ELAP respectfully requests that the Court grant ELAP's Partial Motion to Dismiss.

Respectfully submitted this 18th day of December, 2018.

PARR BROWN GEE & LOVELESS

By: /s/ Bentley J. Tolk
     Bentley J. Tolk

*Attorneys for Defendant ELAP Services, LLC*

4815-2082-2915

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December, 2018, a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF ELAP'S PARTIAL MOTION TO DISMISS** was served via electronic service on the following:

>Alan C. Bradshaw
>Chad R. Derum
>**MANNING CURTIS BRADSHAW & BEDNAR PLLC**
>136 E. South Temple, Suite 1300
>Salt Lake City, Utah 84111
>abradshaw@mc2b.com
>cderum@mc2b.com
>
>John W. Mackay
>Brett L. Tolman
>**RAY QUINNEY & NEBEKER P.C.**
>36 South State Street, Suite 1400
>Salt Lake City, Utah 84111
>Telephone: (801) 532-1500
>Facsimile: (801) 532-7543
>jmackay@rqn.com
>btolman@rqn.com

/s/ Bentley J. Tolk

4815-2082-2915