Stephen E. W. Hale (5285)
Bentley J. Tolk (6665)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
btolk@parrbrown.com
shale@parrbrown.com

John W. Mackay (6923)
Brett L. Tolman (8821)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
jmackay@rqn.com
btolman@rqn.com

Thomas E. Lavender III (pro hac vice forthcoming)
Kristopher R. Alderman (pro hac vice forthcoming)
**FISHER BROYLES, LLP**
945 East Paces Ferry Road, Suite 2000
Atlanta, Georgia 30326
Telephone: (404) 400-4500
Facsimile: (404) 596-8887
ted.lavender@fisherbroyles.com
kris.alderman@fisherbroyles.com

*Attorneys for Defendant ELAP Services, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| IHC HEALTH SERVICES, INC., a non-profit Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>ELAP SERVICES, LLC, a limited liability company,<br><br>Defendant. | **MEMORANDUM IN OPPOSITION TO INTERMOUNTAIN'S MOTION TO DISMISS COUNTERCLAIMS**<br><br>**(Oral Argument Requested)**<br><br>Case No. 2:17-cv-01245-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

Defendant ELAP Services, LLC ("ELAP"), by and through its counsel of record, hereby files this memorandum in opposition to Intermountain's Motion to Dismiss Counterclaims.

## INTRODUCTION

Through its Counterclaims, ELAP merely seeks a declaration that Intermountain's generic, boilerplate, standardized admission forms (hereinafter "Admission Forms") do not permit Intermountain to collect excessive, unreasonable, and unconscionable charges from patients, and, further, to enjoin Intermountain from using its Admission Forms to collect excessive, unreasonable, and unconscionable charges. Tellingly, Intermountain opposes this relief so that it can continue seeking to collect excessive, unreasonable, and unconscionable charges from its patients.

Intermountain sued ELAP for allegedly interfering with its Admission Forms. ELAP is not interfering with the Admission Forms, which do not mean what Intermountain contends. The conduct about which Intermountain complains is merely ELAP's defense of patients who are balance billed by Intermountain – a defense ELAP is contractually obligated to provide. So ELAP filed Counterclaims, asking the Court to declare the meaning of the Admission Forms. If ELAP can be sued for allegedly interfering with the Admission Forms, it certainly possesses standing to obtain a declaration as to their meaning. What's good for the goose is good for the gander.

Intermountain falsely characterizes ELAP's position. ELAP does not contend that Intermountain's charges are excessive, unreasonable, and unconscionable merely because they are not contained in the Admission Forms. Rather, ELAP contends Intermountain's charges are excessive, unreasonable, and unconscionable because the charges grossly exceed (1) the amounts

typically paid and accepted in the market for the same or similar goods and services; and (2) the costs to provide such goods and services. Intermountain does not need to specify the amount it intends to charge in Admission Forms so long as Intermountain only charges the reasonable value of the goods and services it provides. The law does not allow a health care provider to collect excessive, unreasonable, and unconscionable charges based on a standardized form document that does not disclose the amount of the charges or the fact that the charges will grossly exceed the reasonable value of the goods and services provided.

Intermountain brazenly claims ELAP should not seek the declaration but should instead just stop defending patients who are balance billed and tell those patients to pay the excessive, unreasonable, and unconscionable charges. In other words, Intermountain argues that ELAP should drop its Counterclaims, stop defending patients, and allow Intermountain to prey upon patients who are otherwise not equipped to defend themselves against the largest integrated health system in Utah. Plainly and simply, Intermountain is a bully, and it is upset that ELAP is standing up to Intermountain.

Finally, Intermountain pretends that ELAP's Counterclaims would require the Court to "wade deeply into political waters," act as "the spokesperson for ELAP's business model," and "fix ELAP's payment methodology as the universal gold standard for what health care should cost." All of this simply because ELAP asks the Court to conclude the Admission Forms do not permit Intermountain to collect excessive, unreasonable, or unconscionable charges. As Intermountain admits, ELAP is merely relying on "common law principals [sic]." Not only are the Counterclaims supported by time-tested, well-established common law principles, but they are supported by common sense. It should not even be controversial that a standardized, generic

4811-9519-0405

form document without a price is not an enforceable contact to pay excessive, unreasonable, and unconscionable charges.

