MANNING CURTIS BRADSHAW
 & BEDNAR PLLC
Alan C. Bradshaw, #4801
Chad R. Derum, #9452
Douglas J. Crapo, #14620
136 E. South Temple, Suite 1300
Salt Lake City, Utah 84111
(801) 363-5678
abradshaw@mc2b.com
cderum@mc2b.com

*Attorneys for Plaintiff IHC Health Services, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| IHC HEALTH SERVICES, INC., a non-profit Utah corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>ELAP SERVICES, LLC, a limited-liability company,<br><br>          Defendant. | **INTERMOUNTAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**<br><br>Civil No. 2:17-cv-01245-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff IHC Health Services, Inc. ("Intermountain") submits this Reply in Support of Motion to Dismiss ELAP Services, LLC ("ELAP")'s two counterclaims [ECF No. 38].

## INTRODUCTION

ELAP lacks standing to seek relief because it is not a party to the Admission Form and cannot stand in patients' shoes to litigate its meaning or effect. ELAP's backdoor attempt to manufacture standing based on voluntary contractual commitments to Plans to provide a legal defense to patients is insufficient.  If ELAP believes it is "injured" by following through on its promises to Plans, it should stop making them. What ELAP cannot do is insist that this Court nullify Intermountain's direct agreements with its patients as a third-hand remedy for ELAP's ill-conceived contracting choices.

Plainly, ELAP's "defense cost" is a sham injury masking its effort to have the Court absolve all ELAP-affiliated patients of their contractual agreements to pay Intermountain as agreed.  Tellingly, ELAP fails to cite a single case from any jurisdiction conferring standing on a third party to do *anything* like what ELAP seeks.  Lacking legal authorities, ELAP resorts to sharp words.  Opp. 3 (characterizing Intermountain as a "bully" that "prey[s]" upon patients who are "otherwise not equipped to defend themselves.").  Of course, nothing requires ELAP patients to choose Intermountain facilities over other health care providers and ELAP patients have the undisputed right under Utah law to compare Intermountain's charges with those of other facilities *before* seeking care.  Utah Code Ann. § 26-21-27.  Accordingly, the Court should not lend credence to empty rhetoric situating ELAP atop the moral high-ground. There is nothing noble in encouraging patients to obtain health care with the premeditated intent to challenge Intermountain's charges as "unreasonable," "excessive," or "unconscionable" *after* care has been

provided.  That is called fraud.  Because ELAP fails to provide the Court substantive, legally-correct reasons to open the courthouse doors to ELAP or any other third party seeking to profit by litigating the enforceability of others' contracts, dismissal is required.

## ARGUMENT

### I.      ELAP LACKS STANDING TO ASSERT ITS COUNTERCLAIMS.

ELAP claims it has standing because Intermountain and ELAP dispute "the meaning of the Admission Forms." Opp. 6.  While Intermountain has many cognizable disputes with ELAP, the meaning of the Admission Form is not one of them.  Because ELAP is not a party to any Admission Form, and lacks authority to allege a contrary interpretation on behalf of *any* patient (let alone thousands),[1] ELAP's interpretation of the agreement is legally irrelevant.  It is long-settled that "a stranger having no interest in the subject matter of the contract cannot insist that a different interpretation shall be put upon it or compel the parties to put that interpretation upon it which will benefit him." *Metro. Nat. Bank v. Benedict Co.*, 74 F. 182, 185 (8th Cir. 1896).  It is undisputed that ELAP has no such interest.  Intermountain's contract is with Patients (Ans. ¶ 20) and ELAP fails to allege any conduct Intermountain *directs* at ELAP.  ELAP does not receive care, guarantee payment for care, or face collection activity.

ELAP nevertheless mistakenly claims its interpretation is germane based on the assertion that Intermountain has "su[ed] ELAP for allegedly interfering with Admission Forms." (Opp. 7.) Unlike the counterclaims, Intermountain's interference claim does not ask or require the Court to

---

[1] Notably, ELAP does not respond to footnote 6 in Intermountain's brief describing how ELAP does not have, and could not get, authority to speak on behalf of Patients in this case.

determine the meaning of Admission Forms, which is an issue reserved to Intermountain and patients.  ELAP cites no law conferring standing to allow a third-party tortfeasor to litigate the financial interests of absent contracting parties simply because the tortfeasor can conjure a different interpretation of the absent parties' contract.

