# EXHIBIT A

MANNING CURTIS BRADSHAW
  & BEDNAR PLLC
Alan C. Bradshaw, #4801
Chad R. Derum, #9452
136 E. South Temple, Suite 1300
Salt Lake City, Utah 84111
(801) 363-5678
abradshaw@mc2b.com
cderum@mc2b.com

*Attorneys for Plaintiff*
*IHC Health Services, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., a non-profit Utah corporation,<br><br>　　　Plaintiff,<br><br>vs.<br><br>ELAP SERVICES, LLC, a limited-liability company,<br><br>　　　Defendant. | **PLAINTIFF'S FIRST CONTINUING DISCOVERY REQUESTS AND INTERROGATORIES**<br><br>Civil No.  2:17-cv-01245-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff IHC Health Services, Inc. ("Intermountain"), propounds the

following discovery requests and interrogatories on Defendant ELAP Services,

LLC ("ELAP") pursuant to Federal Rules of Civil Procedure 33, 34 and 36.

ELAP's answers and responses are due in 30 days absent a Court order stating

otherwise.  The requested answers and responses must be produced at the offices

of Manning Curtis Bradshaw & Bednar PLLC, 136 East South Temple, Suite 1300,

Salt Lake City, Utah 84111 and/or via a reliable file-transfer protocol.

## INSTRUCTIONS

For the purposes of these discovery requests and interrogatories, the

following instructions apply:

1.     These discovery requests and interrogatories are continuing in nature

and must be timely supplemented with any information and Documents

subsequently identified or obtained or to reflect any change in circumstances that

may render your responses incomplete, inaccurate, or misleading in any way. *See*

Fed R. Civ. P. 26(e), 37(c).

2.     All Documents and electronically stored information ("ESI") produced

in response to a request or interrogatory must not delete any metadata and must

comply with the Attorney Planning Meeting Report section 2.d (ECF No. 23)

(Aug. 1, 2018).

3.     You must provide all information that is available to you and under

your control, including information in the possession of your present and former

attorneys, accountants, representatives, agents, or other Persons under your control

or acting on your behalf.  If any responsive information is unavailable in the full

detail requested, you must set forth the information related to the subject matter of

the request in such detail as is available, including a description of the method by which you made any estimates or conclusions.

4.    For Documents or items identified or produced in response to the requests or interrogatories, organize the Documents to make clear the request or interrogatory to which each Document is responsive.  Fed R. Civ. P. 33(d).

5.    Unless otherwise noted, construe each request and interrogatory independently and not by reference to any other request or interrogatory for the purposes of limitation.

6.    The use of the singular in any request or interrogatory includes the plural, and the use of masculine, feminine, or neutral genders includes each gender, as appropriate in context.

7.    If you decline to provide any requested information, Documents, or items based on the assertion of any privilege, then you must:

    a.    state the privilege relied upon and all facts giving rise to the purported privilege;

    b.    describe fully the extent to which the privilege is being asserted;

    c.    identify the information or Document in accordance with paragraphs 25–31 of the below Definitions section; and

    d.    if the production of any item is withheld on the grounds of the work-product doctrine, identify the proceeding for which the

item was, or has been, prepared and identify all Persons receiving a copy of the Document with a description of the item's subject matter.

8.   A request to identify a fact, item, Document, contract, or Person does not include a request to make a legal conclusion about the meaning of the same, but rather to identify the fact, item, Document, contract, or Person that concerns the matter that is the subject of the discovery request or interrogatory.

9.   If any Document or item identified in response to a request or interrogatory was, but is no longer, in your possession, custody, or control, or was known to you but is no longer in existence, state what disposition was made of it or what became of it.  If any responsive Document or item has been destroyed, discarded or otherwise disposed of, set forth for each Document or item:

a.   a general description of the Document or item; (e.g., letter, memorandum, notes, etc.);

b.   the title of the Document;

c.   the date of execution that appears on the Document or item or, if none, the date it was prepared;

d.   a description of the subject matter of the Document or item;

e.   identify each Person who prepared, received, viewed, or had possession, custody, or control of the Document or item at any time in accordance with paragraphs 25–27, below;

f.   the date of destruction or other disposition;

g.    a statement Concerning why the Document or item was destroyed, discarded or otherwise disposed of;

h.    identify each Person who witnessed, authorized, or has personal knowledge about the destruction or other disposition of the Document or item in accordance with paragraphs 25–27, below; and

i.    the discovery request or interrogatory which call for the identification or production of the Document or thing.

10.  Any term not defined in the following Definitions section refers to its usage, if any, in the operative Complaint filed by Plaintiff in this lawsuit.

11.  If, in responding to these requests and interrogatories, you find or claim any ambiguity in a request, interrogatory, definition, or instruction, please identify in your response the language you consider ambiguous and state the interpretation you assumed in responding.

