# Exhibit 1

MANNING CURTIS BRADSHAW
  & BEDNAR PLLC
Alan C. Bradshaw, #4801
Chad R. Derum, #9452
Douglas Crapo, #14620
136 E. South Temple, Suite 1300
Salt Lake City, Utah 84111
(801) 363-5678
abradshaw@mc2b.com
cderum@mc2b.com
dcrapo@mc2b.com

*Attorneys for Plaintiff*
*IHC Health Services, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., a non-profit Utah corporation,<br><br>　　　Plaintiff,<br><br>vs.<br><br>ELAP SERVICES, LLC, a limited-liability company,<br><br>　　　Defendant. | **INTERMOUNTAIN'S OBJECTIONS, ANSWERS, AND RESPONSES TO ELAP'S FIRST SET OF DISCOVERY REQUESTS**<br><br>Civil No. 2:17-cv-01245-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse<br>REDACTED VERSION |

Plaintiff IHC Health Services, Inc. ("Intermountain"), hereby objects, answers, and

responds to First Set of Interrogatories, Requests for Production and Admissions of Defendant

ELAP Services, LLC ("ELAP").  These objections are in addition to those made on March 1,

2019.

## DEFINITIONS OF SPECIFIC OBJECTIONS

As used in specific answers and responses below, the following terms include objections

based upon their respective definitions:

1.      "***Irrelevant***" means: the interrogatory or request calls for information that is not relevant because the information would have no tendency to make a fact more or less probable or the fact is of no consequence to a material issue of this present lawsuit.  Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any non-privileged matter ***that is relevant to any party's claim or defense***" or counterclaim.  (Emphasis added.)  Thus, any interrogatory or request that calls for irrelevant information falls outside the scope of the discovery rules.  The definition of "irrelevant" also includes information that ELAP is not entitled to receive because ELAP lacks standing to assert the rights of patients and/or to challenge Intermountain's rights under Intermountain's contracts with patients, including the amounts Intermountain charges patients for health care pursuant to those contracts.

2.      "***Vague and ambiguous***" means: the interrogatory or request is uncertain in its meaning or application to such an extent the interrogatory or request is unreasonable in scope and places upon Intermountain an unreasonable and improper burden.

3.      "***Disproportional***" means: the interrogatory or request calls for information

(a)      unimportant and/or irrelevant to the action;

(b)      ELAP possesses or claims to possess without the need of discovery;

(c)      unimportant in resolving material and/or disputed issues; and/or

(d)      the burden or expense incurred in producing outweighs any likely benefit to the adjudication of the issue.

4.      "***Overbroad***" means: the interrogatory or request concerns such broad and uncertain information that the interrogatory or request is unreasonable in scope and places upon Intermountain an unreasonable and improper burden.

5.      "*Duplicative*" means: the interrogatory or request calls for information that is cumulative and/or duplicative of information already gathered and/or in ELAP's other interrogatories or requests.

6.      "*Burdensome*" means: the interrogatory or request

(a)      is so broad and/or uncertain that the interrogatory or request places upon Intermountain an unreasonable and undue burden and cost, which outweighs any likely benefit considering the needs of the case and the importance of the request in resolving an issue in the litigation;

(b)      imposes operational burdens upon Intermountain in retrieving, reviewing, and producing the requested information that are so onerous that Intermountain would have to commit substantial and unreasonable resources to respond fully to the interrogatory or request;

(c)      imposes operational burdens that would require an unreasonable reallocation of resources (time, money, attention, etc.) from existing commitments in providing health care to its patients and the public;

(d)      would require the aggregation of a substantial and unreasonable volume of information not readily accessible or maintained in the normal course of business; and/or

(e)      seeks information that is more readily obtainable through other, more convenient, less burdensome, and less expensive sources or discovery methods and procedures.

7.      "*Privileged information*" means: the interrogatory or request calls for information protected by

(a)      the attorney-client privilege;

(b)      an attorney work product doctrine;

(c)      information protected under Federal Rule of Civil Procedure 26(b)(3);

(d)      the physician-patient privilege under Utah Rule of Evidence 506 and Idaho Rules of Evidence 503 and 513.;

(e)     the litigation or judicial-testimony privilege;

(f)     the legislative privilege;

(g)     documents or information which consist of protected trial-preparation materials;

(h)     under Utah law;

(i)     under Idaho law; and/or

(j)     any other valid privilege.

Objections made because of a privilege does not necessarily mean responsive information exists; rather, that the interrogatory or request calls for such information.

8.     "***Information outside Intermountain's possession, custody, or control***" means: the interrogatory or request calls for information not in Intermountain's possession, custody, or control and not reasonably or logically expected to be after reasonable efforts.

9.     "***Premature information***" means that further discovery may reveal additional information and/or Intermountain has not yet determined the full extent of the information sought.

10.     "***Information readily obtainable by ELAP***" means: the requested information is more readily obtainable by ELAP through other, more convenient, less burdensome, and less expensive sources or discovery procedures.

## **DESIGNATION OF RESPONSES**

All substantive information provided in answering and responding to these interrogatories and requests is designated as CONFIDENTIAL under the standard confidentiality protective order and entitled to the highest protection otherwise available to the extent the information

includes any protected health information under the Federal Health Insurance Portability and

Accountability Act (HIPAA).  All substantive information provided in the answers, responses,

and production which includes any private health information governed by the physician-patient

privileges and other rights of a patient are designated as CONFIDENTIAL—ATTORNEY

EYES ONLY under the standard confidentiality protective order.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1**:  Identify all persons who supplied information and

participated in answering these interrogatories, requests for production of documents, and/or

requests for admission.

**ANSWER TO INTERROGATORY NO. 1**:  Intermountain objects to this interrogatory

because it calls for privileged information including attorney-client communications and

protected attorney work product.  Subject to its objections, Intermountain identifies Mary

Milliner, Jeff Howes, and Robb Duffin.

**INTERROGATORY NO. 2**:  Identify all ELAP Plans.

**ANSWER TO INTERROGATORY NO. 2**:  Intermountain objects to this interrogatory

because it calls for duplicative information that ELAP provided in its answers and responses to

Intermountain's discovery requests.  The interrogatory calls for information readily obtainable by

ELAP and for information generally outside Intermountain's possession, custody, or control

because ELAP and its Member Patients, Plans, and Third-Party Administrators ("TPAs")

conceal from Intermountain ELAP's involvement with the administration of the Plans'

payments.  Similarly, ELAP is in a better position to know this information than Intermountain

because—as ELAP has represented—ELAP has performed line-item audits for all health care

Intermountain has provided to ELAP Member Patients.  *See* ELAP Counterclaim ¶ 21.

Furthermore, ELAP has represented that ELAP has contracted with these Plans.  ELAP has also

sought to block Intermountain's communications with the Plans it has identified, which

precludes Intermountain from verifying the information ELAP has provided about the identity of

Plans.  The interrogatory also calls for premature information as discovery is ongoing.  Subject

to its objections, Intermountain identifies those Plans that ELAP identified in its Attachments 3

and 4 as answers to Intermountain's interrogatories.  Intermountain cannot confirm or deny that

this information is exhaustive at this time.  Intermountain intends to supplement this answer as it

has a right to do under Rule 26(e)(1) to the extent it obtains additional information.

      **INTERROGATORY NO. 3**:  Identify all Patients.

      **ANSWER TO INTERROGATORY NO. 3**:  Intermountain objects for the same

reasons stated in the previous Answer to Interrogatory No. 2, which asks for identification of

ELAP Plans.  In addition, this interrogatory is vague and ambiguous because "Patient" is defined

to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently

defined and may vary based on individual circumstances.  ELAP is also the party that would

have responsive information more readily obtainable to it.  As set forth in the Second Amended

Complaint, ELAP has intentionally worked to conceal its association with ELAP Member

Patients such that Intermountain could not readily identify them independently and

Intermountain thus objects that ELAP has intentionally frustrated Intermountain's ability to

discover the information.  ELAP has also sought to block Intermountain's communications with

the Patients it has identified, which precludes Intermountain from verifying the information

ELAP has provided identifying Patients.  Intermountain also objects because ELAP calls for

privileged information including physician-patient communications and information subject to Intermountain's various duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Furthermore, the number of ELAP Member Patients will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain without intending to pay under the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its answers and responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this answer.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP continues to supplement the additional information can be compiled without imposing an unreasonable and disproportionate burden, Intermountain may be in a position to supplement this answer.

Subject to its objections, Intermountain does not currently confirm or deny the ELAP Member Patient information that ELAP provided in its Attachments 3 and 4 in answers to Intermountain's interrogatories.  However, the information provided shows that ELAP is in as good, if not better, position to obtain this information from ELAP's own databases than Intermountain is.  Intermountain will work to confirm any non-privileged information and update

information under an approved-upon patient waiver to disclose patient information and as Intermountain has a right to do under Rule 26(e)(1) .

**INTERROGATORY NO. 4**:   For each Patient, state the date(s) Plaintiff provided goods and/or services to the Patient, the amount Plaintiff charges for those goods and/or services, the amount Plaintiff has been paid for those goods and/or services, the amount Plaintiff alleges it is still owed for those goods and/or services, and the Person(s) Plaintiff alleges owe Plaintiff that amount.

**ANSWER TO INTERROGATORY NO. 4**:  Intermountain objects for all the same reasons stated in the previous answer to Interrogatories Nos. 2 and 3, which asks for identification of all ELAP Plans and ELAP Member Patients.  Again, ELAP calls for privileged information including protected physician-patient information.  Intermountain further objects that the interrogatory requires an identification of all "Patients," which, as set forth in Answer to Interrogatory No. 3, ELAP has intentionally worked to conceal such that Intermountain could not readily identify them, or information about them, independently.  Subject to its objections, Intermountain does not currently confirm or deny the information that ELAP has provided. Furthermore, after reviewing some of the database information from ELAP's production, Intermountain has reason to believe that ELAP collects and maintains the financial data on what ELAP's Member Patients pay out of pocket and the remaining balances on all Intermountain bills.  Thus, this interrogatory calls for duplicative information and calls for information more readily obtainable by ELAP.  To the extent Intermountain has additional responsive information, it will produce business records pursuant to Rule 33(d) containing responsive information. Intermountain will work to confirm the information and update non-privileged information under

an approved-upon waiver to disclose private patient information unless otherwise determined by the Court.

**INTERROGATORY NO. 5**:  Identify all documents Plaintiff contends constitute a contract between Plaintiff and Patients to pay Plaintiff for hospital goods and services, including all documents incorporated in, integrated into, referenced by, otherwise made part of, or necessary to interpret such alleged contracts.

**ANSWER TO INTERROGATORY NO. 5**:  Subject to the objections set forth in this answer, Intermountain contends the Patient Agreement executed at the time of admission to an Intermountain facility is, as a general matter, the operative agreement that governs the terms of the relationship on which Intermountain agrees to provide non-emergent health care to patients seeking admission to an Intermountain facility, including the obligation of the patient to pay for health care.  The Patient Agreement is the contract at issue with which Intermountain contends ELAP interfered.  Intermountain objects to this interrogatory because it calls for a pure legal conclusion with respect to what constitutes a contract and whether documents referenced in the Patient Agreement are incorporated as part of the contract between the patient and Intermountain.  The interrogatory also calls for a pure legal conclusion with respect to whether any understanding beyond the Patient Agreement may constitute a contract of any kind and determining whether some particular arrangement may constitute a contractual obligation beyond or in addition to the Patient Agreement would require an overly burdensome audit of every relationship with and conduct of all patients.

Subject to the foregoing, Intermountain identifies a representative volume of non-privileged documents by producing them in accordance with Rule 33(d).  The Patient Agreement

requires the patient to pay amounts the facility determines to be owing based on the nature of the

health care rendered, which, due to the uncertainty inherent in the provision of health care

services, cannot in all instances be predicted at time of facility admission.  Taking the foregoing

into account, the amount of the patient's obligation to pay for health care is reflected in

Intermountain's billing statements to the patient stating such amounts, if any.

**INTERROGATORY NO. 6**:    For each alleged contract identified in your response to

Interrogatory 5, please describe the circumstances under which such contract was executed,

including, but not limited to, when the contract was executed, how the contract was presented to

the Patient, whether the Patient was given any opportunity to negotiate the terms of such

contract, and whether Plaintiff would have provided care if the Patient had not signed such

contract.

**ANSWER TO INTERROGATORY NO. 6**:  Intermountain objects to this interrogatory

because it is compound (no less than four separate interrogatories), and overbroad and unduly

burdensome in purporting to seek in the context of a single interrogatory a detailed description

for the circumstances of contract formation for thousands of individuals.  Intermountain objects

for the same reasons stated in the previous Answer to Interrogatory No. 2, which asks for

identification of ELAP Plans.  In addition, this interrogatory is vague and ambiguous because

"Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has

not sufficiently defined and may vary based on individual circumstances.

Intermountain also objects because ELAP calls for privileged information including

physician-patient communications and information subject to Intermountain's various duties to

its patients.  Intermountain has communicated its concerns to ELAP in separate communications

and Intermountain hereby incorporates those communications herein.  The interrogatory also calls for a pure legal conclusion concerning the moment of contract formation and calls for irrelevant information.

Subject to its objections, Intermountain responds that, as a general matter, the precise manner of presentation of the Patient Agreement may vary among Intermountain's twenty-four hospitals.  Generally speaking, the Patient Agreement is generally presented in electronic or paper form.  The date of execution is included, and when presented electronically, the time of execution of the Patient Agreement may also be recorded electronically at the time of execution of the agreement.  The Patient Agreement advises patients, and requires them to certify, that—among other things—the Member Patients had the opportunity to ask questions, and have had all questions answered satisfactorily, that the patient (or legal representative) has read the agreement, that the patient understands the agreement.  Patients are also notified of Intermountain's financial assistance policy.

With respect to whether patients have an opportunity in advance to negotiate contract terms, Intermountain provides patients with tools to estimate costs in advance of care to determine their financial responsibility before hospital admission.  *See, e.g.*, https://intermountainhealthcare.org/patient-tools/hospital-cost-estimates.  Furthermore, Intermountain invites patients (particularly uninsured patients or those with non-contracted payors) to understand and discuss financial responsibility in advance of receiving care by offering significant discounts for pre-payment and/or prompt payment.  *See, e.g.*, https://intermountainhealthcare.org/about/who-we-are/trustee-resource-center/faqs/financial-questions.  However, because Intermountain does not understand or believe that ELAP

encourages Member Patients to contact Intermountain in advance to discuss such options, it is unclear the extent, if any, to which ELAP Member Patients may have sought or benefitted from such arrangements otherwise available to them.  Furthermore, because ELAP conceals its involvement in the Plans' administration, it is impossible to speculate as to all of the circumstances surrounding communications between the patient and Intermountain at the time of admission, including the extent to which the patient directly or indirectly sought to shield involvement of ELAP.  In this regard, Intermountain objects that ELAP may be in a better position than Intermountain to obtain information responsive to this interrogatory.