### FACTUAL ALLEGATIONS

Intermountain asserts a claim, Count I in its Second Amended Complaint, for interference with existing and potential economic relations based on its contention that ELAP caused certain patients not to pay amounts they were contractually obligated to pay.[1] But those patients never agreed to pay Intermountain the amounts Intermountain now contends they owe.[2] Intermountain provided hospital goods and services to those patients under one of the two following circumstances:

1. Intermountain told the patients they would owe a certain amount but subsequently billed and sought to collect another amount; or

2. The patients signed a standardized form drafted by Intermountain that did not contain a specific price for the contemplated goods and services.[3]

Intermountain subsequently submitted bills for the hospital goods and services provided to those patients which were excessive, unreasonable, and unconscionable.[4] Specifically, Intermountain's charges grossly exceeded both the amounts paid and accepted in the market and the costs to provide those goods and services.[5] Intermountain's bills were first submitted to health plans, which paid Intermountain the allowable claim limits specified in the plans' governing documents.[6] Despite receiving those payments, which were equal to or greater than

---

[1] Counterclaim ("CC"), at ¶ 6–7; Second Amended Complaint ("SAC"), at ¶ 44–53.
[2] CC, at ¶ 8.
[3] CC, at ¶ 9.
[4] CC, at ¶ 10.
[5] CC, at ¶ 17.
[6] CC., at ¶ 18–22.

the reasonable value of the goods and services provided to the patients,[7] Intermountain balance billed the patients for the difference between its charges and the amount paid.[8]

ELAP has a contractual obligation to provide a defense to patients covered by certain health plans when a provider like Intermountain seeks to collect an excessive, unreasonable, or unconscionable amount.[9] ELAP has in fact provided such a defense to certain patients.[10] Intermountain contends that those patients have executed Admission Forms.[11] ELAP has no control over whether those patients choose to receive hospital goods and services at Intermountain facilities.[12]

ELAP and Intermountain fundamentally disagree on the obligations, if any, created by the Admission Forms. ELAP incurs significant – but unquantifiable – and ongoing costs, as well as administrative and operational burdens, in defending patients from whom Intermountain seeks to collect excessive, unreasonable, and unconscionable charges.[13] Accordingly, ELAP sought a declaration that the Admission Forms do not permit Intermountain to collect excessive, unreasonable, and unconscionable charges, and ELAP asked the Court to enjoin Intermountain from seeking to do so.

---

[7] CC, at ¶ 20.
[8] CC, at ¶ 23.
[9] CC, at ¶ 24.
[10] CC, at ¶ 25.
[11] CC, at ¶ 29.
[12] CC, at ¶ 35.
[13] CC, at ¶ 40–41.

4811-9519-0405

## ARGUMENT

### I.   ELAP Possesses Standing to Assert Counterclaims Related to the Admission Forms with which It Is Accused of Interfering.

The Supreme Court outlined the Article III case or controversy requirement as one rooted in determining whether there is a legitimate dispute between the parties:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune, Inc. v. Genetech, Inc.*, 549 U.S 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Standing is an element of the case or controversy requirement. *Philadelphia Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1335 (10th Cir. 2017). To establish standing, a plaintiff must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.*

The allegations of the Counterclaims clearly demonstrate that ELAP satisfies the Article III case or controversy requirement and possesses standing. As an initial matter, Intermountain cannot reasonably dispute that the parties have adverse legal interests and a substantial controversy that is sufficiently immediate and real as to the meaning of the Admission Forms. *See MedImmune*, 549 U.S. at 127. Intermountain contends the Admission Forms created binding contracts to pay whatever amount it billed, and that ELAP interfered with such contracts. On the other hand, ELAP denies the Admission Forms created such obligations and, as a result, its conduct was not improper. Plainly, the parties dispute the meaning of the Admission Forms.