> A. **ELAP has no Injury-in-Fact because its "Defense" Obligation arises from ELAP's Contracts with Plans.**

ELAP claims Intermountain's cases holding that standing cannot be manufactured from voluntary commitments to pay legal expenses are limited to instances where the alleged "injury" is the expense of bringing the very suit where standing is asserted.  (Mot. 7-9; Opp. 7-8.)  In fact, the cases stand for the broader point that, in the absence of directly inflicted harm, organizations cannot create standing merely by expending legal or other resources in response to others' conduct.  *See e.g.*, *Ass'n for Retarded Citizens v. Dallas Cty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) (denying standing based on alleged "statutory mandate" to advocate for disabled persons that led organization "to direct some of its resources to challenging the allegedly wrongful actions of the appellees."); *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) (denying standing where "diversion of resources" results "not from any actions taken by [the defendant], but rather from the [organization's] own budgetary choices.").  Indeed, the prior payment of attorney fees has been rejected "with no room for distinction" as injury-in-fact for subsequent litigation. *Williams v. Parker*, 843 F.3d 617, 621 (5th Cir. 2016) (citing "*ACORN*" *v. Fowler*, 178 F.3d 350 (5th Cir. 1999)) (rejecting litigation-related expenses for "this and other" cases as "self-inflicted injuries" for standing purposes).  Here, ELAP's alleged legal expense "injury" results from the operation of voluntary contractual

agreements where ELAP *gets paid* to provide a legal defense (among other services) and is indistinguishable from the organizational standing cases.[2]  Plainly, no injury exists.

### B. ELAP's "Injury" is Neither Traceable to Intermountain Nor Redressable.

ELAP's alleged injury is not traceable to Intermountain, but instead results from "unfettered choices made by independent actors." *N. Laramie Range All. v. F.E.R.C.*, 733 F.3d 1030, 1035 (10th Cir. 2013) (citation omitted); (Mot. 10-11.)  ELAP's argument that its injury arises from a "contractual obligation" to provide a defense against "unreasonable," "excessive," or "unconscionable" charges merely demonstrates why traceability is absent.  (Opp. 9-10.)  Since Intermountain is not a party to ELAP's contracts, is not bound by ELAP's definition of "unreasonable" charges, and has ***no control*** over when or why ELAP assumes defense obligations, no injury is traceable to Intermountain.  Rather, ELAP's "injury" is simply a contractual benefit offered to Plans in exchange for contracting with ELAP.  (CC ¶ 24.)  Additionally, ELAP's alleged injury would not exist if Patients either stopped coming to Intermountain facilities, and/or Plans and Patients simply chose to pay their bills.  Intermountain does not control their actions either, and "[t]raceability is absent when we have to guess why the third parties acted as they did." *N. Laramie Range*, 733 F.3d at 1035.

---

[2] ELAP's effort to distinguish *D.M. Johnson Family Tr. v. Countrywide Home Loans, Inc.*, No. 2:09-cv-317-DAK, 2009 WL 3615690, at *4 (D. Utah Oct. 28, 2009) also fails.  That case affirms no standing exists where nothing the defendants "did or failed to do" had "any bearing" on plaintiffs' performance of their contractual obligations.  Similarly, ELAP cannot claim standing based on alleged injuries having nothing to do with conduct Intermountain directed at ELAP.

Similarly, fails to plead a redressable injury because ELAP and Plans control defense obligations in *their* contracts, not Intermountain. (Mot. 11-12.) A declaration precluding Intermountain's collection of "unreasonable" charges does nothing to stop ELAP from continuing to contract its way into to future "injury" based on whatever terms ELAP and Plans find agreeable.

        **C.**      **The Prudential Standing Doctrine Bars ELAP's Counterclaims**

The prudential standing requirement precludes litigants from suing to enforce the rights of others. *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009). ELAP concedes as much, but claims to be enforcing "its own rights" based on "providing a contractually guaranteed defense." (Opp. 11.) However, ELAP's counterclaims do not ask the Court to adjudicate *its* contracts. Rather, ELAP seeks adjudication of patients' rights under the ***Admission Form*** to prohibit Intermountain's collection activity. ELAP relies exclusively on an easily distinguishable insurance case, *Philadelphia Indemnity Insurance Co. v. Lexington Insurance Co.*, 845 F.3d 1330, 1335 (10th Cir. 2017). In *Philadelphia*, two insurers contracted to cover the same loss but disagreed about how differences in their policy terms should determine the allocation of payment. *Id.* However, because the insured had already "been paid," the dispute concerned only the ***insurer's*** relative responsibilities, not the rights of the non-party insured who had no further interest in the matter. *Id.* Unlike competing insurance policies covering the same loss that can be jointly adjudicated without involving the insured, ELAP's contractual defense agreements with Plans do not concern the same subject matter as the Admission Form, which cannot be interpreted without ***also*** adjudicating patients' rights. Accordingly, ELAP lacks prudential standing to adjudicate patients' interests concerning their

obligation for Intermountain's unpaid charges.  *See* Opp. 3 (ELAP seeking to prohibit Intermountain from "preying" on patients to collect excessive charges).