12.  The scope of these requests and interrogatories, unless otherwise specified, span from ten (10) years before the filing of the original Complaint until the present day, including and continuing until all appeals of final judgment exhausted.

13.  To the extent ELAP objects that any of the requests for information included in these requests seeks electronically stored information (ESI) that ELAP contends in good faith can most effectively and efficiently identified and/or

retrieved using key words and/or search terms of documents, ELAP is instructed, in lieu of a substantive response, to identify all Persons who may be custodians of such ESI, the locations of any potentially responsive ESI associated with such custodians (i.e., the devices and accounts associated with such custodian) and to identify all key words and/or search terms ELAP reasonably knows will or may result in the identification and/or retrieval of ESI responsive to the request for information set forth herein.

## DEFINITIONS

For the purposes of these discovery requests and interrogatories, the following definitions apply unless otherwise indicated and without regard to whether the term is capitalized:

14.  The words "***and***" and "***or***" must be construed both conjunctively and disjunctively, and each shall include the other wherever a dual construction will serve to bring within the scope of an interrogatory or discovery request information or Documents that otherwise would not be brought within its scope.

15.  "***You***" and "***your***" refer to Defendant ELAP and any Person acting on its behalf, including, any employee, agent, representative, officer, director, member, manager, trustee, entity, office, division, corporation, partnership,

limited-liability company, trust, affiliate, partner, contractor, counsel, and consultant, or any Person acting in connection with Defendant.

16. "*Concerning*" means relating to, referring to, describing, supporting, evidencing, memorializing, addressing, or constituting, whether in whole or in part.

17. "*Include*" or "*including*" are to be construed to include the phrase "without limitation" and/or "and not limited to," to bring within the scope of any request or interrogatory all information that might otherwise be construed to be outside of its scope.

18. "*Person*" means a natural human or any organization of any kind, including employment benefit plans, unincorporated partnerships, sole proprietorships, associations, trusts, corporations, legal representations, trustees in bankruptcy, limited-liability companies, non-profit organizations, and labor organizations.

19. "*Complaint*" means Intermountain's Complaint (ECF No. 2), the Second Amended Complaint (ECF No. 33), or any further amended Complaint otherwise accepted by the Court in this lawsuit as Intermountain's operative pleading.

20. "*Plaintiff*" or "*Intermountain*" means IHC Health Services, Inc. and any or all of its health care facilities, which can be found at:

https://intermountainhealthcare.org/facilities/.  To view Intermountain facilities on that web page, leave all fields blank and click "Search."

21. "*Defendant*" or "*ELAP*" means ELAP Services, LLC and Persons acting on its behalf, including attorneys, agents, representatives, or any other Person acting in connection with Defendant or on its behalf.

22. "*Parties*" or "*Party*" refers to the Plaintiff(s), Defendant(s), and any other later-joined party in this present lawsuit as identified in the operative pleadings.

23. "*Communication*(*s*)" mean any exchange of information in every form and in any manner by which understanding may be transmitted or received by any medium, whether written, oral, electronically, visually, or otherwise.

24. "*Document*(*s*)" is used in the broadest, most liberal sense and means any record of information or any source of data whether created or stored in an electronic medium, written, typed, printed, recorded, regardless of whether it is a draft or final version or an original, master, duplicate, or copy.  "Document(s)" also includes data compilations from which information can be obtained and translated, if necessary, by you through detection devices in a reasonably usable form.  If any Document has been modified by the addition of notation or otherwise or has been prepared in multiple copies or forms that are not identical, each

modified or non-identical copy is a separate Document.  "Document(s)" includes
all electronically stored information, without limitation.

25. **To "*identify*" *an individual*,** identify the individual's:

    a.    full legal name;

    b.    any prior legal names and aliases;

    c.    present or last-known residence and business address;

    d.    present or last-known residence and business telephone numbers;

    e.    present or last-known residence and business e-mail address;

    f.    present or last-known employer;

    g.    if ELAP knows the individual is represented by counsel, the identity of the individual's legal representative in accordance with paragraphs 25–27; and

    h.    present or last known job title; or if self-employed, a statement of that fact and the business name and address under which the individual does business.

26. **To "*identify*" *a Plan*** (as in paragraph 32) identify the:

    a.    legal name of the plan;

    b.    employer with whom the plan is affiliated, if any;

    c.    administrators of the plan, including third-party administrators;

    d.    Persons known to ELAP to hold a fiduciary duty to the plan, including dedicated decisionmakers; and

e.    Member(s) of the plan in accordance with paragraphs 25–27, and 35;

27.  **To "*identify*" *a legal entity*** that is not a natural person nor an employment benefit plan, identify the:

a.    name of the entity;

b.    type of entity;

c.    state or jurisdiction of incorporation or formation;

d.    location of the principal place of business of the entity;

e.    citizenship(s) of the entity;

f.    if ELAP knows the legal entity is represented by counsel, the legal representative of the entity in accordance with paragraphs 25–27; and

g.    business in which the entity is engaged.