With respect to whether Intermountain would provide care if a patient has not signed the Patient Agreement, Intermountain responds that as a general matter, non-emergent patients are expected to sign a Patient Agreement as a condition of admission.  Of course, the patient is always free obtain the sought-after health care from another health care provider.

**INTERROGATORY NO. 10**:  Identify all software, applications, or other information technology systems utilized by Plaintiff to maintain information pertaining to Patients.

**ANSWER TO INTERROGATORY NO. 10**:  This interrogatory is vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances. Intermountain also objects to this request for being irrelevant to any issue of consequence. Nothing about the ELAP's Member Patients' medical records—or the databases that hold that information—matters to the claims, defenses, or counterclaims at issue in this action. Furthermore, ELAP cannot stand in the shoes of the patients and raise an enforceability or voidability of the Patient Agreement.

The interrogatory is overbroad, burdensome, and disproportional to the needs of the case. As of today, ELAP has disclosed 7881 patient encounters and 2670 unique Member Patients who received care at Intermountain since August 2011.  Because of ELAP's manner of concealing its involvement with each Member Patients and the ELAP Plans, there is no efficient means for Intermountain to identify the Member Patients and the 7881 patient encounters outside of ELAP's disclosures and answers to interrogatories.  Even those answers provided only the date of admission and the billed charges.  ELAP withheld which Intermountain facility provided the care or a patient identification number.  As result, it will take Intermountain time to review the information provided and compile a working set of information.  Until then, Intermountain does not know what facility provided the care, and thus what particular facility-based systems may be at issue.  Thus, Intermountain cannot readily provide this information.

Furthermore, the number of ELAP's Member Patients will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain without intending to pay under the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its answers and responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this answer.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP continues to

supplement the additional information can be compiled without imposing an unreasonable and disproportionate burden, Intermountain may be in a position to supplement this answer.

Subject to its objections, Intermountain identifies ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

**INTERROGATORY NO. 11**:  Identify all software, applications, or other information technology systems utilized by Plaintiff to perform cost accounting, cost allocations, or other costing functions.

**ANSWER TO INTERROGATORY NO. 11**:  Intermountain objects because ELAP's interrogatory calls for irrelevant information about the cost of providing health care.  Again, this information is not probative of a fact of consequence to Intermountain's claims, ELAP's possible defenses, or ELAP's Counterclaims.  Under Federal Rule of Civil Procedure 26(b)(1), this interrogatory falls outside the scope of discovery.  Intermountain hereby incorporates the relevancy objection as set forth in its Answer to Interrogatory No. 8, above.  Intermountain objects that the interrogatory is disproportional to the needs of the case because, in part, the burden of calculating the cost to provide health care goods and services is not an important or material issue nor does it provide any benefit to the adjudication of this lawsuit.  Identifying the costs associated with the "subject medical bills" is an almost impossible task to perform.  Since August of 2011 there have been approximately 7881 patient encounters for a wide array of different health care concerns.  Intermountain hereby incorporates the disproportional and financial-burden objection as set forth in its Answer to Interrogatory No. 9, above.  The interrogatory is also duplicative and redundant because—as ELAP alleges—it has already determined Intermountain's costs as part of ELAP's allowable-claim-limit calculation.  *See*

ELAP's Counterclaim ¶ 21.  While Intermountain takes no position on the accuracy of ELAP's information, ELAP has already performed this analysis to its satisfaction, there is no benefit of Intermountain providing cost information.  Implicit within ELAP's allegations, it believes that the cost information it has is reliable and it is thus unnecessary for Intermountain to provide any substantive answer to this interrogatory.

Subject to the foregoing objections, Intermountain answers as follows: ▢

▢

**INTERROGATORY NO. 14**:  Identify the Person(s) involved in setting Plaintiff's chargemaster rates.

**ANSWER TO INTERROGATORY NO. 14**:  Intermountain objects to this interrogatory because it calls for irrelevant information about the prices charged, which is not a fact of consequence to Intermountain's claims, ELAP's possible defenses, or ELAP's Counterclaims.  Thus, it falls outside the scope of discovery.  Fed R. Civ. P. 26(b)(1).  Intermountain hereby incorporates the relevancy objection as set forth in its Answer to Interrogatory No. 8, above.  The interrogatory is vague and ambiguous in that many Intermountain departments, facilities, and/or individuals may be "involved" in setting pricing to some extent, and the Interrogatory fails to apply any meaningful limitation on the information sought as necessary to avoid making the interrogatory unduly burdensome.  For that and other reasons, the interrogatory is also disproportional to the needs of the case and is overly burdensome to Intermountain to provide a meaningful answer.  Moreover, this interrogatory calls for privileged and confidential business information concerning Intermountain's internal

operations and business practices.  Patients have multiple avenues through which they can seek to identify Intermountain's charges for care before seeking admission to an Intermountain facility.  Thus, disclosing those who set the prices and the process of setting those prices is irrelevant to the material issues in dispute in this lawsuit between ELAP and Intermountain.  Additionally, this interrogatory seeks irrelevant information because ELAP cannot stand in the shoes of the patients and raise an enforceability or voidability of the Patient Agreement.

Subject to the foregoing objections, Intermountain responds that the people and groups of people "involved" in setting rates have varied from year to year and from facility to facility.  Setting rates is a multi-division and iterative process that has historically involved the finance staff and personnel at various facilities.  While it would be a disproportional burden for Intermountain to identify each and every person who has been involved since August 2011, Intermountain identifies ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

**INTERROGATORY NO. 15**:    State all factors considered by Plaintiff or its agents when establishing chargemaster rates, including any applicable policies or procedures.

**ANSWER TO INTERROGATORY NO. 15**:  Intermountain objects to this interrogatory because it calls for irrelevant information about the prices charged, the setting of prices, or the reasonableness of prices, none of which is a fact of consequence to Intermountain's claims, ELAP's possible defenses, or ELAP's Counterclaims.  Thus, it falls outside the scope of discovery.  Fed R. Civ. P. 26(b)(1).  Intermountain hereby incorporates the relevancy objection as set forth in its Answer to Interrogatory No. 8, above.  Intermountain further objects that the interrogatory is overbroad because it seeks information about all of Intermountain's prices and is not limited to any matters particularly related to any patient encounters at issue.  The

interrogatory is vague and ambiguous in that it applies no meaningful limitation on what constitutes a factor "considered" in setting prices and nevertheless places upon Intermountain the burden on Intermountain of compiling a list of "all" such factors, no matter how tangential or remote.  The burden on Intermountain of doing so vastly outweighs any benefit to ELAP from receiving such information.  For that and other stated reasons, the interrogatory is also disproportional to the needs of the case and is overly burdensome to Intermountain to provide a full answer.  This interrogatory calls for privileged information.  Additionally, this interrogatory seeks irrelevant information because ELAP cannot stand in the shoes of the patients and raise an enforceability or voidability of the Patient Agreement.

As discussed in the Answer to Interrogatory No. 14, this interrogatory calls for confidential business information concerning Intermountain's internal operations and business practices.  Patients have multiple avenues through which they can seek to identify Intermountain's charges for care before seeking admission to an Intermountain facility.  Disclosing those who set the prices and the process of setting those prices is irrelevant to the material issues in dispute in this lawsuit between ELAP and Intermountain.

Subject to the foregoing objections, as a general matter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**INTERROGATORY NO. 16**:   State the percentage of accounts for which Plaintiff was paid 100% of its billed charges.

**ANSWER TO INTERROGATORY NO. 16**:  Intermountain objects to this interrogatory because it calls for irrelevant information about amounts received from others

pursuant to contract relationships that are indisputably inapplicable to ELAP's Member Patients, Plans, TPAs, or ELAP itself.  ELAP's business model, insofar as it relates to Intermountain, rejects entering into contracts that would determine mutually agreed-upon discounts in advance of delivering care to patients.  Utah law encourages the formation of preferred-provider agreements and ELAP is not entitled to receive information comparing payments Intermountain is entitled to receive from payors with mutually agreed-upon contracts relative to ELAP's model that rejects such contracts.  Intermountain further objects because the information ELAP seeks also reflects the payments made to Intermountain from government programs, like Medicare and Medicaid, with which ELAP is similarly unaffiliated.  Furthermore, ELAP seeks information that reflects collection of accounts for which patients were eligible for financial assistance, prompt-pay discounts, or other self-pay discounts.  Intermountain does not understand ELAP to encourage patients to obtain any such discounts from billed charges, and thus the amounts ELAP Member Patients may owe is necessarily higher than what a patient with a contracted payor, or whom is eligible for a discount may pay.  Accordingly, this interrogatory does not seek information useful to any material issues in dispute and is thus disproportional to the needs of the case.  Additionally, this interrogatory seeks irrelevant information because ELAP cannot stand in the shoes of the patients and raise an enforceability or voidability of the Patient Agreement.

Because the interrogatory seeks information concerning the amounts paid by patients who are entitled to, or eligible for, discounts from billed charges that ELAP has eschewed, the interrogatory does not seek information of any consequence to Intermountain's claims, ELAP's possible defenses, or ELAP's Counterclaims, and therefore the interrogatory falls outside the scope of discovery.  Fed R. Civ. P. 26(b)(1).  Intermountain hereby incorporates the relevancy

objection as set forth in its Answer to Interrogatory No. 8, above.  Furthermore, the interrogatory

is vague and ambiguous in that it is unclear what ELAP means by "accounts" and whether ELAP

means a particular billing encounter or all encounters associated with a particular patient.  The

request is also overbroad and unduly burdensome because it seeks information unrelated to any

of the ELAP Member Patients at issue or the specific facilities where they were treated.

Subject to these objections, Intermountain identifies those accounts identified in ELAP's

Attachment 3 to its answers to Intermountain's first set of discovery requests that show the

amount billed to be equal to the allowed-claim-limit amount.  That shows that 2.6% of the ELAP

Member Patient Accounts have paid the billed charges as billed.  This information is based

exclusively off of ELAP's production and Intermountain cannot confirm or deny the validity of it

at this time.  Intermountain, in the normal course of its business, does not maintain or calculate

this number across all accounts and is unable to produce an answer to the interrogatory as written

for non-ELAP Member Patients without incurring vast expense in auditing collections for

millions of claims since 2007.  To the extent ELAP refines the request to focus on information

relevant to ELAP Member Patients or the claims and defenses at issue in the case, Intermountain

will re-evaluate whether a further answer is possible.

**INTERROGATORY NO. 17**:  Identify all alleged communications between ELAP, or

its alleged agents, and Plaintiff.

**ANSWER TO INTERROGATORY NO. 17**:  Intermountain objects to this

interrogatory because it is vague and ambiguous with respect to what ELAP describes as its

"alleged agents."  It is unclear for example, whether ELAP means the ELAP Member Patients

whom Intermountain describes as ELAP's "agents" in connection with the fraud and negligent

misrepresentation claims, attorneys representing ELAP Member Patients in connection with disputes over Intermountain's collection of balance bills, representatives of TPAs, representatives of Plans, or others.  The interrogatory calls on Intermountain to speculate about the scope of the request and invites Intermountain to guess about ELAP's intended meaning, thus rendering the interrogatory unduly burdensome.  Regardless, ELAP is as likely to possess or control these communications as Intermountain, so ELAP's interrogatory seeks information readily obtainable by ELAP.  Examples of these communications include the confidential-settlement communications in 2016–2017, communications concerning the *Musick* litigation, communications from Buckley Beal and Fisher Broyles disputing Intermountain bills and/or threatening lawsuits against Intermountain, and communications concerning the present litigation.  Some of the responsive communications—such as oral communications about matters that cannot be material to the case (appointment confirmations, facility directions, etc.)—are not necessarily stored or maintained in the course of regular business, so the interrogatory calls for information outside Intermountain's possession, custody, or control.  And some communications ELAP made to ELAP Plans, TPAs, brokers, and Member Patients later resulted in communications to Intermountain.  The initial communications with the agents are likely outside of Intermountain's possession, custody, and control.

Communications that resulted in the formation of Patient Agreements by ELAP's Member Patients are responsive to this interrogatory; however, the Patient Agreements include privileged patient information.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain will identify non-privileged responsive communications found in Intermountain's possession, custody, or control after performing a reasonable search in accordance with Rule 33(d).  Documents containing patient privileged information if any will be withheld absent patient-specific waivers.

**INTERROGATORY NO. 18**:  Identify all allegedly false communications made by ELAP, or its alleged agents, upon which Plaintiff's claims are based.

**ANSWER TO INTERROGATORY NO. 18**:  Intermountain objects to this interrogatory because it calls for a pure legal conclusion with respect to what constitutes a "false communication."  The request is also premature because discovery is ongoing and Intermountain cannot yet identify all such communications requested.  Intermountain has yet to discover all of ELAP's false communications which may remain unproduced or may be in the possession of third parties yet to be identified.  Moreover, as set forth in the Second Amended Complaint, ELAP has intentionally worked to conceal its association with its Member Patients.  As a result, Intermountain could not readily identify them and Intermountain objects that ELAP has intentionally frustrated Intermountain's ability to discover this information.  Intermountain also objects in that the interrogatory seeks information that may be used primarily for the purposes of impeachment.  Furthermore, the number of ELAP's false communications will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain without intending to pay under the Patient Agreements.

Subject to its objections, Intermountain identifies under Rule 33(d) the non-privileged false statements set forth in and attached to the Second Amended Complaint.  Intermountain

further identifies any and all non-privileged documents and communications, whether yet

discovered or otherwise, concerning any of the false statements referenced in the Second

Amended Complaint, whether made to ELAP Member Patients, Plans, TPAs, brokers, or anyone

else.  Intermountain also identifies non-privileged documents produced by ELAP, plan

documents prepared by ELAP, documents Intermountain produced in its Rule 26(a) initial

disclosures, representations ELAP has made to any party concerning any of the false statements

attributed to ELAP in the Second Amended Complaint, ELAP's communications with Plans,

Member Patients, and brokers regarding a Member Patient's legal obligations to pay the charged

amounts for health care (whether through Intermountain or otherwise).  Intermountain further

identifies a representative volume of non-privileged ELAP Member Patients' representations to

Intermountain concerning the patients' obligation to pay for Intermountain's health care,

including and without limitation a representative volume of Patient Agreements signed or agreed

to by ELAP Member Patients, which includes a promise to pay the amounts charged.