6

With respect to standing, ELAP has a contractual obligation to defend certain patients when they are charged excessive, unreasonable, and unconscionable amounts. Of course, as ELAP alleged, there is no doubt that providing a defense is, among other things, a financial detriment. The cost of providing a defense is incurred by ELAP when Intermountain seeks to collect excessive, unreasonable, and unconscionable charges from those patients ELAP is obligated to defend. Thus, the injury – the burden of providing defenses – is causally connected to the conduct complained of, *i.e.,* using the Admission Forms to attempt collection of excessive, unreasonable, and unconscionable charges. If ELAP's requested relief is granted, the injury will be redressed because ELAP will not have to defend patients against Intermountain's attempts to collect excessive, unreasonable, and unconscionable charges. This is all that ELAP is required to show to establish standing. Intermountain's attacks on standing, which are discussed below, lack merit.

A.   **ELAP Is Injured by Intermountain's Attempts to Collect Excessive Charges.**

Initially, Intermountain makes the outrageous accusation that ELAP manufactured the dispute over the Admission Forms. Intermountain initiated this civil action by suing ELAP for allegedly interfering with Admission Forms. It is not logical for Intermountain to make that claim, and then to contend ELAP has no legal interest in the Admission Forms when Intermountain sued ELAP for allegedly interfering with the Forms.

Intermountain also contends ELAP has not suffered an injury because the only injury claimed is the costs of defending patients after Intermountain seeks to collect its excessive, unreasonable, and unconscionable charges. It relies on *Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Center Board of Trustees*, 19 F.3d 241, 244

7

(5th Cir. 1994) and *Conservative Baptist Association of America, Inc. v. Shinseki*, 42 F. Supp. 3d 125 (D.D.C. 2014) for the proposition that costs and burdens incurred providing a contractually obligated defense cannot confer standing. Those cases are inapposite. They merely hold that a plaintiff cannot bootstrap standing by incurring costs of bringing the suit in which it seeks to establish standing. *Conservative Baptist*, 42 F. Supp. 3d at 131 ("an organization may not manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit"); *Dallas County*, 19 F.3d at 244 (plaintiff's "argument implies that any sincere plaintiff could bootstrap standing by expending its resources in response to actions of another").

ELAP does not contend the injury conferring standing is the cost of bringing its Counterclaims or even defending the claims asserted by Intermountain in this action. Instead, the injury is having to defend patients from whom Intermountain seeks to collect excessive, unreasonable, and unconscionable charges on the basis of Intermountain's erroneous interpretation of the Admission Forms. This is an injury flowing from the complained of conduct that can be redressed by a favorable ruling, *i.e.*, granting the requested declarations and injunctions.

Intermountain also cites *D.M. Johnson Family Trust v. Countrywide Home Loans, Inc.*, No. 2:09-cv-317-DAK, 2009 U.S. Dist. LEXIS 101054 (D. Utah Oct. 28, 2009). Intermountain seemingly cites this as support for the erroneous contention that money ELAP spends as a result of its contracts with third parties is not a cognizable injury, but a self-inflicted wound. However, *D.M. Johnson* merely held that loans taken out by a third party for the benefit of the plaintiffs could not be the injury upon which plaintiffs' standing rests. *D.M. Johnson*, 2009 U.S. Dist. LEXIS 101054, at *9. The court also concluded there was no causal nexus between the claimed

injury and the defendants' conduct. *Id.* Specifically, the defendants provided loans to a third party that failed to make payments and led to the possibility of a short sale by the defendants. *Id.* at 10. The defendants' conduct had no bearing upon the failure to make payments on the loans. *Id.*

Here, Intermountain's conduct in using the Admission Forms to attempt to collect excessive charges from its patients has a direct connection to the injury suffered by ELAP. Intermountain attempts to argue that this cannot be an injury because it actually benefits ELAP. Common sense, logic, and ELAP's allegations all demonstrate otherwise – providing a defense is a concrete, financial detriment or loss to ELAP.

Finally, Intermountain reasons that it would prefer that ELAP not provide a defense, and thus suffer no injury. This preference does not change the fact that ELAP suffered an injury. If mere preference that an injury not result from one's actions were sufficient to preclude a showing of injury, ordinary negligence would cease to exist.

### B.    Intermountain Caused ELAP's Injury.

As discussed above, ELAP's injury – having to provide a defense – was caused by Intermountain's efforts to use the Admission Forms as a sword to collect excessive, unreasonable, and unconscionable charges. But for Intermountain's efforts to collect excessive charges, ELAP would not have suffered an injury.