## II. ELAP FAILS TO ADEQUATELY PLEAD INJUNCTIVE OR DECLARATORY RELIEF.

At the outset, ELAP's permanent injunction claim must be summarily dismissed. Although ELAP's brief occasionally mentions an injunction, ELAP fails to respond directly to any of Intermountain's specific arguments showing ELAP's failure to meet the required pleading elements.  (*See* Mot. 17-19 (demonstrating that ELAP has no cause of action for which it could prevail "on the merits," ELAP faces no irreparable harm, an injunction will harm Intermountain more than ELAP, and an injunction is against the public interest)).  Leaving these arguments unanswered concedes dismissal is appropriate.

ELAP's declaratory judgment claim fares no better.  (Mot. 14-17.)  ELAP alleges the parties have "an actual case or controversy involving the interpretation of the Admission Forms." (Opp. 13.)  However, ELAP is not a party to those agreements and lacks standing to ask the Court to decide their meaning for ELAP's benefit.  The right to bring such disputes, if any, belongs to the parties to the Admission Form, not ELAP.  ELAP is correct that litigants can seek solely declaratory relief but misses that doing so requires the assertion of that parties' own ***substantive rights.***  For example, ELAP cites *Roe v. Wade,* but does not seek a *Roe*-style declaration that Intermountain abridges ELAP's constitutional rights.  410 U.S. 113, 120 (1973). Nor does ELAP assert infringement of its other substantive statutory, common-law, state, federal, public or private rights.  Rather, ELAP's declaratory relief claim is based on nothing more than its professed disagreement with how Intermountain manages ***its contracts with its***

*patients.*  Allowing suit on such unprecedented grounds would unleash a tidal wave of third-party suits to nullify others' agreements.

Moreover, ELAP also lacks any *separate* cause of action for which it might also seek declaratory relief as a remedy.  See *Long v. Wells Fargo Bank, N.A.*, 670 Fed. Appx. 670, 671 (10th Cir. 2016) (absent a substantive claim that "overlaps" with a request for declaratory relief, any request for declaratory relief "in relation to those claims is not viable.").  This point simply underscores that—other than the facially deficient declaratory judgment claim itself—ELAP has *no other* claim to which it can bootstrap a demand for declaratory relief.[3]

Struggling to distinguish this point, ELAP cites another insurance case, *Farmers Alliance Mut. Insurance Co. v. Jones,* 570 F.2d 1384 (10th Cir. 1978), ostensibly to show it is unnecessary to assert a separate claim in addition to seeking declaratory relief.  *Farmers,* which concerned whether a driver was an insured under Farmers' policy, merely affirms that the stand-alone request for declaratory relief must seek to vindicate a party's *own* substantive rights, *i.e,*, where "insurance companies seek to have *their liability declared." Id.* at 1386 (emphasis added).  In contrast, ELAP does not seek a declaration of its rights in any contract to which it is a party.  Rather, ELAP seeks to stand in Patients' shoes to adjudicate their contracts with Intermountain.  Because the Court lacks anything to "declare", dismissal is required.

---

[3] *See, e.g.*, Mot. at 15-16, n. 6 (no right to declaratory relief based on the assertion that Intermountain breached its contract with members).

### III.  ELAP FAILS TO JOIN NECESSARY PARTIES.

ELAP seeks to adjudicate the rights of patients, and complete relief cannot be obtained without joining patients as parties under Rule 19 and destroying diversity.[4]  (Mot. 19-21).  The joinder issue is even more acute now that ELAP has abandoned the lack of a "price term" as a challenge to the Admission Form's enforceability.  (*Compare* CC ¶ 32 *with* Opp. 3.)  The result is that—even assuming ELAP had standing—ELAP lacks a facial challenge to the Admission Form that can be addressed in a single declaratory judgment without joining patients as parties.  Instead of challenging enforceability based on the Admission Form's terms, ELAP contests the ***applied effect*** of the Admission Forms, which ELAP says Intermountain uses to ***collect*** "unreasonable," "excessive," or "unconscionable" charges.  (Opp. 3-5.)  However, determining whether Intermountain actually collects "unreasonable" charges necessarily requires case-by-case adjudication of *every* patient's payment obligations and the propriety of potentially thousands of individual billing encounters.  At minimum, this daunting task could not be undertaken without joining patients since it is ***their financial obligations*** under the Admission Form being adjudicated.  ELAP cannot elude the significant pleading requirements of a Rule 23 class action by attempting to litigate in its own name the financial interests of non-party patients.  (Mot. 21.)