28.  **To "*identify*" *a Communication***, identify the:

a.    Persons participating in the communication;

b.    date of the communication;

c.    medium of the communication (e.g., telephonic, in person, e-mail, text message, instant messages, etc.); and

d.    subject and substance of the communication with sufficient particularity to enable all memorializations of the communication be identified in a subpoena.

29. ***To "identify" a Document***, identify the:

    a.    type of Document;

    b.    title of the Document; and

    c.    subject and substance of the Document with sufficient particularity to enable it to be identified in a subpoena.

30. ***To "identify" a meeting***, identify the:

    a.    date and time of the meeting;

    b.    persons in attendance or participating, whether in person or by telephone, video conference, or any other technology in accordance with paragraphs 25–27;

    c.    location(s) of the meeting and any attendees;

    d.    length or duration of the meeting; and

    e.    documents presented at or created during or soon after the meeting in accordance with paragraph 29, above.

31. ***To "identify" litigation or arbitration***, identify:

    a.    All participants in the litigation or arbitration in accordance with paragraphs 25–27;

    b.    The jurisdiction or arbitrators in which the adjudication started in, was removed to, and/or disposed.

    c.    The case numbers or identifiers associated with the litigation or arbitration.

32. **"*Plan(s)*"** means a self-funded employee welfare benefit plan created by an employer.

33.   "***ELAP Plan***(*s*)" *or* "***ELAP-affiliated Plan***(*s*)" means a Plan that (1) is established, at least in part, to provide health care benefits to an employee of an employer that ELAP knows has business operations in Utah or Idaho or that provides benefits to employees who ELAP knows to reside in Utah or Idaho; and (2) for which ELAP acts or has acted as a dedicated decisionmaker and/or ERISA fiduciary .

34.   "***Prospective ELAP Plan***" means any Person that ELAP regarded as a business prospect to become a Plan, ELAP Plan and/or ELAP-affiliated Plan.  A Prospective ELAP Plan includes a business Person with operations in Utah or Idaho or that has employees who ELAP knows reside in Utah or Idaho.

35.   "***Member***(*s*)" means a Person entitled to receive benefits under an ELAP Plan, including but not limited to persons entitled to receive benefits from, or whose health care costs are otherwise covered or paid for (whether in whole or in part) by, an ELAP Plan.

36.   "***Reference Billing***" or "***Reference Based Pricing***" means any iteration of ELAP's reference-based pricing methodology, including but not limited to the "metric-based pricing solution [that] goes beyond a reference-based pricing model by considering both Medicare reimbursement and the actual cost to deliver the

service[] and adds a fair profit margin" as set forth on ELAP's website

https://www.elapservices.com/what-we-do (last visited Aug. 31, 2018).

37. "***Claim(s) Audit(s)***" means the process where ELAP reviews or audits a

health care provider's charges, line by line or otherwise, and decides what the

ELAP Plan and/or Member should pay the provider.

38. "***Third-Party Administrator***" means a Person that processes, in whole

or in part, claims on behalf of a Plan or provides other claims administration

services for a Plan.  The term "Third Party Administrator" includes but is not

limited to the following:  MBA Benefits Administrators ("MBA"), Group &

Pension Administrators Inc. ("GPA"), and EBMS, BAS Health ("BASHealth").

39. "***Patient Agreement***" means any conditions of admission agreement or

(similarly styled agreement) that a patient executes upon admission to a health care

facility (including but not limited to any Intermountain health care facility) that

sets forth the conditions of such admission, including the patient's consent to

treatment and patient obligations to pay for such treatment.

## INTERROGATORIES

**Interrogatory No. 1.**   Identify all ELAP Plans located in Utah or Idaho,

having an address in Utah and/or Idaho, or that provides care benefits to employees

of an employer that ELAP knows has business operations in Utah and/or Idaho.

**Interrogatory No. 2.**   Identify all Members either having an address in Utah and/or Idaho, or that are affiliated with an employer known to ELAP to have business operations in Utah and/or Idaho.

**Interrogatory No. 3.**   For each year from January 1, 2011 to present, identify all Members whom ELAP knows to have received health care from Intermountain for whom ELAP acted as the dedicated decisionmaker and/or ERISA fiduciary of the Member's Plan in connection with determining the Plan's payment, whether in whole or in part, to Intermountain.  Please include in your response the name of the Plan(s) associated with each Member identified.

**Interrogatory No. 4.**   For all Members identified in Interrogatory No. 3, identify the total amount of Intermountain's billed charges for each year since January 1, 2011.