 **INTERROGATORY NO. 19**:   For each allegedly false communication identified in

response to Interrogatory 18, state all ways in which Plaintiff relied upon the communication.

 **ANSWER TO INTERROGATORY NO. 19**:  Intermountain objects to this

interrogatory because it calls for a pure legal conclusion with respect to what constitutes a "false

communication."  The request is also premature because discovery is ongoing and Intermountain

cannot yet identify all such communications requested or the ways Intermountain relied upon

them.  Intermountain has yet to discover all of ELAP's false communications which may remain

unproduced or may be in the possession of unidentified third parties.

Subject to its objections, Intermountain relied on the false communications in the manner identified in the allegations in the Second Amended Complaint, including and not limited to providing health care to ELAP's Member Patients based on their promises to pay for the health care received under the Patient Agreements.  This was thoroughly explained in Intermountain's opposition memoranda to ELAP's two motions to dismiss.

**INTERROGATORY NO. 20**:   State all facts which form the basis of Plaintiff's contention that Patients are ELAP's agents.

**ANSWER TO INTERROGATORY NO. 20**:  Intermountain objects to the interrogatory to the extent that it asks for information that is generally outside of Intermountain's possession, custody, or control because of the clandestine nature of ELAP's relationships with its Plans, TPAs, brokers, and Member Patients.

Subject to its objections, Intermountain identifies ELAP's concealment of its identity and participation in auditing claims from Intermountain for years.  Intermountain also references and incorporates the facts and analysis set forth in Intermountain's opposition to ELAP's partial motion to dismiss with respect to the "agent" issue, specifically in connection with the fraud and negligent misrepresentation claims.  Intermountain's Mem. Opp'n to ELAP's Partial Mot. Dismiss 4–16, ECF No. 41 (Nov. 30, 2018).  Intermountain further incorporates the allegations in the Second Amended Complaint concerning ELAP's use of Member Patients as instrumentalities of ELAP's fraud.  Additional facts will be gathered in ongoing discovery from ELAP and other parties.

**INTERROGATORY NO. 21**:  Identify all persons not identified elsewhere in the answers to these interrogatories whom are known or believed by Plaintiff to have any knowledge

or information which is relevant, directly or indirectly, to the claims or defenses at issue in this action.

**ANSWER TO INTERROGATORY NO. 21**:  Intermountain objects to this interrogatory because it is premature and duplicative of the Rule 26(a) initial disclosures. Discovery is ongoing and Intermountain will likely discover more people and entities as it receives information from ELAP and other third parties.

Subject to its objections, Intermountain identifies the ELAP Member Patients, ELAP Plans, TPAs, and brokers whose activities resulted in Member Patients obtaining care from Intermountain since August 2011.  Intermountain further identifies each and every custodian of documents in ELAP's possession concerning any of the matters raised in response to Intermountain's discovery requests, each of whom Intermountain may call as a witness in this case.  The subject of this answer will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain without intending to pay under the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its answers with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this answer. Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP continues to supplement the additional information can be compiled without

imposing an unreasonable and disproportionate burden, Intermountain may be in a position to supplement this answer.

**INTERROGATORY NO. 22**:  Identify all persons, other than your attorneys, from whom you have sought to gather information or statements, or to preserve testimony, in connection with this action and, for each such person, indicate the date of the contact, all persons present, and the information that you obtained from each such person.

**ANSWER TO INTERROGATORY NO. 22**:  Intermountain objects and declines answering this interrogatory in accordance with its rights under the protected attorney work product doctrine, which is recognized by the Rule 26.  Subject to its objection, Intermountain identifies ELAP as an entity from whom it has sought information described in the interrogatory. Intermountain has also issued subpoenas on four TPAs that represent ELAP Plans in an effort to obtain information within the scope of the interrogatory.

**INTERROGATORY NO. 24**:  Identify and describe with reasonable particularity each and every effort you have made to try to minimize or reduce your claimed damages, or to avoid additional claimed damages, in this action.

**ANSWER TO INTERROGATORY NO. 24**:  Intermountain objects to these interrogatory calls for privileged information including attorney-client communications, attorney work product, and physician-patient communions.  Furthermore, the scope of this answer will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain without intending to pay under the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its answers and responses with current information regarding which Member

Patients receive Intermountain care, so that Intermountain can supplement this answer. Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP continues to supplement the additional information can be compiled without imposing an unreasonable and disproportionate burden, Intermountain may be in a position to supplement this answer.

Subject to its objections, Intermountain ████████████

███████████████████████████████

███████████████████████████████

████.  Intermountain has communicated to the broker community its concerns with ELAP's model, advising of the existence of this litigation, and advising that Intermountain does not accept ELAP payments in lieu of the amounts Member Patients are otherwise obligated to pay. In addition, Intermountain requested that ELAP lift its confidentiality designation for identified Plans and Member Patients to allow Intermountain to send written communications to ELAP Members notifying them that about Intermountain's position on ELAP's Member Patients obtaining non-emergent care at Intermountain facilities.  ELAP rejected that request. Intermountain has further sought to mitigate its damages by following through on balance billing Member Patients notwithstanding ELAP's interference.  Intermountain has requested that ELAP instruct its Member Patients that it is not contracted with Intermountain and Intermountain will balance bill for services rendered.  ELAP has refused Intermountain's requests to allow

Intermountain to contact Plans and Member Patients to inform them of Intermountain's position concerning ELAP.  As a result, ELAP continues to directly or indirectly encourage Member Patients to come to Intermountain facilities where ELAP knows its Member Patients will sign Patient Agreements and will be balance-billed for amounts not paid by Plans.  Intermountain's damages continue to accrue as a result.

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 2**:   A complete, itemized, un-redacted bill from the Plaintiff for all goods and services provided to the Patients that form the basis of the subject medical bills.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2**:  Intermountain objects to this request because it calls for duplicative information that ELAP provided in answers and responses to Intermountain's discovery requests.  The request calls for information readily obtainable by ELAP based on ELAP's allegations that it reviews all itemized bills and balance bills for its ELAP's Member Patients.  *See* ELAP's Counterclaim ¶ 21.  Furthermore, the information ELAP provided in response to Intermountain's discovery requests shows that ELAP is in as good, if not better, position to obtain the requested information from ELAP's own databases than Intermountain is.

To the extent that this request calls for information, which is based on the identification of ELAP's Member Patients, ELAP seeks information generally outside Intermountain's possession, custody, or control because ELAP and its Member Patients, Plans, and TPAs conceal ELAP's involvement with and association with the Member Patients and Plans.  *See* Answer to Interrogatory No. 3, above.  Accordingly, Intermountain relies on ELAP's own disclosures and

identification of ELAP's Member Patients.  The request calls for premature information as discovery is ongoing and Intermountain believes ELAP has not instructed its ELAP's Member Patients to discontinue seeking health care from Intermountain.  This request is vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances. Insofar as this request asks for the third-party guarantors, this request is irrelevant, overbroad, and burdensome.

Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain intends to produce non-privileged uniform billing forms, which are customarily accepted as sufficient information for a third-party payer to submit payment, and recent balance bills for ELAP's Member Patients who have obtained care from Intermountain and used ELAP's services.  The mere compiling of documents the 7881 patient encounters that appear to be relevant to this litigation will take thousands of hours for trained billing professionals.  Accordingly, Intermountain is diligently working to allocate, assign, and/or procure resources to compile the uniform and balance bills for the 2670 unique Member Patients whose rights are at stake.  Until then, Intermountain identifies ELAP's Attachments 3 and 4 that it supplied Intermountain in response to Intermountain's discovery requests; however, Intermountain does not currently confirm or deny the validity or authenticity of that information. Intermountain is working toward confirming the information and/or update information after

receiving an approved-upon waiver from each and every patient authorizing Intermountain to disclose his or her private information.  Intermountain intends to supplement this response as discovery continues as it has a right to do under Rule 26(e)(1) to the extent it obtains additional information.

**REQUEST FOR PRODUCTION NO. 3**:   All account notes, records, statements, or other documents reflecting information related to goods or services provided to Patients, the Hospital's billing and collection efforts related to the subject medical bills, and Patients' purported obligations to pay for such goods or services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**:  To the extent that this request calls for information, which is based on the identification of ELAP's Member Patients, ELAP seeks information generally outside Intermountain's possession, custody, or control because ELAP and its Member Patients, Plans, and TPAs conceal from Intermountain ELAP's involvement with and association with ELAP's Member Patients.  *See* Answer to Interrogatory No. 3, above.  Accordingly, Intermountain relies on ELAP's own disclosures and identification of ELAP's Member Patients.  The request calls for premature information as discovery is ongoing and Intermountain believes ELAP has not instructed its Member Patients to discontinue seeking health care from Intermountain.  This request is vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances.  Insofar as this request asks for the third-party guarantors, this request is irrelevant, overbroad, and burdensome.

Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to

its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

ELAP's request is so overbroad that it calls for privileged information including attorney-client communications and attorney work product because, in part, ELAP's strategy to avoid payment of the billed charges has been to threaten meritless lawsuits through the law offices of Buckley Beal and Fisher Broyles.

Notwithstanding the above objections, this request seeks irrelevant, overbroad, and unduly burdensome information.  The notes, records, statements, or other documents "***reflecting*** information ***related***" (emphases added) to the health care received would include nearly every medical and financial record related to each of the 7881 patient encounters.  For all the reasons stated in the Response to Request for Production No. 1, incorporated herein, this request is tremendously burdensome.  It would take many months for Intermountain to compile this information and it would serve no purpose to the litigation.  Also, this request is duplicative to ELAP's other requests.  Nothing about the patient's health records would ever form a basis for ELAP's potential defenses or its counterclaims because ELAP may not stand in the shoes of the patients to argue about the reasonableness of the charges or the quality or necessity of the care.  Thus, under Rule 26(b)(1), this request is outside the scope of discovery.  Regarding the portion of the request concerning records relating to billing and collection, most of the responsive records are the uniform bills, balance bills, and communications with ELAP's hired attorneys at Buckley Beal and Fisher Broyles.  Therefore, this information is readily obtainable by ELAP— as discussed in the prior Response to Request for Production No. 2—without Intermountain needing to compile the vast number of documents.  Because information sought in this request is

held within databases that cannot be queried to export readily usable information that could be transferred to ELAP, the only method of compiling this information is through taking multiple individual screenshots for each account record, which is an extremely time-consuming task for these 7881 patient accounts.  Further, the information contained in the screenshots would include physician-patient information that cannot be disclosed absent the patient's waiver.

Subject to these objections, Intermountain intends to produce non-privileged uniform and balance bills under the same conditions set forth in Response to Request for Production No. 2 and redacted communications between Intermountain and Buckley Beal and Fisher Broyles concerning the collection of amounts owed from ELAP's Member Patients.  Intermountain intends to supplement this response as discovery continues as it has a right to do under Rule 26(e)(1) to the extent it obtains additional information.

**REQUEST FOR PRODUCTION NO. 4**:   All documentation You contend constitutes a contract to pay any of the subject medical bills, including copies of all documents referenced, incorporated, otherwise made part of, or necessary to interpret such contracts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**:  Intermountain objects to this request because it calls for information that is duplicative, disproportional, burdensome, and premature.  The request is duplicative because ELAP has already asked for this information in Interrogatory No. 5.  Accordingly, Intermountain incorporates its Answer to Interrogatory No. 5, herein.

Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to

its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

This request further calls for a pure legal conclusion with respect to what constitutes a part of the contract between Intermountain and its patients.  The request also calls for a pure legal conclusion with respect to whether any understanding beyond the Patient Agreement may constitute a contract of any kind and determining whether some particular arrangement may constitute a contractual obligation beyond or in addition to the Patient Agreement would require an overly burdensome audit of every relationship with and the conduct of all patients.  Generally, the text of the Patient Agreement identifies certain other information and forms, such as the Notice of Privacy Policies, the Facility's Financial Assistance Policy, and the facilities set charges for health care.  Whether these documents are legally "incorporated" or "otherwise made part of" the Patient Agreement improperly calls for a pure legal conclusion.

Intermountain further objects because responding to this request would require auditing every file for each 7881 patient encounter to discern whether, in addition to the Patient Agreement, some additional agreement exists between Intermountain and ELAP's Member Patients.  This audit would be overbroad and unduly burdensome because it would take thousands of hours to perform and provide no benefit to the litigation because any other agreement would not affect the analysis of whether ELAP has interfered with the economic relationship, defrauded Intermountain, made a negligent misrepresentation, or has been unjustly enriched.  Such contracts would be irrelevant to the claims, defenses, and counterclaims of this litigation.

Without implying any legal conclusion about whether another document is incorporated or not, Intermountain will produce non-privileged standard versions of the Patient Agreement used in Intermountain's facilities since August 2011 after a reasonable search.  August 2011 appears to be the first month in which the ELAP's Member Patients received care from Intermountain.  Any Patient Agreement before that date would be irrelevant, burdensome, disproportional, and duplicative because the Patient Agreements used before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those documents would add to Intermountain's burden in compiling unimportant documents from long ago. Further, those documents would likely be largely duplicative of recent versions.  Intermountain will compile the individual Patient Agreements that would govern the 7881 relevant patient encounters; however, Intermountain will not produce them until ELAP has either produced waivers from the individual Member Patients or the Court compels production.  ELAP does not request a redacted version of these agreements; but if it had, redacting this quantity of documents that are all substantively similar, if not the same, would be burdensome, duplicative, and disproportional to the needs of the case because a redacted document would include no more information than the standard forms.  Intermountain intends to supplement this response as discovery continues as it has a right to do under Rule 26(e)(1) to the extent it obtains additional information.

**REQUEST FOR PRODUCTION NO. 5**:   Any Patient Agreement allegedly executed by a Patient.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**:  Intermountain objects for the same reasons set forth in Response to Request for Production No. 4 and is hereby

incorporated.  Intermountain further objects because this request is substantively duplicative of

Request for Production No. 4 and/or fails to set forth a basis upon which to make a distinction.

Subject to its objections, Intermountain will compile a representative volume of Patient

Agreements that would govern the 7881 relevant patient encounters; however, Intermountain

will not produce any until ELAP has either produced waivers from the individual Member

Patients or the Court compels production.  ELAP does not request a redacted version of these

agreements; but if it had, redacting this quantity of documents that are all substantively similar, if

not the same, would be burdensome, duplicative, and disproportional to the needs of the case

because a redacted document would include no more information than the standard forms.