Intermountain first contends that the cause of ELAP's injury is the decision to pay less than Intermountain's charges, rather than Intermountain's decision to collect excessive charges. This is false and contrary to the allegations of the counterclaims. Specifically, "ELAP has a contractual obligation to provide a defense to Patients where, as here, [Intermountain] seeks to

9

collect excessive, unreasonable, and unconscionable amounts."[14] Put another way, health plans can pay less than Intermountain's billed charges, but ELAP is not required to provide a defense until Intermountain seeks to collect excessive amounts. It is the attempt to collect excessive charges, not the payment of a reasonable amount, that triggers ELAP's defense obligation.

Next, Intermountain contends its patients cause ELAP's injury by deciding to receive treatment at Intermountain. But the receipt of treatment at an Intermountain facility does not trigger ELAP's defense obligation. As alleged, that obligation is only triggered later, if Intermountain seeks to collect the excessive, unreasonable, and unconscionable portion of its charges. Patients can receive treatment at Intermountain without ELAP ever becoming obligated to provide a defense so long as Intermountain never seeks to collect excessive charges. Again, it is Intermountain's decision to do so that causes ELAP's injury.

### C. A Favorable Ruling Will Redress ELAP's Injury.

ELAP is obligated to defend certain patients. Intermountain has caused ELAP to provide a defense to many patients based on its use of the Admission Forms to attempt to collect excessive, unreasonable, and unconscionable charges. To redress this injury, ELAP seeks a declaration and injunction that prevents Intermountain from using the Admission Forms to collect excessive charges. Plainly, the requested relief will redress the injury.

Intermountain argues that ELAP will still have to incur defense costs. In an attempt to illustrate its contention, Intermountain speculates that if the court grants the relief, Intermountain might reduce its charges to $1 more than the reasonable value of the goods and services. Of course, if that is the net result of ELAP's Counterclaims, it will be a successful outcome, since

---

[14] CC, at ¶ 24.

the parties will not litigate over $1, and the injury for all practical purposes will have been redressed. The issue here is simple: ELAP suffers an injury when Intermountain seeks to collect excessive charges under the guise of its Admission Forms. ELAP asks the Court to declare that the Admission Forms do not permit Intermountain to collect excessive charges, and to enjoin Intermountain from doing so. If the Court does this, ELAP's injury will be redressed unless Intermountain violates the Court's order.

### D. ELAP Is Not Raising Patients' Legal Rights.

As the above discussion has made abundantly clear, ELAP's Counterclaims are about the injury ELAP suffers, *i.e.*, providing a contractually guaranteed defense, when Intermountain seeks to collect excessive charges. ELAP is seeking to redress its injury based on its own rights. It does not seek derivative standing or assignment, or rely in any other way on the rights of the patients it is obligated to defend. Thus, ELAP concedes it cannot base its claims on the legal rights and interests of others; however, it does not follow that ELAP cannot litigate whether Intermountain's charges are excessive, unreasonable, or unconscionable, and whether the Admission Forms permit Intermountain to collect excessive, unreasonable, and unconscionable charges.

So long as ELAP establishes "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision," is has standing even if its claims relate to a contract to which it is not a party. *Philadelphia Indem.*, 845 F.3d at 1335. In *Philadelphia Indemnity*, the plaintiff had standing to seek a declaration concerning an insurance contract to which it was not a party. *Id.* In that case, a building was damaged by fire. *Id.* at 1333. The building was insured by two

11

policies, one of which was held by the owner and the other by the lessee. *Id.* at 1332. The plaintiff insurer sued the defendant insurer to obtain an interpretation of the defendant insurer's policy, to which the plaintiff insurer was not a party. The Tenth Circuit rejected the defendant's argument that plaintiff lacked standing because neither it nor its insured was a party to the defendant's contract. *Id.* at 1335–36. The court recognized that the plaintiff sought "a judicial interpretation of how *its* policy interacts with the [defendant's] policy." *Id.* at 1335. The plaintiff had standing even though it was not a party to the contract.