---

[4] ELAP seeks to prevent Intermountain from collecting excessive charges "from Utah citizens." CC ¶ 44.

ELAP attempts to excuse non-joinder by arguing Intermountain did not join patients to its tortious interference claim, which ELAP alleges also concerns whether Intermountain and patients have an "enforceable contract." (Opp. 14-15.) ELAP is wrong. Intermountain need not join patients because its claim does not ask or require the Court to adjudicate patients' rights. In contrast to Intermountain's claim solely targeting ELAP's misconduct, ELAP's counterclaim requires the Court to: i) "declare" limitations on future contractual relationships between patients and Intermountain; ii) adjudicate the amount of individual patient obligations (which may be greater or less than what a patient might advocate as a party); and iii) affect future lawsuits brought by non-party patients under these same Admission Forms (thus exposing Intermountain to multiple inconsistent verdicts).[5]

Furthermore, adjudicating Intermountain's collection rights *en masse* without joining patients would deprive Intermountain of the right to defend its collections, assert counterclaims, or seek offsets based on the circumstances of particular episodes of care. ELAP says Intermountain can "raise any claims or defenses it wishes" in this action. (Opp. 15). But ELAP simply ignores that adjudicating patient-specific defenses necessarily imputes patient-specific rights and thus **requires** joinder because it puts directly at issue the financial obligations of the contractually responsible party—the absent patient.

---

[5] *See also* Mot. 15 n.6 (discussing lack of patient consent to ELAP's lawsuit and concomitant res judicata implications).

IV. **THE COURT SHOULD DECLINE SETTING HEALTH CARE PRICING POLICY.**

Finally, ELAP claims to "merely ask" for a declaration that Intermountain cannot collect "unreasonable," "excessive," or "unconscionable" charges under the Admission Form (Opp. 16), while whistling past Intermountain's arguments demonstrating precisely why that cannot be done without embroiling the Court in setting national health care pricing. (Mot. 21-25.) Rather than respond directly to Intermountain's step-by-step analysis establishing that adoption of ELAP's ACL to determine what Intermountain can "reasonably" charge equates to a judicial decree of what *any* health care provider can charge, ELAP offers haphazard *ad hominem* attacks. (*See* Opp. 16 (characterizing as "farcical," "hyperbolic," and "overly dramatized.")  In refusing to meet the substance of Intermountain's argument, ELAP concedes its merit. Indeed, ELAP says ***nothing*** the Court could rely upon as assurance that ELAP does not intend precisely the creation of the *de facto* national health care pricing regime that Intermountain forecasts. While having this Court take the lead in setting health care policy might be a boon to ELAP's business, the business of setting health care policy should be left to the legislative branch.

## CONCLUSION

For the reasons discussed above, the Court should dismiss all of ELAP's counterclaims with prejudice.

RESPECTFULLY SUBMITTED this 8th day of February, 2019.

**MANNING CURTIS BRADSHAW & BEDNAR PLLC**

/s/ **Chad R. Derum**
Alan C. Bradshaw
Chad R. Derum
Douglas J. Crapo

*Attorneys for Plaintiff IHC Health Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I will cause a true and correct copy of the foregoing to be served in the method indicated below to the below-named parties on February 8, 2019.

|  |  |
|---|---|
| \_\_\_HAND DELIVERY<br>\_\_\_U.S. MAIL<br>\_\_\_FAX TRANSMISSION<br>\_\_\_E-MAIL TRANSMISSION<br> x  CM/ECF | John W. Mackay<br>Brett L. Tolman<br>RAY QUINNEY & NEBEKER P.C.<br>36 South State Street, Suite 1400<br>Salt Lake City, Utah 84111<br><br>*Attorneys for Defendant* |
| \_\_\_HAND DELIVERY<br>\_\_\_U.S. MAIL<br>\_\_\_FAX TRANSMISSION<br>\_\_\_E-MAIL TRANSMISSION<br> x  CM/ECF | Stephen E.W. Hale<br>shale@parrbrown.com<br>Bentley J. Tolk<br>btolk@parrbrown.com<br>PARR BROWN GEE & LOVELESS<br>101 South 200 East, Suite 700<br>Salt Lake City, UT 84111<br><br>*Attorneys for Defendant* |

**/s/ Chad R. Derum**