**Interrogatory No. 5.**   For all Members identified in Interrogatory No. 3, identify the total dollar amount ELAP has directed ELAP Plans to pay Intermountain for the health care rendered to those Members for each year since January 1, 2011.

**Interrogatory No. 6.**   For all Members identified in Interrogatory No. 3, identify the total patient cost-sharing amounts (including, coinsurance,

copayments, deductibles, etc.) that Members have paid Intermountain for health care rendered to such Members for each year since January 1, 2011.

**Interrogatory No. 7.**   For all Members identified in Interrogatory No. 3, identify the total amount ELAP understands or believes Intermountain has sought to collect from such Members through balance-billing for health care rendered to such Members by Intermountain for each year since January 1, 2011.

**Interrogatory No. 8.**   For all Members identified in Interrogatory No. 3, identify the amount ELAP understands or believes to be the difference between Intermountain's billed charges and the amount ultimately paid to Intermountain after applying Plan payments, Member payments (including, patient cost-sharing), and any other discounts authorized by Intermountain (e.g., self-pay discounts, prompt-pay discounts, financial assistance) for each year since January 1, 2011.

**Interrogatory No. 9.**   Identify the Third Party Administrator for each ELAP Plan for which ELAP acts as the dedicated decisionmaker and/or ERISA fiduciary.

**Interrogatory No. 10.**  Identify all ELAP Plans and/or Members who have communicated with ELAP or a Plan administrator (including any Third-Party Administrator) concerning balance billing by Intermountain.  If you elect to

respond to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d), include all responsive Communications.

**Interrogatory No. 11.**  For the period between January 1, 2011 and December 31, 2017, identify the amount of money ELAP has spent each year to defend Members from the collection of balance billing by Intermountain.

**Interrogatory No. 12.**  For the period since January 1, 2013 to present, identify the number of times an ELAP has conducted an audit or re-pricing of a health care provider's bill on behalf of a Plan regardless of where the Plan, the provider, or the member resides.

**Interrogatory No. 13.**  For the period since January 1, 2013 to present, identify the number of times an ELAP audit or re-pricing of a health care provider's bill has resulted in a determination that a Plan should pay more than the health care provider's bill regardless of where the Plan, the provider, or the member resides.

**Interrogatory No. 14.**  For the period since January 1, 2013 to present, identify the number of times an ELAP audit of a health care provider's bill has resulted in a determination that a Plan should pay less than the health care provider's bill regardless of where the Plan, the provider, or the member resides.

**Interrogatory No. 15.**  For the period since January 1, 2013 to present, identify the number of times an ELAP audit of a health care provider's bill has **not** resulted in an "Notice of Adverse Benefits" letter being issued to the health care provider by ELAP, a Plan and/or a Plan's Third Party Administrator.

**Interrogatory No. 16.**  Identify the rate (expressed in percentage terms) at which health care providers in (1) Utah; (2) Idaho; and (3) other states and territories of the United States, collectively, accept ELAP-determined payments that are less than the original billed amount based on Reference Billing or any other means as payment in full.

**Interrogatory No. 17.**  Identify all ELAP Plans that have discontinued the use of ELAP's services for any reason since January 1, 2011.

**Interrogatory No. 18.**  Identify all persons involved in answering—and the preparation thereof—the foregoing interrogatories.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1.**     Produce all Documents or tangible evidence identified in Your Initial Disclosures under Federal Rule of Civil Procedure 26(a) and all supplements to those disclosures, if any.

**Request for Production No. 2.**     Produce all non-privileged documents that You used or relied upon to answer the foregoing interrogatories.

**Request for Production No. 3.**     Produce an organizational chart for ELAP with sufficient detail to identify custodians of information who may possess information relevant to this action and/or these discovery requests, or whom otherwise control or regulate electronic access to such information (e.g., ELAP information-technology personnel).

**Request for Production No. 4.**     Produce Documents sufficient to identify the location and architecture of the information technology systems ELAP uses, including ELAP's email servers, ELAP's document storage systems (including any proprietary or publicly available cloud-based storage systems, etc.), ELAP's network-based sharing platforms (including, MS 365, SharePoint, OneDrive, etc.), ELAP's messaging platforms (e.g., Slack, IM, etc.), and any other components of ELAP's information technology systems where Documents are or may be stored.

**Request for Production No. 5.**     Produce Documents sufficient to identify all Plans with which ELAP contracts that are located in Utah or Idaho.

**Request for Production No. 6.**     Produce Documents sufficient to identify all Members who reside in Utah or Idaho.

**Request for Production No. 7.**     For the period January 1, 2011 to present, produce Documents sufficient to identify all Members who have received health

care from Intermountain or whose Plan has received a claim for health care the Member received from Intermountain.

**Request for Production No. 8.**   Produce Documents sufficient to identify all Persons authorized to sell Plans in Utah and/or Idaho for each year since January 1, 2011.