Intermountain intends to supplement this response as discovery continues as it has a right to do

under Rule 26(e)(1) to the extent it obtains additional information.

**REQUEST FOR PRODUCTION NO. 11**:    All tax documents filed by Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:  Intermountain objects

because this request calls for information that is irrelevant, disproportional, overbroad,

burdensome, vague and ambiguous, and confidential.  Discovery of sensitive financial

documents (e.g., tax returns) is allowed only when the information relates significantly to the

matters at issue.  That is not the case here.  Intermountain's tax filings are not related to any of

the claims, defenses, or counterclaims made in this action.  Intermountain publishes on its

website a financial report every year.  Tax filings beyond this information would be duplicative,

irrelevant, overbroad, burdensome, and completely disproportional.  Subject to these objections,

Intermountain will provide the most recent non-privileged IRS Form 990 after performing a

reasonable search.  Intermountain intends to supplement this response as discovery continues as it has a right to do under Rule 26(e)(1) to the extent it obtains additional information.

**REQUEST FOR PRODUCTION NO. 13**:    Plaintiff's audited financial statements, including the financial statements for each individual hospital facility at which a Patient received care.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13**:  Intermountain objects because this request calls for information that is irrelevant, disproportional, overbroad, burdensome, vague and ambiguous, and confidential.  Discovery of sensitive financial documents is allowed only when the information relates significantly to the matters at issue, which is not the case here.  Intermountain's privileged and confidential business information concerning Intermountain's internal operations and business practices is not relevant to any of the claims, defenses, or counterclaims raised in this lawsuit.  Intermountain publishes on its website a financial report every year.  Any financial statements beyond this information would be duplicative, irrelevant, overbroad, burdensome, and disproportional to the needs of the case. Subject to these objections, Intermountain will provide the most recent *Consolidated Financial Statement* issued by an independent auditor after a reasonable search.

**REQUEST FOR PRODUCTION NO. 28**:    All documents related to policies, procedures, protocols, rules, or guidelines concerning the admissions and/or registration process.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**:  Intermountain objects to this request because it is vague and ambiguous and calls for burdensome, overbroad, and disproportional information.  The request is for ***all*** documents "***related to***" policies, etc. concerning admissions, which has no meaningful limit because nearly all health care is

conducted after, as a result of, and related to the admission/registration process.  This broad

request would be unduly burdensome to comply with as written.

Subject to its objections, Intermountain will produce responsive non-privileged internal

policies since August 2011 on the admission process in its possession, custody, or control after

conducting a reasonable search.  Any policy before August 2011 would be irrelevant,

burdensome, disproportional, and duplicative because the policies in place before August 2011

are not probative of whether a fact of consequence is more likely or not.  Gathering those

policies would add to Intermountain's burden in compiling unimportant documents from long

ago.  Further, those documents would likely be largely duplicative of recent versions.

**REQUEST FOR PRODUCTION NO. 29**:    All documents related to policies,

procedures, protocols, rules, or guidelines concerning patient obligations to pay for treatment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29**:  Intermountain objects to

this request because it is vague and ambiguous and calls for burdensome, overbroad, and

disproportional information.  The request is for *all* documents "*related to*" policies, etc.

concerning patient obligations to pay, which has no meaningful limit because nearly all health

care is conducted after, as a result of, and related to patients' representations and promises that

payments will be made to Intermountain.  The scope of this request appears not to be limited to

merely the ELAP's Member Patients, but to all patients.  Patients pay their obligations to

Intermountain in many different ways—such as, government programs like Medicare, Medicaid,

State Children's Health Insurance Program (SCHIP), private insurance policies subject to

discount preferred-provider agreements, single-case agreements, and through Intermountain's

financial assistance programs.  This broad request would ask for policies related to receiving and

collecting payment from all these payers, none of which are relevant to this litigation because ELAP has chosen not to enter a traditional preferred-provider agreement and because ELAP is not associated with any government program, like Medicare.  Collecting the policies related to all these different scenarios would be time consuming and tax Intermountain's human resources, and the documents would not benefit the litigation of the issues of this lawsuit.

Subject to its objections, Intermountain will produce non-privileged responsive internal policies since August 2011 on the process concerning collecting payments from patients who promise to pay for the services themselves and the third-party payer, if there is one, does not pay the charges as billed.  Any other policies would not be relevant to this litigation.  Any policy before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because the policies in place before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those policies would add to Intermountain's burden in compiling unimportant documents from long ago.  Further, those documents would likely be largely duplicative of recent versions.

**REQUEST FOR PRODUCTION NO. 30**:    All documents related to policies, procedures, protocols, rules, or guidelines concerning a "Patient Agreement," as that term is defined by Plaintiff in Plaintiff's First Continuing Discovery Requests and Interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30**:  Intermountain objects to this request because it is vague and ambiguous and calls for burdensome, overbroad, and disproportional information.  First, it is clear that the request seeks policy "concerning *a* 'Patient Agreement.'"  Which Patient Agreement ELAP wishes Intermountain to focus upon remains unclear.  Intermountain presumes that ELAP intended to use the plural here and ELAP meant the

Patient Agreements that its Member Patients signed when seeking admission to Intermountain's facilities.  Second, the request calls for **all** documents "**related to**" policies, etc. concerning Patient Agreements, which has no meaningful limit because nearly all health care is conducted after, as a result of, and related to the patients entering into their own particular Patient Agreement.  Thus, to comply with the request as written would require providing all documents and policies that are related to the care received in the 7881 patient encounters.  That would be burdensome, overbroad, and disproportional to the needs and issues of this action.

Subject to these objections, Intermountain will produce responsive non-privileged internal policies since August 2011 on the Patient Agreements that are in its possession, custody, or control after conducting a reasonable search.  Any policy before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because the policies in place before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those documents and policies would add to Intermountain's burden in compiling unimportant documents from long ago.  Further, those documents would likely be largely duplicative of recent versions.

**REQUEST FOR PRODUCTION NO. 31**:   All documents related to policies, procedures, protocols, rules, or guidelines concerning insurance verification.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31**:  Intermountain objects to this request because it is vague and ambiguous and calls for burdensome, overbroad, and disproportional information.  The request calls for **all** documents "**related to**" policies, etc. concerning insurance verification, which has no meaningful limit because a large majority of patients seeking care from Intermountain claim to be insured.  And the request is not limited to

ELAP's Member Patients, but instead to all Intermountain patients.  Further, nearly all health care is conducted after, as a result of, and related to the patients verifying their insurance.  Thus, to comply with the request as written would require Intermountain to provide all documents and policies that are related to the care received by all the insured patients since December 2007. That would be burdensome, overbroad, and disproportional to the needs and issues of this action. The request is also vague and ambiguous because it is unclear if ELAP intends to ask for just insurance coverage or for coverage under self-funded welfare benefit plans.  Intermountain assumes ELAP means to ask for proof-of-coverage verification for third-party payer situations such as insurers or welfare-benefit plans, such as ELAP Plans.  This is the only interpretation that would include any relevant information to the present litigation.

Subject to these objections, Intermountain will produce responsive non-privileged internal policies since August 2011 on the proof-of-coverage verification for third-party payers like the ELAP Plans in its possession, custody, or control after conducting a reasonable search. Any policy before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because the policies in place before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those documents and policies would add to Intermountain's burden in compiling unimportant documents from long ago.  Further, those documents would likely be largely duplicative of recent versions.

**REQUEST FOR PRODUCTION NO. 35**:   All documents related to policies, procedures, protocols, rules, or guidelines concerning financial assistance, including all financial assistance policies, any separate billing and collection policies, and documents setting forth the amounts generally billed, for each hospital facility at which a Patient received care.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35**:  Intermountain objects to this request because it is vague and ambiguous and calls for irrelevant, burdensome, overbroad, and disproportional information.  The request calls for three disparate types of documents as if they are related—i) the financial assistance policies; ii) billing and collection policies; and iii) the chargemaster for each Intermountain facility.

First, ***all*** documents "***related to***" policies, etc. concerning the financial assistance policies has no meaningful limit because as part of Intermountain's mission of providing care the community, including those without the financial security to pay the full price for their health care, the documents related to providing financial assistance would include nearly every management and financial document.  The request seeks not only those documents but also all the medical records of the patients who received financial assistance.  That would be burdensome, overbroad, and disproportional to the needs and issues of this action.  Note that this request is not limited, or even related to, ELAP's Member Patients.  No party has alleged that an ELAP's Member Patient has inquired or sought financial assistance at or after obtaining health care from Intermountain.  Therefore, even the general policies related to the financial assistance program are irrelevant to the issues of this lawsuit.

Second, the request for all billing-and-collection policies is vague and ambiguous because it is unclear if ELAP intends to ask for policies that are related only to the financial assistance program or to every type of patient and every type of third-party payer.  Intermountain assumes ELAP meant only those policies related to the financial assistance program given the subject matter of the request.  Again, this request is irrelevant because Intermountain does not understand ELAP to encourage Member Patients to seek financial assistance from Intermountain.

Therefore, collecting Intermountain's policies concerning the collection of payments from patients in the financial assistance program would be burdensome, overbroad, and disproportional to the needs of the case because the information is not important and would not benefit the adjudication of a fact of consequence.  The request is also duplicative with the request for the financial assistance policies.

Third, the request for the amounts generally billed for each Intermountain facility is seeking information that is readily obtainable by ELAP through at least two routes.  ELAP can collect this information easily through Intermountain's websites.  *See, e.g.*, https://intermountainhealthcare.org/patient-tools/hospital-cost-estimates.  Second, ELAP might already possess this information by auditing 7881 patient encounters at Intermountain's facilities since 2011.  *See* Counterclaim ¶ 21.

Subject to the above objections, Intermountain will produce non-privileged general financial-assistance policies since August 2011 in Intermountain's possession, custody, or control after conducting a reasonable search.  Any policy before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because the policies in place before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those policies would add to Intermountain's burden in compiling unimportant documents from long ago.  Further, those documents would likely be largely duplicative of recent versions.

**REQUEST FOR PRODUCTION NO. 36**:   All documents referencing or mentioning ELAP.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36**:  Intermountain objects to producing responsive documents that constitute privileged attorney-client communications,

attorney work product, or materials prepared in anticipation of litigation.  Under the discovery rules, Intermountain is only obligated to perform a reasonable search and provide only what is in its possession, custody, or control after such a search.  .

Subject to the above objections, Intermountain will produce responsive non-privileged documents since August 2011 in Intermountain's possession, custody, or control after conducting a reasonable search.  Any documents before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because the policies in place before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those documents would add to Intermountain's burden in compiling unimportant documents from long ago.

**REQUEST FOR PRODUCTION NO. 37**:   All documents referencing or mentioning reference based pricing, metric based pricing, or some similar terminology meant to identify the type of reimbursement methodology used by ELAP or other similar health care cost containment companies or repricers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37**:  Intermountain objects to producing responsive documents that constitute privileged attorney-client communications, attorney work product, or materials prepared in anticipation of litigation or for trial.  Under the discovery rules, Intermountain is only obligated to perform a reasonable search and provide only what is in its possession, custody, or control after such a search.  Intermountain has numerous data systems in multiple locations, which makes searching for all documents with these words is overly burdensome and disproportional to the needs of the case.

Subject to the above objections, Intermountain will produce non-privileged responsive documents since August 2011 in Intermountain's possession, custody, or control after conducting a reasonable search.  Any documents before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because documents existing before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those documents would add to Intermountain's burden in compiling unimportant documents from long ago.

**REQUEST FOR PRODUCTION NO. 38**:    All communications between Plaintiff and Patients.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38**:

Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Intermountain objects because this request is vague and ambiguous in that "Patient" is defined to include "third party guarantors of patients." This phrase has not been sufficiently defined and may vary based on individual circumstances.  Such guarantors might include third-party payers, parents, guardians, youth leaders, etc.  Thus, ELAP's request calls for Intermountain to find all communications with these guarantors for completely unrelated issues, including their own particular health care.  To perform this would be burdensome and not benefit the litigation.  Further, any communications between Intermountain and ELAP's Member Patients is also readily obtainable by ELAP where ELAP has a contract relationship and/or

obligation to legally represent them.  ELAP cannot displace its investigation of its Member

Patients communications onto Intermountain.

The request is duplicative because ELAP has already asked for all medical records,

Patient Agreements, collection records, etc.  It is also overbroad, burdensome, and

disproportional to require Intermountain to review all its records which are located throughout

Utah and Idaho in various electronic, physical, and hybrid systems for any potential

communications with over 2670 unique Member Patients and their multiple guarantors, which

ELAP has not identified.  The request is not reasonably tailored to any disputed or material issue.

For example, the request encompasses without limitation trivial communications (facility

directions, appointment confirmations, the history of present illness, or family history of cardiac

disease) that cannot be material to the case.  None of this information is relevant to this litigation

and it would be arduous to gather this information for the 7881 patient encounters at stake.

Further, this information is irrelevant because ELAP cannot stand in their Members' shoes and

use the Member Patients' medical information as a defense for its defense or purported

counterclaim.

Subject to the above objections, Intermountain intends to gather relevant a representative

volume of non-privileged Patient Agreements, uniform bills, the most recent balance bills, a

representative volume of proof-of-coverage card images, and any other non-privileged

communications with ELAP's Member Patients made after August 2011 and regarding their

commitments to pay the billed charges or the practices of their Plans, the TPAs, or ELAP in

Intermountain's possession, custody, or control after conducting a reasonable search.  Note that

any communications before August 2011 would be irrelevant, burdensome, disproportional, and

duplicative because communications before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those communications would add to Intermountain's burden in compiling unimportant communications from long ago.

Consistent with Intermountain's other answers and responses, Intermountain will not produce unredacted communications until Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP has not asked for redacted communications, but even if it had, collecting these records will take thousands of trained-employee hours even without redacting communications.  Note that any communications before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because communications before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those communications would add to Intermountain's burden in compiling unimportant communications from long ago.  Intermountain intends to supplement this response as discovery continues as it has a right to do under Rule 26(e)(1) to the extent it obtains additional information.

**REQUEST FOR PRODUCTION NO. 39**:    All communications between Plaintiff and ELAP Plans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39**:  Intermountain objects to this request for being burdensome because all ELAP Plans hide their affiliation with ELAP, which makes it nearly impossible for Intermountain to know whether it has in fact communicated with an ELAP Plan.  The request is duplicative and calls for information readily obtainable by ELAP as it relates to communications that ELAP knows about and is in a better position to obtain than Intermountain.