ELAP seeks to do precisely the same thing in its Counterclaims, *i.e.*, obtain a judicial determination of how its contract to defend certain patients interacts with Intermountain's alleged contracts with those patients. ELAP merely asks the Court to determine whether the Admission Forms mean what Intermountain contends or whether, as ELAP alleges, the Admission Forms do not permit Intermountain to collect excessive, unreasonable, and unconscionable charges. ELAP is concerned with understanding its rights and obligations, and an interpretation of the Admission Forms is necessary to reach that understanding. ELAP and Intermountain clearly have a concrete, real, and significant dispute about the meaning of the Admission Forms. That dispute can be resolved by a judicial interpretation.

## II. ELAP's Declaratory Judgment Claim and Request for Injunctive Relief Stand Alone.

Intermountain seems to contend that a party cannot seek a declaratory judgment and injunction without asserting other claims. Intermountain is patently and obviously wrong – a litigant can seek and obtain solely declaratory and injunctive relief. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973). As discussed in Section I, an action must present an actual case or controversy under Article III, which requires, among other things, standing. There is simply no doubt that

Intermountain and ELAP have an actual case or controversy involving the interpretation of the Admission Forms. Intermountain's attempts to argue otherwise are futile and belied by its own claims against ELAP, which are premised on the Admission Forms. In its Counterclaims, ELAP requests a judicial determination as to the meaning of the Admission Forms. For the reasons set forth in Section I, ELAP has standing to seek such a determination because ELAP seeks to determine its own rights and obligations.

Intermountain cites several cases that dismissed declaratory judgment claims because the relief was predicated upon separate causes of action that failed to state a claim. *See, e.g.*, *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016). Those cases do not stand for the proposition that a litigant cannot maintain a declaratory judgment action without pleading other claims as well; instead, they merely hold that if the declaratory relief is dependent upon the viability of a separate cause of action that has been dismissed, the declaratory judgment action must be dismissed as well. That is not the case here. As discussed above, ELAP's Counterclaims both satisfy the case or controversy requirement and do not depend upon judicially remediable rights asserted under any separate causes of action.

Intermountain also relies on authority stating that the Declaratory Judgment Act is procedural and does not create substantive rights. *See, e.g.*, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–240 (1937). This argument also misses the point. While it is true that the Declaratory Judgment Act does not create the substantive rights ELAP seeks to vindicate, that does not mean that ELAP can maintain a declaratory judgment action only by asserting additional causes of action. *See Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384 (10th Cir. 1978). In *Jones*, the Tenth Circuit held the trial court possessed jurisdiction over a stand-

alone declaratory judgment action brought by an insurer to determine its liability under its insurance policy. *Jones*, 570 F.2d at 1386. Recognizing the Declaratory Judgment Act "does not create substantive rights for parties; it merely provides another procedure whereby parties may obtain judicial relief," the Tenth Circuit pointed out that "[t]here is, of course, a substantive question involved in the case . . . ." *Id.* The Tenth Circuit did not dismiss the case merely because the plaintiff pled only a declaratory judgment action; instead, it determined the trial court had jurisdiction and that dismissal on that ground would have been improper. *Id.* Of course, a litigant can maintain a declaratory judgment action without pleading other claims so long as the action presents a case or controversy. ELAP's Counterclaims present substantive issues, *i.e.*, the meaning of the Admission Forms, which the Court ultimately must decide.

### III. Joinder of Patients Is Not Necessary.

Intermountain advances two arguments that all patients who signed the Admission Forms must be joined in this case. First, Intermountain asserts the Counterclaims are related to whether an enforceable contract exists between Intermountain and the patients. Second, Intermountain asserts that adjudication of the patients' Admission Forms without joining the patients is prejudicial to Intermountain.

If Intermountain is correct (which it is not), and the patients must be joined in this action merely because a claim relates to whether there is an enforceable agreement between the patients and Intermountain, then Count I of the Second Amended Complaint would also require joinder of all the patients. In Count I of the Second Amended Complaint, Intermountain alleges that ELAP interfered with Intermountain's contractual relationship with various patients. Obviously, this claim is related to whether an enforceable contract exists between Intermountain and the

patients. But Intermountain did not join the patients to this action – nor is it required to do so. Similarly, ELAP is not required to join all the patients to its Counterclaims.