**Request for Production No. 9.**   For the period from January 1, 2011 to present, produce Documents sufficient to identify all Third-Party Administrators with whom ELAP contracts or ELAP otherwise knows to be directly involved in facilitating the implementation of ELAP Plans.

**Request for Production No. 10.**   For the period January 1, 2011 to present, produce Documents sufficient to identify the amount of billed charges ELAP understands or believes Intermountain has sought to collect from ELAP Plan Members.

**Request for Production No. 11.**   For the period January 1, 2011 to present, produce Documents sufficient to identify the amounts ELAP has directed ELAP Plans to pay to Intermountain.

**Request for Production No. 12.**   For the period January 1, 2011 to present, produce Documents sufficient to identify the amounts Members have paid to

Intermountain as a result of cost-sharing obligations under a Plan (such as deductibles, copayments, coinsurance, etc.).

**Request for Production No. 13.**   For the period January 1, 2013 to present, produce all written memorializations of contracts between ELAP and all ELAP Plans.

**Request for Production No. 14.**   For the period January 1, 2013 to present, produce all written memorializations of contracts between ELAP and all Third-Party Administrators who serve or have served any ELAP Plan since January 1, 2011.

**Request for Production No. 15.**   Produce all Documents concerning all complaints or communications identified in Interrogatory No. 10.

**Request for Production No. 16.**   For the period January 1, 2011 to present, produce all non-privileged communications in your possession, custody or control between or among ELAP, an ELAP Plan(s), or a Third-Party Administrator and any Members concerning balance billing for health care provided by Intermountain.

**Request for Production No. 17.**   For the period January 1, 2011 to present, produce all transcripts of all depositions and/or trial testimony from each of the following: (1) Steve Kelly (ELAP CEO); (2) depositions or trial testimony of any

representative of ELAP related to billing for health care provided to members of Plans irrespective of where the members or the Plans reside; and (3) depositions under Federal Rule of Civil Procedure 30(b)(6) (or its equivalent in the applicable jurisdiction).

**Request for Production No. 18.**   For the period January 1, 2011 to present, produce all transcripts of all depositions and/or trial testimony from any expert witness engaged by or for the benefit of ELAP, a Plan, or a member of a Plan concerning ELAP's business operations in any manner irrespective of where the members or the Plans reside.

**Request for Production No. 19.**   Produce all non-privileged electronically stored Documents, including all Communications or memorializations of Communications in which ELAP or other Persons participated, concerning Intermountain, including those that include the words: "Intermountain" or "IHC." This request is for only those Documents existing either in hard copy form and/or located on ELAP and/or its employee's electronic storage devices (e.g., on- and off-site servers and hard drives) and mobile phones and any other electronic devices capable of storing Communications.

**Request for Production No. 20.**   For the period January 1, 2013 to present, produce all Documents prepared or created at ELAP's direction, or with ELAP's

knowledge, that were transmitted to a broker, Third-Party Administrator, ELAP

Plan or Prospective ELAP Plan Concerning advertising, marketing, and/or

promotion of ELAP's business.

**Request for Production No. 21.**   For the period January 1, 2013 to present,

produce all Documents prepared or created at ELAP's direction, or with ELAP's

knowledge, that were transmitted to a Member, broker, Third-Party Administrator,

ELAP Plan or Prospective ELAP Plan that describes or otherwise characterizes

(whether in whole or in part) Member obligations to pay for health care in

connection with an ELAP-affiliated Plan.[1]

**Request for Production No. 22.**   For the period January 1, 2013 to present,

produce all press releases issued by or on behalf of ELAP for any purpose, whether

for publication by ELAP itself or by a third party, including all news stories posted

---

[1] This request does not seek communications between ELAP and individual Members concerning the adjudication of their payment obligations in connection with particular episodes of health care (such as the transmission of health care bills between ELAP and a Member).  Rather, this request seeks communications in the nature of marketing, advertising and/or promotional material that seeks to prospectively advise Plans and/or Members about the nature of their payment obligations when seeking or receiving health care.

to the web domain https://www.elapservices.com/news at any time during the defined period.

**Request for Production No. 23.**   For the period January 1, 2013 to present, produce all Documents prepared or created at ELAP's direction, or with ELAP's knowledge, that were transmitted to an ELAP Plan, a Prospective ELAP Plan, or a Member[2] concerning what amounts, if any, Members should and/or should not pay health care providers before receiving care, including patient cost-sharing amounts and/or requests by providers for upfront payment before receiving care.

**Request for Production No. 24.**   For the period January 1, 2013 to present, produce all Documents prepared or created at ELAP's direction, or with ELAP's knowledge, that were transmitted to a Member, ELAP Plan, or Prospective ELAP Plan, Concerning health care providers where Members could and/or could not obtain health care covered by an ELAP-affiliated Plan.