Subject to its objections, Intermountain intends to gather the uniform bills for ELAP's Member Patients; the most recent balance bills, which will reflect payments received from ELAP Plans; a representative volume of proof-of-coverage card images; and other communications with ELAP Plans concerning ELAP related matters since August 2011 in Intermountain's possession, custody, or control after conducting a reasonable search.  Consistent with Intermountain's other answers and responses, Intermountain will not produce unredacted communications until Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP has not asked for redacted communications, but even if it had, collecting these records will take thousands of trained-employee hours even without redacting communications. Note that any communications before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because communications in place before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those communications would add to Intermountain's burden in compiling unimportant, irrelevant communications from long ago.  Intermountain intends to supplement this response as discovery continues as it has a right to do under Rule 26(e)(1) to the extent it obtains additional information.

**REQUEST FOR PRODUCTION NO. 40**:   All communications between Plaintiff and ELAP.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40**:  Intermountain objects to this request because it calls for information readily obtainable by ELAP.  Any communication made between ELAP and Intermountain would also be in ELAP's possession.

To the extent that this request seeks those communications made by ELAP through its agents (e.g., ELAP's Member Patients, TPAs, Plans, brokers, etc.) this request is unfairly ambiguous and imprecise to warrant Intermountain to respond. Such an interpretation would be duplicative of Request for Production Nos. 38, 39, 41, and 42 and objectionable for all the reasons stated in Intermountain's respective Responses.

Subject to its objections, Intermountain directs ELAP to the . Intermountain will produce the demand letters drafted and sent at ELAP's instruction from Buckley Beal and Fisher Boyles to Intermountain in an attempt to persuade Intermountain to give in, back down, and stop collecting money from ELAP's Member Patients who promised to pay the balance of their bills. Communications between counsel for the parties in this litigation are presumed to be within ELAP's possession and will not be re-produced.

**REQUEST FOR PRODUCTION NO. 41**:   All communications between Plaintiff and brokers for ELAP Plans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41**: Intermountain objects to this request for being burdensome because brokers for ELAP Plans do not identify themselves to Intermountain. Furthermore, Intermountain is not aware of who are all the "brokers for ELAP Plans." Thus, Intermountain has requested this information from ELAP. However, ELAP did not clearly identify who all are brokers for ELAP Plans, which places a great burden on Intermountain of deciding who those brokers are.

Most significantly, is that this request seeks all communications between Intermountain and brokers who might market ELAP plans.  The request is not limited to only the communications related to ELAP or ELAP's services.  Brokers often sell several different health care options from many different payers, not only ELAP's services.  To compile those communications would be overbroad, burdensome, and disproportional to the needs of the case.  Furthermore, it would be abusive to the brokers and the other health plans because ELAP is not entitled to learn about non-ELAP related communications with a broker though this litigation, especially if it were to include information about ELAP's competitors.  Regardless of potential trade-secret or confidential information, it is disproportional to require Intermountain to compile, review, and produce communications that are wholly not related to ELAP.  Also, these communications are irrelevant, thus, outside the scope of discovery.

Subject to its objections, Intermountain will gather responsive non-privileged information since August 2011 in Intermountain's possession, custody, or control after conducting a reasonable search.  Note that any communications before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because pre-August 2011 communications are not probative of whether a fact of consequence is more likely or not.

**REQUEST FOR PRODUCTION NO. 42**:   All communications between Plaintiff and Third-Party Administrators (TPAs) for ELAP Plans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42**:  Intermountain objects to this request for being burdensome because TPAs for ELAP Plans do not voluntarily identify themselves to Intermountain.  The request is duplicative and calls for information readily obtainable by ELAP as it relates to communications that ELAP knows to have occurred between

Intermountain and TPAs for ELAP plans.  The request is overbroad and calls for irrelevant

information in that it calls for all communications and not communications related to ELAP or

its Member Patients receiving care under an ELAP Plan.  For the same objections made in

Response to Request for Production No. 41, this request is overly burdensome, disproportional,

and irrelevant.  Moreover, any responsive communications are readily obtainable by ELAP

through the close relationship between the TPAs and ELAP.  Intermountain further objects

because ELAP has frustrated Intermountain's ability to communicate with TPAs for ELAP Plans

by subpoena to obtain relevant information.

Subject to its objections, Intermountain intends to gather non-privileged uniform bills for

ELAP's Member Patients; the most recent balance bills, which will reflect payments received

from ELAP Plans; a representative volume of proof-of-coverage card images, which will show

the Plans' deceptive representations at ELAP's direction; a representative volume of any Notices

of Adverse Benefit Determination received, and other communications with ELAP Plans

concerning ELAP related matters since August 2011 in Intermountain's possession, custody, or

control after conducting a reasonable search.  Consistent with Intermountain's other answers and

responses, Intermountain will not produce unredacted communications until Intermountain

receives appropriate waivers from ELAP's Member Patients.  ELAP has not asked for redacted

communications, but even if it had, collecting these records will take thousands of

trained-employee hours even without redacting communications.  Note that any communications

before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because

communications before August 2011 are not probative of whether a fact of consequence is more

likely or not.  Gathering those communications would add to Intermountain's burden in

compiling unimportant, irrelevant communications from long ago.  Intermountain intends to

supplement this response as discovery continues as it has a right to do under Rule 26(e)(1) to the

extent it obtains additional information.

     **REQUEST FOR PRODUCTION NO. 45**:   All documents referencing or relating to

the meaning of the Patient Agreements.

     **RESPONSE TO REQUEST FOR PRODUCTION NO. 45**:  This request is vague and

ambiguous "referencing or relating to the meaning of Patient Agreements" has no meaningful

limitation because every patient's medical record and billing statement and account note could

be construed to "relat[e] to the meaning of the Patient Agreement[]," to the extent the Patient

Agreement describes the agreement between Intermountain and the patient and the patient's

obligation to pay for services received when the Patient was admitted to Intermountain's

facilities.  Thus, the request is overbroad, burdensome, and disproportional because it calls for all

medical records (which are protected under the physician-patient relationship),

account-receivable documents, etc. for every Intermountain patient since December 2007.  The

request calls for privileged attorney-client communications, protected attorney work product,

judicial testimony, and efforts made in preparation for trial.  Further, the request seeks

duplicative information that falls under the scope of Response to Request for Production No. 30.

     Subject to these objections, Intermountain will produce responsive non-privileged

internal policies since August 2011 on the Patient Agreements that are in its possession, custody,

or control after conducting a reasonable search.  Any policy before August 2011 would be

irrelevant, burdensome, disproportional, and duplicative because the policies in place before

August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering

those documents and policies would add to Intermountain's burden in compiling unimportant documents from long ago.  Further, those documents would likely be largely duplicative of recent versions.

**REQUEST FOR PRODUCTION NO. 46**:    All drafts, versions, editions, or other forms of Patient Agreements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46**:  Intermountain objects to this request as vague and ambiguous in that it is unclear if ELAP is calling for every Patient Agreement signed or agreed to for any patient visit since December 2007 or if ELAP is seeking prior versions of the standard Patient Agreement that Intermountain generally provides patients at admission.  The former would be objectionable for being overbroad, irrelevant, burdensome, seeking privileged information, etc.  Accordingly, Intermountain presumes that the request seeks only prior versions of the standard Patient Agreement that Intermountain generally offers to patients when they seek admission to its facilities.  Even with this narrow construction, ELAP calls for information likely protected by the attorney-client and attorney-work-product privileges.

Subject to these objections, Intermountain will produce non-privileged prior drafts and versions of the standard Patient Agreements since August 2011 in its possession, custody, and control after a reasonable search.  Any responsive documents before August 2011 would be irrelevant, burdensome, disproportional, and duplicative because draft and versions before August 2011 are not probative of whether a fact of consequence is more likely or not.  Gathering those documents would add to Intermountain's burden in compiling unimportant, irrelevant documents from long ago.

**REQUEST FOR PRODUCTION NO. 49**:    All documents reflecting or relating to any allegedly false or misleading statement made by ELAP or its alleged agents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49**:  Intermountain objects to this request because it calls, in part, for information outside Intermountain's possession, custody, or control.  The false and misleading representations include ELAP's statements to TPAs, Plans, brokers, employers, employees, and ELAP's Member Patients outside of Intermountain's presence and shrouded in secrecy.  ELAP and the recipients of ELAP's statements are the parties who likely possess all these false and misleading statements.  Thus, this information is readily obtainable by ELAP.  ELAP has objected to Intermountain's subpoena of TPAs and has sought to block Intermountain's discovery of information responsive to this request.  Furthermore, ELAP has objected to Intermountain's discovery requests that seek information responsive to this request and it is believed ELAP is withholding responsive documents without justification.

This request is duplicative of Interrogatories No. 8, and Intermountain hereby incorporates its answer to the interrogatory herein.  The request is vague and ambiguous because it is unclear if ELAP is asking for all its false or misleading statements or just the ones that were made to ELAP's Member Patients and its other agents that resulted damages and injuries to Intermountain.  Intermountain lacks possession, custody, or control of all the false and misleading statements ELAP has ever made.  Intermountain interprets this request as calling for only the relevant false and misleading statements.  Otherwise the request is overbroad, burdensome, and disproportional to the needs of the case.  Intermountain objects in that this question improperly requests evidence that is for the sole or primary purpose of impeachment, which is outside the scope of discovery.

The request is burdensome in that it requests all documents related to the false and misleading statements, which will include the entire medical record, accounts-receivable records, etc. for each ELAP's Member Patient that obtained Intermountain health care as a result of ELAP's false and misleading statements.  Intermountain also objects because ELAP calls for privileged information to the extent it may seek physician-patient communications and information subject to Intermountain's duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Subject to these objections, Intermountain identifies the false and misleading statements set forth in and attached to the Second Amended Complaint; the documents produced with its Rule 26(a) initial disclosures.  Intermountain will gather a representative volume of ELAP's Member Patients' Patient Agreements; a representative volume of proof-of-coverage card images, which will show the Plans' deceptive representations at ELAP's direction; and other responsive documents in Intermountain's possession, custody, or control after conducting a reasonable search.  Consistent with Intermountain's other answers and responses, Intermountain will not produce unredacted communications until Intermountain receives appropriate waivers from ELAP's Member Patients.

**REQUEST FOR PRODUCTION NO. 50**:  All documents reflecting or relating to any reliance on any allegedly false or misleading statement made by ELAP or its alleged agents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50**:  The request is vague and ambiguous because it "reflecting or relating to any reliance" has no meaningful limitations on what would be responsive to this request.  All medical records, accounts-receivable records, etc.

for all ELAP's Member Patients would be included in this request to the extent Intermountain

has provided health care based on misleading statements by ELAP and/or its agents in

connection with admission to Intermountain facilities.  It could also include all Intermountain's

financial records.  Intermountain instead interprets this request as calling for documents

sufficient to demonstrate Intermountain relied on ELAP's and ELAP's agents' false or

misleading statements.  Even with this narrowed scope, the request is still overbroad,

burdensome, and disproportional to the case.  ELAP cannot reasonably dispute that

Intermountain has relied on the false and misleading promises to pay the charged amounts found

in the Patient Agreements to the 2670 Member Patients who initiated 7881 encounters with

Intermountain receiving health care.  ELAP promotes its model of not paying a health care

provider's charged amounts and pays attorneys to defend against collection activity by health

care providers who ELAP considers aggressive, like Intermountain.

Because the documents reflecting Intermountain's reasonable reliance on the false and

misleading statements of ELAP and its agents will include the Member Patients' bills and current

account balances.  Intermountain also objects because ELAP calls for privileged information

including physician-patient communications and information subject to Intermountain's various

duties to its patients.  Intermountain has communicated its concerns to ELAP in separate

communications and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain intends to gather non-privileged uniform bills for

ELAP's Member Patients and the most recent balance bills, which will reflect payments received

from ELAP Plans in Intermountain's possession, custody, or control after conducting a

reasonable search.  Consistent with Intermountain's other answers and responses, Intermountain

will not produce unredacted documents until Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP has not asked for redacted documents, but even if it had, collecting these records will take thousands of trained-employee hours even without redacting the patient's private information.

Because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain, the response to this request will only continue to grow as the litigation continues.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  To the extent ELAP continues to supplement the additional information can be compiled without imposing an unreasonable and disproportionate burden, Intermountain may be in a position to supplement this response.

**REQUEST FOR PRODUCTION NO. 51**:    All documents reflecting or relating to any damages suffered by Plaintiff as the result of any acts or omissions of ELAP or its alleged agents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51**:  The request is vague and ambiguous because the phrase "reflecting or relating to any damages" has no meaningful limit to its scope.  Again, all the Member Patients' medical records, accounts-receivable records, etc. for all ELAP's Member Patients would be included in this request.  Such a request is overbroad, burdensome, and disproportional to the needs of the case.  Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby

incorporates those communications herein.  The request also seeks documents that are privileged under the attorney-client communications and protected attorney-work-product protections.

This request is premature in the litigation because Intermountain is still discovering ELAP's TPAs, Plans, and Member Patients who are subject to this lawsuit.  Intermountain is still compiling the out-of-pocket payments received from ELAP's Member Patients, which will affect the damage calculation.  Intermountain has not yet completed the computation of all the damages to which it is entitled to recover.  To the extent that Intermountain is entitled to recover the unjust enrichment ELAP received as a result of the health care Intermountain has provided ELAP's Member Patients, the records of how ELAP profited is outside Intermountain's possession, custody, or control and is readily obtainable by ELAP.

Subject to its objections, Intermountain will gather non-privileged document in Intermountain's possession, custody, or control after conducting a reasonable search, and Intermountain intends to produce a representative volume of Patient Agreements; uniform bills for ELAP's Member Patients; and recent balance bills, which will reflect payments received from ELAP Plans.  Consistent with Intermountain's other answers and responses, Intermountain will not produce unredacted documents until Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP has not asked for redacted documents, but even if it had, collecting these records will take thousands of trained-employee hours even without redacting the Member Patients' private information.

**REQUEST FOR PRODUCTION NO. 53**:   All documents supporting Plaintiff's contention ELAP fails to disclose to patients that it files lawsuits in the name of the patient and that the patient will be personally subject to the exhausting demands of litigation, and that

judgment may be entered personally against the patient if a court finds the patient is required to satisfy the outstanding payment amounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53**:  Intermountain objects because this request calls for information readily obtainable by ELAP and is generally outside of Intermountain's possession, custody, or control because of ELAP's method of concealing its communications and representations to its Plans, TPAs, brokers, and Member Patients.

Subject to these objections, Intermountain identifies the false and misleading statements set forth in and attached to the Second Amended Complaint; the documents produced with its Rule 26(a) initial disclosures, and the records ELAP produced in response to Intermountain's discovery requests.  Intermountain will produce other non-privileged responsive documents in its possession, custody, or control after conducting a reasonable search.