Intermountain also argues that the Counterclaims jeopardize the patients' potential rights and defenses. That argument lacks merit. If ELAP's Counterclaims were to fail, the patients would not be affected or prejudiced in any way. They would still be free to vindicate their rights and present any defenses they wish if Intermountain were to seek to collect excessive, unreasonable, or unconscionable charges from them. Obviously, if the Counterclaims succeed, the patients' potential rights and defenses are not compromised either. Ultimately, the patients are not necessary parties. If they were necessary parties to ELAP's Counterclaims, then they would also be necessary parties to Count I of the Second Amended Complaint.

Ironically, and without citation to authority, Intermountain claims it would be robbed of the right to raise defenses and counterclaims if the patients are not joined. Significantly, the declarations and injunctions at issue merely seek to preclude Intermountain from using the Admission Forms to collect excessive, unreasonable, and unconscionable charges. It is ironic that Intermountain would suggest that allowing the action to proceed would rob Intermountain of anything. Intermountain can raise any claims or defenses it wishes in this action, and it fails to identify a single defense or claim it cannot raise because ELAP did not join the patients. Again, ELAP merely seeks a declaration as to the meaning of the Admission Forms with which it is accused of interfering.

### IV. ELAP's Well-Pled Counterclaims Should Not Be Dismissed Merely Because Intermountain Does Not Agree with the Relief Sought.

Intermountain contends the Court should dismiss ELAP's counterclaims because they would "embroil the Court in creating a *de facto* national health care pricing regime." That simply

15

is not the case. ELAP was sued for allegedly interfering with Admission Forms—generic, boilerplate, standardized documents that do not contain a price. Now ELAP merely asks for a declaration that the Admission Forms do not permit Intermountain to collect excessive, unreasonable, and unconscionable charges, and an injunction prohibiting Intermountain from doing so. According to Intermountain, precluding it from collecting excessive, unreasonable, and unconscionable charges would somehow "wreak havoc across the nation's health care system," "nullif[y] countless contractual relationships," "fundamentally divest the legislative branch of its prerogative to guide the course of health care policy," and "adjudicate[] health care pricing in Utah and elsewhere." This farcical, hyperbolic argument could conceivably be considered as a substantive defense (without merit) to the Counterclaims, but it has no place in Intermountain's motion to dismiss. ELAP's Counterclaims present an actual case or controversy, which ELAP has standing to pursue. Intermountain's overly dramatized policy arguments do not negate ELAP's well-pled Counterclaims, and those arguments should not be considered in connection with a motion to dismiss.

## CONCLUSION

For the foregoing reasons, ELAP respectfully requests that the Court deny Intermountain's Motion to Dismiss Counterclaims.

## REQUEST FOR ORAL ARGUMENT

Due to the legally significant issues raised by Intermountain's Motion to Dismiss Counterclaims, ELAP submits that good cause exists to allow oral argument, and ELAP hereby requests oral argument on the Motion.

Respectfully submitted this 16th day of January 2019.

                                      PARR BROWN GEE & LOVELESS

                                      By: /s/ Bentley J. Tolk
                                            Bentley J. Tolk

                                      *Attorneys for Defendant ELAP Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2019, a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO INTERMOUNTAIN'S MOTION TO DISMISS COUNTERCLAIMS** was served via electronic service on the following:

>Alan C. Bradshaw
>Chad R. Derum
>Douglas J. Crapo
>**MANNING CURTIS BRADSHAW & BEDNAR PLLC**
>136 E. South Temple, Suite 1300
>Salt Lake City, Utah 84111
>abradshaw@mc2b.com
>cderum@mc2b.com
>dcrapo@mc2b.com
>
>John W. Mackay
>Brett L. Tolman
>**RAY QUINNEY & NEBEKER P.C.**
>36 South State Street, Suite 1400
>Salt Lake City, Utah 84111
>Telephone: (801) 532-1500
>Facsimile: (801) 532-7543
>jmackay@rqn.com
>btolman@rqn.com

/s/ Bentley J. Tolk

4811-9519-0405