**Request for Production No. 25.**   Produce all versions of the document "Welcome to ELAP" prepared, edited, and/or distributed since January 1, 2013.[3]

---

[2] This Request seeks documents provided to ELAP-affiliated Plans and/or Prospective ELAP-affiliated Plans associated with an employer having operations and/or personnel located in Utah and/or Idaho.

[3] An example of this document is available by clicking "Download File" at https://coastrealestate.weebly.com/elap.html (last viewed October 31, 2018).

**Request for Production No. 26.**   Produce Documents sufficient to identify the ELAP Plans and/or Prospective ELAP Plans, and/or Members that received the "Welcome to ELAP" document identified in the preceding Request.

**Request for Production No. 27.**   For the period January 1, 2013 to present, produce all Documents prepared or created at ELAP's direction, or with ELAP's knowledge, Concerning the likelihood that health care providers will accept the amount ELAP advises a Plan to pay a health care provider as payment in full.

**Request for Production No. 28.**   Without limiting the foregoing Request, for the period January 1, 2013 to present, produce all Documents prepared or created at ELAP's direction, or with ELAP's knowledge, concerning the likelihood that Intermountain would accept the amount ELAP advises a Plan to pay as payment in full.

**Request for Production No. 29.**   For the period January 1, 2012 to present, produce all Documents prepared or created at ELAP's direction, or with ELAP's knowledge, Concerning the likelihood that members will be balance billed by a health care provider irrespective of where the Plan or its members reside.

**Request for Production No. 30.**   For the period January 1, 2011 to present, produce all Documents reflecting Communications between ELAP and any Member(s) Concerning Member(s)' obligations under a Patient Agreement.

**Request for Production No. 31.**   For the period January 1, 2011 to present, produce all Documents reflecting Communications between ELAP and any Third-Party Administrator Concerning Member(s)' obligations under a Patient Agreement.

**Request for Production No. 32.**   For the period January 1, 2012 to present, produce all Communications between ELAP and any Plan and/or Third-Party Administrator Concerning what information should be included and/or should not be included on a membership card of a Plan that a Member may be required to present upon seeking care at a health care facility.

**Request for Production No. 33.**   For the period January 1, 2012 to present, produce all presentation materials (including presentations using power-point or other slide-based presentation software (e.g., Prezi)) prepared by ELAP, with ELAP's authorization, or at ELAPs' direction, that were presented to any Prospective ELAP Plan in connection with an attempt to develop a business relationship between ELAP and such Prospective ELAP Plan.

**Request for Production No. 34.**   For the period January 1, 2012 to present, produce all presentation materials (including presentations using power-point or other slide-based presentation software (e.g., Prezi)) in ELAP's possession,

custody, or control that were prepared by any Third-Party Administrator or broker Concerning Reference Based Pricing whether in whole or in part.

**Request for Production No. 35.**   For the period January 1, 2012 to present, produce all Documents reflecting Communications between ELAP and any Third-Party Administrator Concerning or that reference Intermountain in any way.

**Request for Production No. 36.**   For the period January 1, 2012 to present, produce all Documents reflecting Communications between ELAP and any Plan Concerning or that reference Intermountain in any way.

**Request for Production No. 37.**   For the period January 1, 2012 to present, produce all Documents reflecting Communications between ELAP and any Member concerning or that reference Intermountain in any way.

**Request for Production No. 38.**   For the period January 1, 2012 to present, produce all Documents reflecting Communications between ELAP and any Third-Party Administrator Concerning the responsibility of Members to pay a health care provider's balance bills.

**Request for Production No. 39.**   For the period January 1, 2011 to present, produce all Documents prepared or created at ELAP's direction, or with ELAP's knowledge, Concerning the likelihood that Members will be balance billed by a health care provider.

**Request for Production No. 40.**   Without limiting the foregoing Request, for the period January 1, 2012 to present, produce all Documents prepared or created at ELAP's direction, or with ELAP's knowledge, Concerning the likelihood that Members will be balance billed by Intermountain.

**Request for Production No. 41.**   For the period January 1, 2011 to present, produce all Documents prepared or created at ELAP's direction, or with ELAP's knowledge, Concerning whether admission to a health care facility requires a Plan member to execute a Patient Agreement irrespective of where the Plan, member, or health care provider reside.

**Request for Production No. 42.**   For the period January 1, 2011 to present, produce all annual income statements (at the lowest account level possible as contained in ELAP's general ledger) for the ELAP business unit responsible for Plans located in Utah and Idaho.  If no such sub-business unit exists, produce all income statements of ELAP at the lowest level possible for the period January 1, 2011 to present.