**REQUEST FOR PRODUCTION NO. 54**:    All documents supporting the allegations contained in paragraph 28 of the Second Amended Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54**:  Intermountain objects because this request calls for information readily obtainable by ELAP and is generally outside of Intermountain's possession, custody, or control because of ELAP's method of concealing its communications and representations to its Plans, TPAs, brokers, and Member Patients. Intermountain further objects because ELAP has sought to preclude Intermountain from obtaining responsive information from TPAs and it is believed ELAP may be withholding documents that are responsive to this request that are within the scope of Intermountain's discovery requests to ELAP.

Subject to these objections, Intermountain identifies the false and misleading statements set forth in and attached to the Second Amended Complaint; the documents produced with its Rule 26(a) initial disclosures, and the records ELAP produced in response to Intermountain's discovery requests.  Intermountain will produce non-privileged responsive documents in its possession, custody, or control after conducting a reasonable search.

**REQUEST FOR PRODUCTION NO. 55**:   All documents demonstrating ELAP purposefully, willfully, intentionally, and knowingly encouraged patients to go to Plaintiff's hospital facilities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55**:  Intermountain objects because this request calls for information readily obtainable by ELAP and is generally outside of Intermountain's possession, custody, or control because of ELAP's method of concealing its communications and representations to its Plans, TPAs, brokers, and Member Patients.  In addition, Intermountain objects because the request calls for Intermountain to make pure legal conclusion as to what constitutes "purposefully, willfully, intentionally and knowingly" in order to identify responsive information.  Unless all four legal criteria are met, no document would be responsive based on the request as written.

Subject to these objections, Intermountain identifies the false and misleading statements set forth in and attached to the Second Amended Complaint; the documents produced with its Rule 26(a) initial disclosures, and the records ELAP produced in response to Intermountain's discovery requests.  Intermountain will produce non-privileged responsive documents in its possession, custody, or control after conducting a reasonable search.

**REQUEST FOR PRODUCTION NO. 56**:    All documents demonstrating Plaintiff relies on Patient Agreements to provide contractual assurance of payment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56**:

Intermountain objects, this request is vague and ambiguous because what ELAP means by the phrase "relies on . . . to provide contractual assurance" is unclear.  Intermountain assumes ELAP means simply that Intermountain relies on the existence of Patient Agreements in its effort to collect payment for the health care it provides patients.  Intermountain's initial and Second Amended Complaint is sufficient evidence to demonstrate Intermountain's reliance.  Also, all uniform and balance bills and the Patient Agreements themselves demonstrate Intermountain's reliance.  Although such documents are sufficient to demonstrate reliance, ELAP asks for "all documents" demonstrating the fact.  Therefore, the request is overbroad, burdensome, and disproportional to the needs of the case.  To comply with ELAP's request, Intermountain would need to provide all Patient Agreements formed since December 2007, even those thousands of non-ELAP patients.  It would also include nearly every collection effort and financial document created since December 2007.  Further, those documents are grossly irrelevant to the material issues of this litigation.

Subject to its objections, Intermountain intends to gather a representative volume of non-privileged Patient Agreements for ELAP's Member Patients; non-privileged uniform bills for ELAP's Member Patients; and recent balance bills, which will reflect payments received from ELAP Plans after conducting a reasonable search.  Intermountain identifies the false and misleading statements set forth in and attached to the Second Amended Complaint; the documents produced with its Rule 26(a) initial disclosures, and the records ELAP produced in

response to Intermountain's discovery requests.  Intermountain also identifies the non-privileged

policies produced in Responses to Request for Production Nos. 29, 30 and 35.  Consistent with

other answers and responses, Intermountain will not produce unredacted documents until

Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP has not asked

for redacted documents, but even if it had, collecting these records will take thousands of

trained-employee hours even without redacting the Member Patients' private information.

**REQUEST FOR PRODUCTION NO. 58**:   All documents demonstrating ELAP

specifically targeted and solicited its services to attract health plans with members ELAP knew to

be patients of Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58**:  Intermountain objects

because this request calls for information readily obtainable by ELAP and is generally outside of

Intermountain's possession, custody, or control because of ELAP's method of concealing its

communications and representations to its Plans, TPAs, brokers, and Member Patients.

Intermountain further objects because ELAP has sought to preclude Intermountain from

obtaining responsive information from TPAs and it is believed ELAP may be withholding

documents that are responsive to this request that are within the scope of Intermountain's

discovery requests to ELAP.

Intermountain also objects because ELAP calls for privileged information including

physician-patient communications and information subject to Intermountain's various duties to

its patients.  Intermountain has communicated its concerns to ELAP in separate communications

and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain intends to gather a representative volume of non-privileged Patient Agreements and uniform bills for ELAP's Member Patients; demand letters from ELAP's hired attorneys; and other non-privileged documents in Intermountain's possession, custody, or control after conducting a reasonable search. Intermountain identifies documents set forth in and attached to the Second Amended Complaint; the documents produced with its Rule 26(a) initial disclosures; and the records and attachments ELAP produced in response to Intermountain's discovery requests. Consistent with other answers and responses, Intermountain will not produce unredacted documents until Intermountain receives appropriate waivers from ELAP's Member Patients. ELAP has not asked for redacted documents, but even if it had, collecting these records will take thousands of trained-employee hours even without redacting the Member Patients' private information

Because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain, the response to this request will continue to grow as the litigation continues. Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response. Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet ELAP objected to Intermountain using the information about Member Patients, which ELAP designated as CONFIDENTIAL, for this purpose. In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain. To the extent ELAP continues to supplement the additional information can be compiled without imposing an

unreasonable and disproportionate burden, Intermountain may be in a position to supplement this response.

**REQUEST FOR PRODUCTION NO. 59**:    All documents demonstrating ELAP knowingly encouraged Patients to disregard the terms of Patient Agreements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59**:  Intermountain objects to this request as being vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances.  Intermountain assumes that the request focuses only on the actual person who received care from Intermountain, not third-party guarantors.  Intermountain objects because this request calls for information readily obtainable by ELAP and is generally outside of Intermountain's possession, custody, or control because of ELAP's method of concealing its communications and representations to its Plans, TPAs, brokers, and Member Patients. Intermountain further objects because ELAP has sought to preclude Intermountain from obtaining responsive information from TPAs and it is believed ELAP may be withholding documents that are responsive to this request that are within the scope of Intermountain's discovery requests to ELAP.

Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain intends to gather a representative volume of non-privileged Patient Agreements and uniform bills for ELAP's Member Patients; demand letters

from ELAP's hired attorneys; and other non-privileged responsive documents in Intermountain's possession, custody, or control after conducting a reasonable search.  Intermountain identifies documents set forth in and attached to the Second Amended Complaint; the documents produced with its Rule 26(a) initial disclosures; and the records and attachments ELAP produced in response to Intermountain's discovery requests.  Consistent with other answers and responses, Intermountain will not produce unredacted documents until Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP has not asked for redacted documents, but even if it had, collecting these records will take thousands of trained-employee hours even without redacting the Member Patients' private information.

Because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain, the response to this request will continue to grow as the litigation continues.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet ELAP objected to Intermountain using the information about Member Patients, which ELAP designated as CONFIDENTIAL, for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP continues to supplement the additional information can be compiled without imposing an unreasonable and disproportionate burden, Intermountain may be in a position to supplement this response.

**REQUEST FOR PRODUCTION NO. 60**:   All documents demonstrating ELAP has frustrated Plaintiff's efforts to collect balance bills from Patients.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60**:  Intermountain objects to this request as being vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances.  Intermountain assumes that the request focuses only on the actual person who received care from Intermountain, not third-party guarantors.  Intermountain objects because this request calls for information readily obtainable by ELAP and is generally outside of Intermountain's possession, custody, or control because of ELAP's method of concealing its communications and representations to its Plans, TPAs, brokers, and Member Patients.

Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain intends to gather a representative volume of non-privileged Patient Agreements and uniform bills for ELAP's Member Patients; demand letters from ELAP's hired attorneys; and other responsive non-privileged documents in Intermountain's possession, custody, or control after conducting a reasonable search.  Intermountain identifies ELAP's allegations made in paragraphs 25–27, 37, 41, of 114 of its Answer and paragraphs 8–9, 17–25, and 32–33 of its Counterclaims, the documents set forth in and attached to the Second Amended Complaint; the documents produced with its Rule 26(a) initial disclosures; and the records and attachments ELAP produced in response to Intermountain's discovery requests.

Consistent with other answers and responses, Intermountain will not produce unredacted documents until Intermountain receives appropriate waivers from ELAP's Member Patients. ELAP has not asked for redacted documents, but even if it had, collecting these records will take thousands of trained-employee hours even without redacting the Member Patients' private information.

Because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain, the response to this request will continue to grow as the litigation continues. Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response. Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet ELAP objected to Intermountain using the information about Member Patients, which ELAP designated as CONFIDENTIAL, for this purpose. In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain. To the extent ELAP continues to supplement the additional information can be compiled without imposing an unreasonable and disproportionate burden, Intermountain may be in a position to supplement this response.

**REQUEST FOR PRODUCTION NO. 61**:   All balance bills submitted to Patients by Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61**: Intermountain objects to this request as being vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based

on individual circumstances.  Intermountain assumes that the request focuses only on the actual person who received care from Intermountain, not third-party guarantors.  Also, at least some of the responsive information is more readily obtainable by ELAP than Intermountain since ELAP knows its Member Patients and litigates against health care providers who balance bill its Member Patients.  As set forth in the Second Amended Complaint, ELAP has intentionally worked to conceal its association with ELAP Member Patients such that Intermountain could not readily identify them independently and Intermountain thus objects that ELAP has intentionally frustrated Intermountain's ability to discover the information.

Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain intends to gather non-privileged balance bills for ELAP's Member Patients found in Intermountain's possession, custody, or control after conducting a reasonable search.  Consistent with other answers and responses, Intermountain will not produce unredacted balance bills until Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP has not asked for redacted documents, but even if it had, collecting these records will take many hours even without redacting the Member Patients' private information.

Because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain, the response to this request will continue to grow as the litigation continues.  Intermountain relies on ELAP to continue supplementing its responses with

current information regarding which Member Patients receive Intermountain care, so that

Intermountain can supplement this response.  Intermountain volunteered to communicate directly

with the Member Patients in an attempt to mitigate its claimed damages yet ELAP objected to

Intermountain using the information about Member Patients, which ELAP designated as

CONFIDENTIAL, for this purpose.  In the meantime, Intermountain objects to the burdensome

nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP

continues to supplement the additional information can be compiled without imposing an

unreasonable and disproportionate burden, Intermountain may be in a position to supplement this

response.

**REQUEST FOR PRODUCTION NO. 62**:    All documents demonstrating ELAP

induced employers to leave private insurance plans that have contracts with Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62**:  Intermountain objects

because at least some of the responsive information to this request is more readily obtainable by

ELAP than Intermountain since ELAP knows its Plans, TPAs, and brokers who actively induced

employers to use ELAP's services.  As set forth in the Second Amended Complaint, ELAP has

intentionally worked to conceal its association with ELAP Plans so Intermountain could not

identify them.  Thus, Intermountain objects that ELAP has intentionally frustrated

Intermountain's ability to discover this information.  Intermountain further objects because

ELAP has sought to preclude Intermountain from obtaining responsive information from TPAs

and it is believed ELAP may be withholding documents that are responsive to this request but are

within the scope of Intermountain's discovery requests to ELAP.

Subject to its objections, Intermountain identifies non-privileged documents set forth in and attached to the Second Amended Complaint; documents produced with its Rule 26(a) initial disclosures; and the records and attachments ELAP produced in response to Intermountain's discovery requests.  Intermountain will produce other non-privileged responsive documents in its possession, custody, or control after conducting a reasonable search.

**REQUEST FOR PRODUCTION NO. 63**:   All documents demonstrating ELAP promised employers Plaintiff will accept the ELAP-determined amount as payment in full.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63**:  Intermountain objects because at least some of the responsive information to this request is more readily obtainable by ELAP than Intermountain since ELAP knows its Plans, TPAs, and brokers who actively induced employers to use ELAP's services.  As set forth in the Second Amended Complaint, ELAP has intentionally worked to conceal its association and certain representations and promises to ELAP Plans from health care providers.  Thus, Intermountain objects that ELAP has intentionally frustrated Intermountain's ability to discover this information.  Intermountain further objects because ELAP has sought to preclude Intermountain from obtaining responsive information from TPAs and it is believed ELAP may be withholding documents that are responsive to this request that are within the scope of Intermountain's discovery requests to ELAP.

Subject to its objections, Intermountain identifies non-privileged documents set forth in and attached to the Second Amended Complaint; documents produced with its Rule 26(a) initial disclosures; and records and attachments ELAP produced in response to Intermountain's discovery requests.  Intermountain will produce other non-privileged responsive documents in its possession, custody, or control after conducting a reasonable search.

**REQUEST FOR PRODUCTION NO. 64**:    All documents demonstrating the less the health care provider is paid, the more money ELAP receives from the Plan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64**:  Intermountain objects because at least some of the responsive information to this request is more readily obtainable by ELAP than Intermountain since ELAP knows its Plans, TPAs, and brokers who actively induced employers to use ELAP's services.  As set forth in the Second Amended Complaint, ELAP has intentionally worked to conceal its association with ELAP Plans so Intermountain could not identify them.  Thus, Intermountain objects that ELAP has intentionally frustrated Intermountain's ability to discover this information.  Intermountain further objects because ELAP has sought to preclude Intermountain from obtaining responsive information from TPAs and it is believed ELAP may be withholding documents that are responsive to this request that are within the scope of Intermountain's discovery requests to ELAP.

Subject to its objections, Intermountain identifies non-privileged documents set forth in and attached to the Second Amended Complaint; documents produced with its Rule 26(a) initial disclosures; and records and attachments ELAP produced in response to Intermountain's discovery requests.  Intermountain will produce other non-privileged responsive documents in its possession, custody, or control after conducting a reasonable search.

**REQUEST FOR PRODUCTION NO. 65**:    All documents demonstrating ELAP makes concerted and active efforts to conceal its role as the Designated Decision Maker of the Plans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65**:  Intermountain objects because at least some of the responsive information to this request is more readily obtainable by

ELAP than Intermountain since ELAP controls what information is shared with health care providers like Intermountain when auditing claims, developing proof-of-coverage cards, and pursuing litigation threats against health care providers who balance bill ELAP's Member Patients.  In fact, as set forth in the Second Amended Complaint, ELAP has intentionally worked to conceal its association with ELAP Plans so Intermountain could not identify ELAP's involvement.  Thus, Intermountain objects that ELAP has intentionally frustrated Intermountain's ability to discover this information.  Intermountain further objects because ELAP has sought to preclude Intermountain from obtaining responsive information from TPAs and it is believed ELAP may be withholding documents that are responsive to this request that are within the scope of Intermountain's discovery requests to ELAP.

Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain will gather a representative volume of non-privileged proof-of-coverage cards for each Plan that ELAP identified, which are in Intermountain's possession, custody, or control after conducting a reasonable search. Intermountain identifies non-privileged documents set forth in and attached to the Second Amended Complaint; the documents produced with its Rule 26(a) initial disclosures; and the records and attachments ELAP produced in response to Intermountain's discovery requests. Consistent with other answers and responses, Intermountain will not produce proof-of-coverage cards until Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP

has not asked for redacted documents, but even if it had, collecting these records will take many hours even without redacting the Member Patients' private information.

Because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain, the response to this request will continue to grow as the litigation continues.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet ELAP objected to Intermountain using the information about Member Patients, which ELAP designated as CONFIDENTIAL, for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP continues to supplement the additional information can be compiled without imposing an unreasonable and disproportionate burden, Intermountain may be in a position to supplement this response.

**REQUEST FOR PRODUCTION NO. 66**:    All documents demonstrating ELAP's acts and/or omissions have caused reputational harm to or animosity towards Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66**:  Intermountain objects because at least some of the responsive information to this request is more readily obtainable by ELAP than Intermountain because outside of Intermountain's presence ELAP communicates with Intermountain's patients stating falsely that Intermountain's collection efforts are unlawful and prices are excessive, unreasonable, and unconscionable.  Further, much of ELAP's marketing and publicity material claims that health care providers, like Intermountain,

overcharge for healthcare.  Intermountain produced some of this information in its initial

disclosures.  Intermountain expects to find more once ELAP actually produces the marketing

material and website history that ELAP said it would.  Thus, Intermountain objects that ELAP

has intentionally frustrated Intermountain's ability to discover more of this information.

Subject to its objections, Intermountain identifies non-privileged documents set forth in

and attached to the Second Amended Complaint; documents produced with its Rule 26(a) initial

disclosures; and records and attachments ELAP produced in response to Intermountain's

discovery requests.  Intermountain will produce non-privileged demand letters from ELAP's

hired attorneys disputing Intermountain bills and/or threatening lawsuits and other

non-privileged responsive documents in its possession, custody, or control after conducting a

reasonable search.

**REQUEST FOR PRODUCTION NO. 67**:   All documents reflecting the allegations

contained in paragraph 86 of Plaintiff's Second Amended Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67**:  Intermountain objects to

this request as overbroad, burdensome, and disproportional for the needs of the case.

Intermountain already provided documents sufficient to support the allegations made in

paragraph 86 of the Second Amended Complaint in Intermountain's initial disclosures under

Rule 26(a).  To further require Intermountain to produce ***all*** documents reflecting the allegations

would require providing the medical records and all accounts-receivable efforts made for the

twenty-four (24) patient encounters.  ELAP likely already possesses this information because—

as it alleges—it performed line-item audits of all Intermountain's bills sent to ELAP's Member

Patients.  Counterclaim ¶ 21.

Intermountain also objects because ELAP calls for privileged information including physician-patient communications and information subject to Intermountain's various duties to its patients.  Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain intends to gather non-privileged uniform and balance bills and the proof-of-coverage cards associated with these twenty-four patient encounters as part of its general efforts to respond to other requests for production. Intermountain also identifies non-privileged documents set forth in and attached to the Second Amended Complaint; documents produced with its Rule 26(a) initial disclosures; and records and attachments ELAP produced in response to Intermountain's discovery requests.  Consistent with other answers and responses, Intermountain will not produce the uniform or balance bills, a representative volume of proof-of-coverage cards, or any other protected health information until Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP has not asked for redacted documents, but even if it had, collecting these records will take many hours even without redacting the Member Patients' private information.

**REQUEST FOR PRODUCTION NO. 68**:    All documents referenced, identified, consulted, considered, or relied upon when responding to Defendant's Interrogatories and Requests for Admission.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68**:  Intermountain objects to this request because it calls for privileged information including records protected by the attorney-client communications privilege and the attorney-work-product doctrine.  Further, the request calls for privileged information including physician-patient communications and

information subject to Intermountain's various duties to its patients.  Intermountain has

communicated its concerns to ELAP in separate communications and Intermountain hereby

incorporates those communications herein.

Subject to these objections, Intermountain will produce other non-privileged responsive

documents in its possession, custody, or control after conducting a reasonable search.  Consistent

with Intermountain's other answers and responses, Intermountain will not produce unredacted

documents until Intermountain receives appropriate waivers from ELAP's Member Patients.

ELAP has not asked for redacted documents, but even if it had, collecting these records will take

thousands of trained-employee hours even without redacting the documents.

**REQUEST FOR PRODUCTION NO. 69**:   All documents and each and every exhibit

or other item of evidence on which Plaintiff may or intends to rely at the trial of the Lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69**:  Intermountain objects to

this request because it calls for documents that will be used primarily for the purpose of

impeachment.  The request is premature.  Also, the request is vague and ambiguous because it is

the term "may . . . use" is impossible to ascertain at this time.

Subject to its objections, Intermountain will provide ELAP with non-privileged evidence

to which ELAP is entitled at the times set forth in the Rules or by order of the Court.

Intermountain identifies as possible documents those set forth in and attached to the Second

Amended Complaint; the documents produced with its Rule 26(a) initial disclosures; and the

records and attachments ELAP produced in response to Intermountain's discovery requests.

**REQUEST FOR PRODUCTION NO. 70**:    All documents and tangible evidence identified in Plaintiff's Initial Disclosures under Federal Rule of Civil Procedure 26(a) and supplements to those disclosures, if any.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70**:  Intermountain already provided these documents to ELAP.  This request is duplicative.

**REQUEST FOR PRODUCTION NO. 71**:    All documents that reflect, document, refer, or relate to any and all damages (including without limitation for direct damages, consequential damages, or punitive damages) that Plaintiff claims in this action, to Plaintiff's calculations of the amount(s) thereof, and/or to any and all efforts Plaintiff has made to minimize or reduce its claimed damages in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71**:  Intermountain objects because this request is premature in the litigation.  Intermountain is still discovering ELAP's TPAs, Plans, brokers, and Member Patients who are subject to this lawsuit.  Indeed, the damage calculation, and thus the responsive documents to this request, will continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the

extent ELAP continues to supplement the additional information can be compiled without imposing an unreasonable and disproportionate burden, Intermountain may be in a position to supplement this response.

Furthermore, Intermountain is still compiling the out-of-pocket payments received from ELAP Member Patients, which will affect the damage calculation. Intermountain has not yet completed the computation of all the damages to which it is entitled. To the extent that Intermountain is entitled to recover the unjust enrichment ELAP received as a result of the health care Intermountain has provided ELAP's Member Patients, the records of how ELAP profited is outside Intermountain's possession, custody, or control and is readily obtainable by ELAP.

This request calls for information that is readily obtainable by ELAP and some information outside Intermountain's possession, custody, or control because ELAP refuses to produce them despite stating that it would. Those documents will likely be evidence of Intermountain's direct and consequential damages, as well as punitive damages. This request calls for privileged information including attorney work product and physician-patient communications and information subject to Intermountain's various duties to its patients. Intermountain has communicated its concerns to ELAP in separate communications and Intermountain hereby incorporates those communications herein.

Subject to its objections, Intermountain intends to gather a representative volume of non-privileged Patient Agreements; uniform and balance bills for the ELAP's Member Patients; and other non-privileged responsive documents in Intermountain's possession, custody, or control after conducting a reasonable search. Intermountain identifies non-privileged documents set forth in and attached to the Second Amended Complaint; the documents produced with its

Rule 26(a) initial disclosures; and the records and attachments ELAP produced in response to

Intermountain's discovery requests.  Consistent with other answers and responses, Intermountain

will not produce Patient Agreements, bills, or any information with protected health information

until Intermountain receives appropriate waivers from ELAP's Member Patients.  ELAP has not

asked for redacted documents, but even if it had, collecting these records will take many hours

even without redacting the Member Patients' private information.

<u>**RESPONSES TO REQUESTS FOR ADMISSION**</u>

**REQUEST FOR ADMISSION NO. 1**:    Admit Plaintiff sets the charges on the subject

medical bills without any agreement from Patients.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1**:  Intermountain objects

because this request calls for a pure legal conclusion.  It also objects to this request as being

vague and ambiguous because "Patient" is defined to include "third party guarantors of patients,"

which is a phrase ELAP has not sufficiently defined and may vary based on individual

circumstances.  Intermountain assumes that the request focuses only on the actual person who

received care from Intermountain, not third-party guarantors.  The request is also vague and

ambiguous because "sets the charges" might mean set the general chargemaster(s) or it could

mean set which charges are used on the individual subject medical bills.  Intermountain assumes

the latter.

This request is premature in that Intermountain is still confirming that ELAP's

identification of the 2670 unique Member Patients and the 7881 unique patient encounters are

accurate.  Subject to the foregoing, while it is generally the case that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮, Intermountain currently lacks knowledge to admit or deny that the

charges on any one of the bills for the 7881 encounters was determined solely by Intermountain or through agreement with the patient.  Such a response could not be provided without an exhaustive line-item audit of every charge on every bill for all 7881 encounters.  This challenge is exacerbated because the number of patient encounters will probably continue to grow throughout the litigation because Member Patients may continue to visit Intermountain facilities but ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain without intending to pay under the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP continues to supplement and Intermountain has the resources to compile the additional information, Intermountain may be in a position to supplement this response.

Intermountain also objects to this request for being irrelevant to any issue of consequence.  ELAP cannot stand in the shoes of the patients and raise an enforceability or voidability of the Patient Agreement.

**REQUEST FOR ADMISSION NO. 2**:   Admit Plaintiff sets the charges on the subject medical bills without any agreement from ELAP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2**:  Intermountain objects because this request calls for a pure legal conclusion.  Intermountain objects to the request because of the vague and ambiguous nature of "sets the charges" as discussed in Response to Request for Admission No. 1, above, and incorporated herein.  Intermountain also objects to the ambiguous meaning of "any agreement *from* ELAP."  Intermountain lacks knowledge of any agreement it received "from" ELAP.  ELAP already "admit[ted] it does not have . . . [a] contractual arrangement with [Intermountain]."  Ans. ¶ 20.  Further, knowledge of whether there is an agreement or contract is readily obtainable by ELAP.  Furthermore, because Intermountain remains uninformed about the full extent to which ELAP relied upon agents (including Member Patients) to communicate and interact with Intermountain, it is impossible to know whether some amounts charged to Member Patients were actually the result of influence exerted on behalf of, and for the benefit of, ELAP as an undisclosed principal.

This request is irrelevant to the issues of this lawsuit because an admission or denial has no consequence on any of the claims, defenses, or counterclaims.  Therefore, it is outside the scope of discovery.  Fed R. Civ. P. 26(b)(1).

Subject to these objections, Intermountain admits to the best of its current knowledge, that Intermountain sets the charges on ELAP's Member Patients' medical bills that are the subject of this litigation without an agreement from ELAP.

**REQUEST FOR ADMISSION NO. 3**:   Admit Plaintiff sets the charges on the subject medical bills without any agreement from ELAP Plans.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3**:  Intermountain objects because this request calls for a pure legal conclusion.  Intermountain objects to the request

because of the vague and ambiguous nature of "sets the charges" as discussed in Response to Request for Admission No. 1, above, and incorporated herein.  Intermountain also objects to the ambiguous meaning of "any agreement *from* ELAP Plans."  Intermountain lacks knowledge of any agreement it received "from" ELAP Plans.  Intermountain presumes ELAP meant to say "*with* ELAP Plans."

This request is premature in that Intermountain is still confirming that ELAP's identification of the 2670 unique Member Patients and the 7881 unique patient encounters are accurate.  As part of the diligent work, Intermountain must also confirm whether the 78–80 Plan names and entities are accurate.  Intermountain currently lacks knowledge to affirm or deny whether each of those 78–80 Plans formed any implied-in-fact or express contracts with Intermountain.  It is also possible that ELAP Plans have arranged to reach agreement with Intermountain as to charges through a third-party arrangement that has not been disclosed to Intermountain.  However; the number of patient encounters (and thus the number of ELAP Plans) will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain without intending to pay under the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the

extent ELAP continues to supplement and Intermountain has the resources to compile the additional information, Intermountain may be in a position to supplement this response. Intermountain also objects to this request for being irrelevant to any issue of consequence. ELAP cannot stand in the shoes of the ELAP Plans and raise an enforceability or voidability of the Patient Agreement.

Subject to the foregoing, Intermountain admits to the best of its current knowledge, that Intermountain sets the charges on ELAP's Member Patients' medical bills that are the subject of this litigation without an agreement from ELAP Plans.

**REQUEST FOR ADMISSION NO. 4**:    Admit the charges on the subject medical bills come from Plaintiff's applicable chargemaster in effect on the date the goods and services were provided.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4**:  Intermountain objects to this request as being vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances.  Intermountain assumes that the request focuses only on the actual person who received care from Intermountain, not third-party guarantors.

Intermountain also objects to this request for being overbroad, burdensome, and disproportional to the needs of the case.  To admit or deny this request as written would require a line-item audit of all 7881 unique patient encounters that are currently subject to this litigation. Further, this request is premature in that Intermountain is still confirming that ELAP's identification of the 2670 unique Member Patients and the 7881 unique patient encounters are accurate.  Intermountain currently lacks knowledge to affirm or deny that each of the bills

created the 7881 encounters matched perfectly with the applicable chargemaster, but that is generally the procedure at Intermountain facilities.  Intermountain is currently diligently working to compile all uniform bills for the 7881 patient encounters, but it will take thousands of hours to compile this information from all the various Intermountain facilities.  Intermountain will not undertake the burden of confirming that the chargemasters mathematically match each of the 7881 bills because to do so would be disproportional to the needs of this case.

Furthermore, the number of patient encounters will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain without intending to pay under the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.

Intermountain also objects to this request for being irrelevant to any issue of consequence.  ELAP cannot stand in the shoes of the ELAP Member Patients and raise an enforceability or voidability of the Patient Agreement based on the charges.

Subject to its objections, Intermountain admits only that Intermountain's

████ .  However, Intermountain is otherwise unable to admit or deny the substance of the request for lack of information as described above and thus denies on that basis.