**Request for Production No. 43.**   For the period January 1, 2011 to present, produce Documents sufficient to show the amount of money ELAP has received from ELAP Plans as a result of Members receiving health care from Intermountain.

**Request for Production No. 44.**   Produce all ELAP business plans from January 1, 2008 to present.

**Request for Production No. 45.**   Produce Documents sufficient to identify the shareholders of WSHP Adrian Holdings Corporation and SKWW Holdings, Inc. as referenced in the parties' Joint Factual Stipulation Concerning Jurisdiction, Dkt. 9.

**Request for Production No. 46.**   Produce all transcripts of depositions and trial testimony taken or conducted on behalf of a Plan administrator Concerning ELAP and a Plan's payment of bills from a health care provider since December 1, 2012 irrespective of where the Plan, employer, or members reside.

**Request for Production No. 47.**   Produce all Documents sufficient to demonstrate the process ELAP employs in performing a Claim Audit, including any manuals, checklists, videos, or digital animations.

**Request for Production No. 48.**   Produce all benefit plans for each ELAP Plan that was in existence from January 1, 2012 to the present.

**Request for Production No. 49.**   Produce all Documents Concerning analytics on claims data related to Intermountain that ELAP has prepared for any purpose, including measuring performance, detecting trends, and identifying opportunities.

**Request for Production No. 50.**   Produce all Explanations of Benefits (EOBs) prepared for or on behalf of ELAP Plan Members located in Utah and/or Idaho in connection with any health care provided by Intermountain during the following periods:  October 1, 2016 to January 15, 2017; June 1, 2017 to August 31, 2017; and December 21, 2018 to March 15, 2018.

**Request for Production No. 51.**   Produce the complete contents of ELAP's websites (elapservices.org and elapservices.com) since January 1, 2012, including the content of all pages posted to that website, regardless of whether the information remains live or has been removed at any time during the relevant period.

**Request for Production No. 52.**   Produce all posts made by, for, or on behalf of ELAP on Twitter since January 1, 2012.  This request seeks *all* posts, regardless of whether such posts have subsequently been removed from ELAP's publicly visible Twitter-feed.  Furthermore, this request seeks posts associated with any Twitter-handle/username associated with ELAP including but not limited to @ELAPservices.  This request further seeks any posts that ELAP paid to be made, regardless of what Twitter-handle/username the post was created under.

**Request for Production No. 53.**   Produce all posts made by, for, or on behalf of ELAP on Facebook since January 1, 2012.  This request seeks *all* posts,

regardless of whether such posts have subsequently been removed from ELAP's

publicly visible Facebook page.  Furthermore, this request seeks posts associated

with any Facebook account associated with ELAP, including but not limited to the

ELAP Services Facebook page.  This request further seeks any posts that ELAP

paid to be made, regardless of what Facebook username the post was created

under.

**Request for Production No. 54.**   For the period from January 1, 2012 to

present, produce Documents sufficient to identify all entities compensated by

ELAP in any manner to provide advertising and/or marketing services for ELAP.

**Request for Production No. 55.**   For the period from January 1, 2012 to

present, produce the content of all online advertising prepared by, for, or on behalf

of ELAP (other than content posted on ELAP's own website).  This request

includes but is not limited to the following categories of content:  (1) Display Ads,

including static images, text, floating banners, wallpaper, popup ads, flash content,

video content; (2) Social Media Ads, including any content ELAP paid to be

posted on any social-media platform (such as, Facebook, YouTube, Twitter,

LinkedIn, Instagram, Tumblr, reddit, Snapchat, etc.); (3) Search Engine Marketing,

including content (e.g., search terms) used in connection with pay-per-click

advertising, Google AdWords, or other search-engine optimization tools;

(4) <u>Native Advertising</u>, including any content ELAP has paid to be generated

through in-feed, search ads, recommendation widgets, promoted listings, etc.;

(5) <u>Remarketing/Retargeting</u>, including content ELAP has paid to appear on other

websites after the installation of a cookie on the user's computer to track the user's

web-browsing activity; (6) <u>Video Advertisements</u>, including any videos posted by

ELAP on YouTube, Google+, Facebook, Twitter, Vimeo, Hulu, or other video-

sharing sites; (7) <u>Email Marketing</u>, including the content of all email campaigns

ELAP has conducted itself or via a third-party email marketing service such as

MailChimp, Constant Contact, AWeber, ConvertKit, GetREsponse, Campaign

Monitor, Active Campaign, etc.; and (8) <u>Paid Blog Posts</u>, including all blogs

prepared by any Person by, for, or on behalf of ELAP.

**Request for Production No. 56.**   For the period from January 1, 2012 to

present, produce all videos prepared by, for, or on behalf of ELAP to market its

business, including videos hosted on ELAP's website or the website of any Person

with whom ELAP has a business relationship (e.g., Third-Party Administrators,

brokers, Plans, etc.).