**REQUEST FOR ADMISSION NO. 5**:    Admit Plaintiff's chargemasters are confidential.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5**:  Intermountain objects to this request as being vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances.  Intermountain assumes that the request focuses only on the actual person who received care from Intermountain, not third-party guarantors.  Intermountain also objects to this request for being irrelevant to any issue of consequence.  ELAP cannot stand in the shoes of the ELAP Member Patients and challenge the enforceability or voidability of the Patient Agreement based on the charges.  Intermountain further objects that although it has an understanding about the meaning of the term "chargemaster," ELAP has failed to define that term for purposes of this Request and ELAP's request appears to be based on certain assumptions about what a "chargemaster" is (or what a chargemaster includes) that are not disclosed.  Thus, the request is vague and ambiguous.

Subject to its objections, Intermountain admits that, to the extent ELAP uses the term "chargemaster" to refer to data used to determine per-service charges and the aggregation of those data, such information has historically been regarded as confidential and/or proprietary information.  Nevertheless, because Intermountain understands the Request to concern the confidentiality status of each and every "chargemaster," the request as written is denied because Intermountain's current facility prices and charges are publicly available on its website as

required by law.  Further, pursuant to Utah Code section 26-21-27, ELAP Member Patients, as

consumers, have had the right since 2011 to request and obtain a list of prices for procedures,

drugs, goods, and services.

**REQUEST FOR ADMISSION NO. 6**:    Admit charges billed to Patients in excess of

the ACLs calculated by ELAP exceed the amount of benefits to which the Patients are entitled to

receive from their ELAP Plan.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6**:  Intermountain objects to this

request as being vague and ambiguous because "Patient" is defined to include "third party

guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based

on individual circumstances.  Intermountain assumes that the request focuses only on the actual

person who received care from Intermountain, not third-party guarantors.  Intermountain objects

to the use of the initialism "ACL" which is not defined in ELAP's discovery requests.

Intermountain lacks sufficient information to know exactly what "ACL" means which might

mean different things in different contexts, including based on contract terms to which

Intermountain is not a party.  Presumably, "ACL" is defined in the formation documents of the

various ELAP Plans, which Intermountain does not keep or analyze in its ordinary course of

business.  Intermountain also objects to the vague and ambiguous nature of "benefits" which

might have different meanings to different health plans.  ELAP never sufficiently defined these

terms to enable Intermountain to provide a full response.

Intermountain objects that the request calls for a pure legal conclusion about what

ELAP's Member Patients are entitled to from a non-party to this lawsuit.  The subject of this

request is irrelevant to any issue of consequence in this litigation.  ELAP cannot stand in the

shoes of its Plans nor its Member Patients and raise an enforceability or voidability of the Patient Agreement based on the charges.  Simply put, the scope of the ELAP Plans obligations to its Member Patients makes no difference to the claims, defenses, or counterclaims in this lawsuit.

Further, this request is overbroad, burdensome, and disproportional to the needs of this lawsuit.  ELAP attempts to place a burden on Intermountain to i) compile and confirm that the 2670 unique Member Patients are all participants in the 78–80 identified Plans; ii) compile all the plan documents for the 78–80 identified Plans; iii) analyze and confirm whether all the charges related to the 7881 encounters were subject to the plan documents; and iv) audit those charges according to some definition of what "ACL" is, which was not provided.  In addition to being an exorbitant drain on Intermountain's resources, the answer to the question does not matter to any material issue in this lawsuit.

Furthermore, the number of patient encounters (and thus the number of ELAP Plans and plan documents) will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain without intending to pay under the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP continues to supplement and Intermountain has the

resources to compile the additional information, Intermountain may be in a position to supplement this response.

Subject to its objections, Intermountain denies this request for lack of knowledge of the subject matter of the request after making diligent and reasonable efforts.

**REQUEST FOR ADMISSION NO. 7**:    Admit that for every Patient, ELAP has correctly calculated the ACL in accordance with the benefit terms outlined in the applicable plan documents adopted by the Patient's ELAP Plan.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7**:  Intermountain objects to this request for all the reasons stated in Response to Request for Admission No. 6, above, and incorporated herein.  Furthermore, Intermountain objects that this request would assign to Intermountain an inconsequential task on a matter for which Intermountain has no burden.  The task of auditing ELAP's work on the 7881 patient encounter bills is something Intermountain could not be reasonably expected to perform under any circumstance and the request is thus grossly burdensome.  Whether ELAP has correctly used its databases and analytic tools to arrive at the conclusion that is the subject of the request is a matter for ELAP to determine and which has no bearing on any material issue in the case.

Subject to its objections, Intermountain denies this request for lack of knowledge of the subject matter of the request after making diligent and reasonable efforts.

**REQUEST FOR ADMISSION NO. 8**:    Admit the ACLs calculated by ELAP with respect to each Patient exceed the costs to Plaintiff to provide the goods and services listed on the subject medical bills.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**:  Intermountain objects to this request for all the reasons stated in Responses to Request for Admission Nos. 6 and 7, above, and incorporated herein.  Again, ELAP requests that Intermountain audit all of its work and then compare the results to Intermountain's cost estimates.  Performing the underlying work falls outside the scope of permissible discovery, to add on to the burden would only be more egregious.  Intermountain also objects for all the reasons identified in Answers to Interrogatories Nos. 8–9.

Subject to its objections, Intermountain denies this request for lack of knowledge of the subject matter of the request after making diligent and reasonable efforts.

**REQUEST FOR ADMISSION NO. 9**:    Admit the Patient Agreements allegedly executed by the Patients do not contain agreed upon prices for the contemplated hospital goods and services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9**:  Intermountain objects to this request as being vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances.  Intermountain assumes that the request focuses only on the actual person who received care from Intermountain, not third-party guarantors.  The request is vague and ambiguous, overbroad, burdensome, and disproportional, by expecting Intermountain to determine what the "contemplated" health care might have been when the Member Patients signed or agreed to the Patient Agreement.  Forming an opinion about what care was contemplated would require deep analysis of the medical records for 7881 patient encounters in an attempt to determine whether each and every one of the services the patient received (and was

charged for) was "contemplated" at the time of facility admission.  Also, it is unclear **who** contemplated the care—is the Member Patients' or the physicians' contemplation—and would it be an objective or subjective opinion?  Responding to the request would require Intermountain to form medical opinions for all 7881 encounters.

Intermountain also objects to this request for being irrelevant to any issue of consequence.  ELAP cannot stand in the shoes of the ELAP Member Patients and raise an enforceability or voidability of the Patient Agreement based on the charges.  Furthermore, the number of patient encounters (and thus the number of contemplated health care interventions) will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain with the intention not to pay according to the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.

Subject to its objections, Intermountain denies the request because the Patient Agreement includes a provision that the patient agrees to pay the amounts the facility determined to be owed.  Furthermore, at all relevant times Member Patients had the ability to request the prices for the care and services he or she anticipated receiving from the physician and the hospital under Utah Code section 26-21-27.

**REQUEST FOR ADMISSION NO. 10**:    Admit no Patient was given a copy of Plaintiff's applicable chargemaster before signing a Patient Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10**:  Intermountain objects to this request as being vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances.  Intermountain assumes that the request focuses only on the actual person who received care from Intermountain, not third-party guarantors.  The Request also calls for speculation and a factual opinion that is outside its knowledge or its possession, custody, or control.  ELAP asks Intermountain to declare whether the Patient "was given a copy of the applicable chargemaster."  Intermountain's chargemasters are available on the internet and Intermountain does not keep in the course of its ordinary business records of who accessed and/or downloaded chargemasters to or who might have otherwise received chargemasters from third-parties.  Accordingly, the request is overbroad, burdensome, and disproportional.  In addition, even if ELAP's Member Patients did not receive the "chargemaster," they may have received an estimation of the costs for the particular procedure, or ELAP, ELAP Plans, or the TPAs all likely received information about Intermountain's charges for certain health care.  Regardless, the Member Patients, as health care consumers, had a statutory right to request the prices under Utah Code section 26-21-27.

Additionally, it is impossible for Intermountain to even begin the process of determining the validity of the contention made in this request, because ELAP will not allow Intermountain to contact the Member Patients.  To respond to this request would require Intermountain to communicate with the 2670 unique Member Patients to inquire whether they had received the

chargemaster before the 7781 patient encounters.  Beyond being overwhelmingly burdensome, Intermountain could not even undertake this task because ELAP limited how Intermountain used the identities of the list of 2670 unique Member Patients.

Intermountain also objects to this request for being irrelevant to any issue of consequence.  ELAP cannot stand in the shoes of the ELAP Member Patients and raise an enforceability or voidability of the Patient Agreement based on the charges.  Furthermore, the number of patient encounters (and thus the number of Patient Agreements, chargemasters, and Member Patients) will probably continue to grow throughout the litigation because ELAP refuses to instruct its TPAs, Plans, and Member Patients to discontinue seeking health care from Intermountain with the intention not to pay according to the Patient Agreements.  Intermountain relies on ELAP to continue supplementing its responses with current information regarding which Member Patients receive Intermountain care, so that Intermountain can supplement this response.  Intermountain volunteered to communicate directly with the Member Patients in an attempt to mitigate its claimed damages yet on March 8 and 10, ELAP objected to Intermountain using the information about Member Patients for this purpose.  In the meantime, Intermountain objects to the burdensome nature of this situation where ELAP places the burden on Intermountain.  To the extent ELAP continues to supplement and Intermountain has the resources to compile the additional information, Intermountain may be in a position to supplement this response.

Subject to its objections, Intermountain denies the request because Intermountain lacks sufficient knowledge to form an opinion on the subject matter of the request despite diligent and reasonable efforts.

**REQUEST FOR ADMISSION NO. 11**:    Admit no Patient was given a copy of Plaintiff's applicable chargemaster after signing a Patient Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11**:  Intermountain objects to this request for all the reasons stated in Response to Request for Admission No. 10, above, hereby incorporated herein.

Subject to its objections, Intermountain denies the request because Intermountain lacks sufficient knowledge to form an opinion on the subject matter of the request despite diligent and reasonable efforts.

**REQUEST FOR ADMISSION NO. 12**:    Admit Plaintiff never discussed any contemplated hospital goods and/or services or the payment for such goods and/or services for any Patient with ELAP before those goods and/or services were provided.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12**:  Intermountain objects to this request as being vague and ambiguous because "Patient" is defined to include "third party guarantors of patients," which is a phrase ELAP has not sufficiently defined and may vary based on individual circumstances.  Intermountain assumes that the request focuses only on the actual person who received care from Intermountain, not third-party guarantors.  Intermountain objects to the overbroad, burdensome, and disproportional nature of this request.  Furthermore, because Intermountain remains uninformed about the full extent to which ELAP relied upon agents (including Member Patients) to communicate and interact with Intermountain, it is impossible to know whether some of Intermountain's care or the payments for that care were actually the result of influence exerted on behalf of or for the benefit of ELAP as an undisclosed principal. Moreover, because ELAP actively conceals its involvement in transactions with Intermountain, it

is unreasonable to expect Intermountain—in the normal course of business—to even know that the patient was affiliated with ELAP.  Thus, Intermountain could not involve ELAP in the processes described in the request even if it wanted to.  In addition, Intermountain understands ELAP's role to be principally focused on auditing /re-pricing claims after care is administered and ELAP does not alert Intermountain that it is involved at any stage so that Intermountain could (even if it wanted to) engage in a dialogue with ELAP as to the matters addressed in the request.

In all events, answering the question would require a burdensome review of the medical records of at least 7881 patient encounters.

Subject to its objections, Intermountain lacks sufficient knowledge and information to admit or deny this request because ELAP and its agents (including its Member Patients) never identified itself or themselves before seeking care from Intermountain.  Where Intermountain lacked knowledge or notification of Member Patients', TPAs', or Plans' affiliation with ELAP it is at least possible that Intermountain discussed pricing with these parties either directly or through agents before Intermountain provided care.  Therefore, Intermountain must deny for lack of knowledge and cannot be expected to perform account audits for the 7881 encounters to determine whether this ever happened.  Also, Intermountain has a sufficient basis to deny this request because ████████████████████████████████████████████████████ ████████████████████████████.  ELAP's Member Patients have received care after those negotiations.  Furthermore, Intermountain denies this request on the basis that it is Intermountain's contention that ELAP Member Patients that seek admission to Intermountain facilities do so as ELAP's undisclosed agents and Intermountain contends representations by

patients with respect to their obligation to pay (including in the Patient Agreement) are attributable to ELAP.

     As to Responses and objections to Answers:

     DATED this March 15, 2019.

          **MANNING CURTIS BRADSHAW & BEDNAR PLLC**

          */s/ Douglas J. Crapo*

          Alan C. Bradshaw
          Chad R. Derum
          Douglas J. Crapo

          *Attorneys for Plaintiff*
          *IHC Health Services, Inc. dba*
          *Intermountain Health Care, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 15, 2019 I will cause a true and correct copy of the foregoing document to be served in the method indicated below to the following people.

| | | |
|---|---|---|
| _ | VIA FACSIMILE | John W. Mackay |
| _ | VIA HAND DELIVERY | Brett L. Tolman |
| _ | VIA U.S. MAIL | Ray Quinney & Nebeker P.C. |
| _ | VIA UPS/FEDEX | 36 South State Street, Suite 1400 |
| X | VIA EMAIL | Salt Lake City, Utah 84111 |
| _ | VIA ECF | *Attorneys for Defendant* |

| | | |
|---|---|---|
| | | Thomas E. Lavender III |
| _ | VIA FACSIMILE | ted.lavender@fisherbroyles.com |
| _ | VIA HAND DELIVERY | Kristopher R. Alderman |
| _ | VIA U.S. MAIL | kris.alderman@fisherbroyles.com |
| _ | VIA UPS/FEDEX | Fisher Broyles |
| X | VIA EMAIL | 945 East Paces Ferry Road, Suite 2000 |
| _ | VIA ECF | Atlanta GA 30326 |
| | | *Attorneys for Defendant* |

| | | |
|---|---|---|
| | | Stephen E. W. Hale |
| _ | VIA FACSIMILE | shale@parrbrown.com |
| _ | VIA HAND DELIVERY | Bentley J. Tolk (6665) |
| _ | VIA U.S. MAIL | btolk@parrbrown.com |
| _ | VIA UPS/FEDEX | Parr Brown Gee & Loveless |
| X | VIA EMAIL | 101 South 200 East, Suite 700 |
| _ | VIA ECF | Salt Lake City, Utah 84111 |
| | | *Attorneys for Defendant* |

*/s/ Douglas J. Crapo*