**Request for Production No. 57.**   Produce the complete contents of all

materials ELAP provided to brokers at ELAP's first, second, and third Broker

Certification Program.

**Request for Production No. 58.**   For the period January 1, 2011 to present, produce the minutes of any meeting of the members of ELAP Services, LLC.

**Request for Production No. 59.**   For the period January 1, 2011 to present, produce the non-privileged minutes of any meeting concerning Intermountain, whether in whole or in part.

**Request for Production No. 60.**   Except to the extent duplicative of prior Requests, for the period January 1, 2010 to present, produce the content of the news stories, publications, and/or reports prepared by any third party in which ELAP's CEO Steve Kelley is quoted in his capacity as a representative of ELAP.

**Request for Production No. 61.**   Produce all press-coverage reports (including press releases) created by ELAP's in-house our outside publicity or marketing professionals from January 1, 2012 until the present.

## REQUESTS FOR ADMISSION

**Request for Admission No. 1.**   Admit that the lawyers ELAP engages to represent members of any Plan are obligated, in the course of their representation of that member, not to take any position adverse to ELAP, including but not limited to not appealing any ELAP benefits determination.

**Request for Admission No. 2.**   Admit that, for all Members identified in Interrogatory No. 3 who have received health care from Intermountain since

January 1, 2011, ELAP has not itself paid any money to Intermountain toward the cost of the health care rendered.

**Request for Admission No. 3.**    Admit that the number of instances in which ELAP has "audited" and/or re-priced a health care provider's bill exceeds 700,000 instances.

**Request for Admission No. 4.**    Admit ELAP is not affiliated with Medicare.

**Request for Admission No. 5.**    Admit ELAP is not endorsed by Medicare.

**Request for Admission No. 6.**    Admit that—before advising Plans what to pay for health care rendered to Members—ELAP does not require ELAP Plans or their Members to communicate or consult with Intermountain Concerning Intermountain's charges.

**Request for Admission No. 7.**    Admit that ELAP advises Members not to pay in advance for health care (other than cost-sharing amounts), even if the health care provider requests advance payment.

**Request for Admission No. 8.**    Admit that ELAP's determination of what constitutes a "reasonable charge" for any particular health care is made after the patient has received the care.

**Request for Admission No. 9.**   Admit ELAP knows Intermountain generally requires, as a condition to receiving treatment, that patients sign a Patient Agreement, which is an agreement to pay all Intermountain's bill as charged.

**Request for Admission No. 10.**  Admit ELAP knows it is standard practice for health care facilities to generally require, as a condition to receiving treatment, that patients sign a Patient Agreement.

DATED this 8th day of November, 2018.

MANNING CURTIS BRADSHAW
& BEDNAR PLLC

*/s/ Chad R. Derum*

Alan C. Bradshaw
Chad R. Derum

*Attorneys for Plaintiff*
*IHC Health Services, Inc. dba*
*Intermountain Health Care, Inc.*

# CERTIFICATE OF SERVICE

I certify that I will cause a true and correct copy of the foregoing **PLAINTIFF'S FIRST CONTINUING DISCOVERY REQUESTS AND INTERROGATORIES** to be served in the method indicated below to the below-named parties today, November 8, 2018.

| | |
|---|---|
| ___ VIA FACSIMILE<br>___ VIA HAND DELIVERY<br>___ VIA U.S. MAIL<br>___ VIA UPS/FEDERAL EXPRESS<br> _X_ VIA EMAIL<br>___ VIA ECF | John W. Mackay<br>Brett L. Tolman<br>Ray Quinney & Nebeker P.C.<br>36 South State Street, Suite 1400<br>Salt Lake City, Utah 84111<br><br>*Attorneys for Defendant* |
| ___ VIA FACSIMILE<br>___ VIA HAND DELIVERY<br>___ VIA U.S. MAIL<br>___ VIA UPS/FEDERAL EXPRESS<br> _X_ VIA EMAIL<br>___ VIA ECF | Thomas E. Lavender III<br>ted.lavender@fisherbroyles.com<br>Kristopher R. Alderman<br>kris.alderman@fisherbroyles.com<br>Fisher Broyles<br>945 East Paces Ferry Road, Suite 2000<br>Atlanta GA 30326<br><br>*Attorneys for Defendant* |
| ___ VIA FACSIMILE<br>___ VIA HAND DELIVERY<br>___ VIA U.S. MAIL<br>___ VIA UPS/FEDERAL EXPRESS<br> _X_ VIA EMAIL<br>___ VIA ECF | Stephen E.W. Hale<br>Bentley J. Tolk<br>Parr Brown Gee & Loveless<br>101 South 200 East, Suite 700<br>Salt Lake City, Utah 84111<br><br>*Attorneys for Defendant* |

/s/ Chad R. Derum