IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., a non-profit Utah corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>ELAP SERVICES, LLC, a limited-liability company,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART INTERMOUNTAIN'S SHORT FORM DISCOVERY MOTION CONCERNING ELAP'S REFUSAL TO PRODUCE ITS COMMUNICATIONS WITH INTERMOUNTAIN PATIENTS (ECF NO. 70)**<br><br>Civil No. 2:17-cv-01245-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

Before the Court is Intermountain's Short Form Discovery Motion Concerning ELAP's Refusal to Produce its Communications with Intermountain Patients ("Motion") (ECF No. 70). On June 27, 2019, the Court held oral argument on the Motion. Having considered the parties' briefing and argument, the Court GRANTS IN PART AND DENIES IN PART the Motion as set forth below.

Intermountain asks the Court to make a sweeping ruling finding that that ELAP cannot assert the attorney-client privilege under Utah R. Evid. 504(c), that the requested communications do not fall within the four categories of privileged communications set forth in Utah R. Evid. 504(b)(2)(a)-(d), and that the work product doctrine does not permit ELAP to withhold the requested information. (ECF No. 70.) The Court does not

1

have enough information or sufficient briefing to make such a ruling and declines to do so at this time.

However, based on the parties' briefing and arguments, the Court finds that certain of the communications involving ELAP and patients are not privileged.  ELAP has not demonstrated that communications involving ELAP and patients made prior to the time an attorney was engaged to represent the patient are protected by the attorney-client privilege or work product doctrine.  See Allred v. Saunders, 2014 UT 43, ¶ 25, 342 P.3d 204 (stating that the "burden [is] on the party asserting a privilege to establish that the material sought is protected from discovery").

"The attorney-client privilege protects information given by a client to an attorney that is 'necessary to obtain informed legal advice—which might not have been made absent the privilege.' " S. Utah Wilderness All. v. Automated Geographic Reference Ctr., 2008 UT 88, ¶ 33, 200 P.3d 643 (quoting Gold Standard, Inc. v. Am. Barrick Res. Corp. ("Gold Standard II"), 801 P.2d 909, 911 (Utah 1990)).  Utah Rule of Evidence 504, which codifies the attorney-client privilege, defines "communications" subject to the privilege as including "advice, direction, or guidance" given by a lawyer "in the course of providing legal services," and "disclosures of the client and the client's representative" to a lawyer related to the "client's legal services." Utah R. Evid. 504(a)(7).  Such communications are privileged only if "confidential," meaning they are "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of rendition of legal services to the client or to those reasonably necessary for the transmission of the communication." Utah R. Evid. 504(a)(8).  "However, the mere

existence of an attorney-client relationship 'does not ipso facto make all communications between them confidential.' " Gold Standard II, 801 P.2d at 911 (quoting Anderson v. Thomas, 159 P.2d 142, 147 (Utah 1945)). For example, communications relating to the creation of an attorney-client relationship are generally not privileged or otherwise protected from disclosure. See Gold Standard II, 801 P.2d at 910–12 (finding that that a retainer agreement "describing the creation of an attorney-client relationship" and not "contain[ing] any legal strategies, theories, or conclusions" is not protected by the attorney-client privilege or work product doctrine). Thus, "to rely on the attorney-client privilege, a party must establish: (1) an attorney-client relationship, (2) the transfer of confidential information, and (3) the purpose of the transfer was to obtain legal advice." S. Utah Wilderness, 2008 UT 88, ¶ 33, 200 P.3d 643.

ELAP argues that the communications it had with patients for whom it ultimately obtained legal counsel are privileged because ELAP is the patients' representative and the communications were made to facilitate the rendition of legal services. (ECF No. 79 at 2–3.) ELAP claims that under Moler v. CW Management Corporation, 2008 UT 46, 190 P.3d 1250, communications between a client and a client representative, made even before the clients retained counsel, are privileged. (ECF No. 79 at 2–3.) While the Moler decision left open the possibility that such communications could be privileged, the Utah Supreme Court did not find that the communications in that case were privileged and remanded the case to the district court to determine in the first instance whether the third party at issue was even a "representative" within the meaning of Rule 504. Moler, 2008 UT, ¶¶ 4, 14, 15, 20, 21. Here, ELAP has not demonstrated

3

that the patients at issue designated it as their "representative" within the meaning of Rule 504. ELAP's bare assertion that it is the patients' representative and retained counsel for them is not sufficient to show that it is a "client's representative" under Rule 504. Moreover, ELAP has not shown that any of the communications it had with patients prior to retaining an attorney contain legal strategy, advice, or any other information that the attorney-client privilege would protect. The fact that patients complained to ELAP about balance billing or may have asked ELAP for an attorney to represent them is not a request for legal advice. Nor are the fact of attorney representation or the basic contours of such representation protected by the attorney-client privilege.

Documents are protected by the work product doctrine only if they are prepared in anticipation of litigation. Gold Standard II, 801 P.2d at 910. To satisfy this requirement, the primary purpose of the document must be to assist in pending or impending litigation, which means that it was "either created for use in pending or impending litigation or intended to generate ideas for use in such litigation." Id. at 910–11. "The mere possibility that litigation may occur or even 'the mere fact that litigation does eventually ensue' is insufficient to cloak materials with the mantle of work product protection." Gold Standard, Inc. v. Am. Barrick Res. Corp., 805 P.2d 164, 170 (Utah 1990) (quoting Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983)). ELAP has not shown that Intermountain threatened or initiated litigation against any of the patients prior to the time ELAP purportedly obtained counsel for them, and Intermountain maintains that this has not occurred. (See ECF No. 70-1 at 9 (stating that

4

"Intermountain has never initiated litigation against any ELAP-affiliated Patients," and ELAP has not "provided evidence that Intermountain has 'threatened' litigation against such patients"). Therefore, ELAP has not demonstrated that communications between itself and patients are protected from disclosure by the work product doctrine.

ELAP indicated in its Opposition that during the meet and confer process it offered "to withdraw its privilege objection as to communications involving only ELAP and a patient if Intermountain would limit its requests so as not to seek otherwise privileged communications involving ELAP, the patient, and the lawyer retained by ELAP to represent the patient." (ECF No. 79 at 2.) The Court finds that it is these documents—which ELAP has offered to produce anyway—that are not protected by the attorney-client privilege or work product doctrine. Further, to the extent ELAP continues to claim that documents involving ELAP, patients, and attorneys retained by ELAP are protected from disclosure by the attorney-client privilege, ELAP needs to produce pre-attorney and attorney engagement documents to show that it acted as the patient's representative within the meaning of Utah Rule of Evidence 504. As pertinent here, Utah Rule of Evidence 504(a)(6)(A) defines a "client's representative" as "a person or entity authorized by the client to . . . obtain legal services for or on behalf of the client." Thus, to establish that it acted as a patient's representative, ELAP must show that each patient authorized ELAP to obtain legal services on its behalf. Moreover, the work product doctrine only protects materials created "by or for [a] party or by or for that party's representative." See Gold Standard II, 801 P.2d at 910.

With respect to the remaining communications involving lawyers, the Court rejects Intermountain's argument that ELAP must produce responsive documents because it is not among the five categories of persons under Utah R. Evid. 504(c) and therefore cannot assert the privilege. A party representative is not identified in Utah Rule of Evidence 504(c) as a party that can invoke the privilege, and ELAP agrees that the patient holds the privilege. See ECF No. 70-6 ("The privilege belongs to the patient."). ELAP claims, however, it "has no reason to believe any patient wishes to waive the privilege, so ELAP is not waiving it." (Id.) Neither party's position appears correct. While the parties do not dispute that the client—in this case, the patient—must invoke the privilege under Utah Rule of Evidence 504(c), the Court does not believe that this fact compels ELAP to produce potentially privileged documents. While a party representative may not claim the attorney-client privilege, it cannot waive it either. See Krahenbuhl v. The Cottle Firm, 2018 UT App 138, ¶ 13, 427 P.3d 1216 ("Only the client can waive the attorney-client privilege . . ."). However, ELAP cannot assert the privilege for each patient based on its belief that no patient wishes to waive the attorney-client privilege. Unless ELAP can produce authority to the contrary, if it wishes to withhold such documents from production on the basis of attorney-client privilege, ELAP must obtain authorization from each patient for whom it withholds documents on attorney-client privilege grounds indicating that he or she wishes to invoke the attorney-client privilege as to the documents at issue.

With the benefit of the foregoing ruling, the Court believes that the most expedient way to proceed with respect to this issue is for ELAP to produce the

documents required under this Order and for ELAP to reassess the basis for its privilege claims with respect to documents involving patients, ELAP, and lawyers.  ELAP must produce documents for each patient establishing its role as a client representative. Once it has done that, ELAP should consider whether it must obtain authorization from each patient to invoke the attorney-client privilege, and do so if necessary.  Further, ELAP should supplement its privilege log(s).  The privilege log(s) should specifically identify all documents related to this issue so that Intermountain, and potentially the Court, can understand which documents are at issue.  The revised privilege log(s) should also assert each of the privileges and protections claimed[1] and detail the bases for the privilege claim(s) as to each document.

    After reviewing the additional documents and revised privilege log(s), if Intermountain still finds ELAP's privilege claims deficient, Intermountain may raise that issue with ELAP through the usual meet and confer process required under DuCivR 37-1.  If that process proves unsuccessful, Intermountain may file a motion not to exceed ten (10) pages with respect to this issue.  The motion should identify the specific documents at issue on the privilege log(s) and succinctly explain why the asserted privileges and protections do not apply.  ELAP may file a ten (10) page response within fourteen (14) days and Intermountain may file a five (5) page reply within seven (7) days thereafter.

---

[1] The privilege logs provided to the Court at the July 10, 2019 hearing on different motions identify three privileges:  (1) "AC" or "Attorney Client," (2) "WP" or "Work Product[t]," and (3) "AL" or "Anticipation of Litigation."  The Court is not aware of "Anticipation of Litigation" privilege separate from the work product doctrine.

Finally, ELAP's response to Interrogatory No. 10, also at issue in Intermountain's Motion, is deficient.  The Interrogatory states as follows:

> Identify all ELAP Plans and/or Members who have communicated with ELAP or a Plan administrator (including any Third-Party Administrator) concerning balance billing by Intermountain. If you elect to respond to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d), include all responsive Communications.

(ECF No. 70-3 at 12.)  After interposing various objections, ELAP provided the following response:  "Subject to and without waiving any objection, Attachment 4 contains a list of all balance bills received by Members from Intermountain."  (Id. at 12–13.)  Pursuant to Federal Rule of Civil Procedure 33(d), a party may answer an interrogatory by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could" or "giving the interrogating party a reasonable opportunity to examine" the records.  Fed R. Civ. P. 33(d).

ELAP's production of a list identifying all members receiving balance bills from Intermountain is not responsive to the Interrogatory, which asks ELAP to identify all ELAP plans or members who have communicated with ELAP or a plan administrator concerning balance billing by Intermountain.  The fact that an ELAP member received a balance bill from Intermountain does not mean that the member communicated with ELAP or a third party administrator concerning balance billing by Intermountain.  ELAP must provide a supplemental response to this Interrogatory that responds directly to the question asked.  The proposed order that Intermountain sent to the Court provided a temporal limitation to this Interrogatory, seeking responsive information from January 1,

2011, which the Court finds appropriate. If ELAP chooses to refer to business records to answer the Interrogatory, it may do so in accordance with Rule 33(d). Further, ELAP must produce documents, to the extent required under this Order, responsive to Request for Production No. 15 which seeks the production of documents concerning the communications identified in Interrogatory No. 10. Intermountain's proposed order also provided the same temporal limitation for this Request, which again the Court finds appropriate.

## ORDER

1. The Court GRANTS IN PART AND DENIES IN PART Intermountain's Motion (ECF No. 70).

2. The Court ORDERS ELAP to produce "communications involving only ELAP and a patient," (ECF No. 79 at 2) that are responsive to the document requests at issue (Requests for Production Nos. 15,[2] 16, 30 and 37). ELAP must produce the documents by August 9, 2019.

3. The Court ORDERS ELAP to provide a supplemental response to Interrogatory No. 10 by August 9, 2019. The Interrogatory is modified to seek information from January 1, 2011.

4. As to documents involving ELAP, patients, and lawyers, ELAP must produce documents to demonstrate its role as a client representative if it intends to withhold those documents on attorney-client privilege grounds. Further, ELAP must consider whether it needs to obtain authorization from each patient to invoke the

---

[2] As noted above, this Request is modified to seek documents from January 1, 2011.

attorney-client privilege as to documents involving ELAP, patients, and lawyers, and obtain such authorizations if necessary. Any completed authorizations should be provided to Intermountain.

     5.     The Court ORDERS ELAP to provide revised privilege log(s) to Intermountain. The privilege log(s) should specifically identify all documents related to this issue (i.e., communications involving ELAP, patients, and lawyers that it is withholding on privilege grounds) so that Intermountain, and potentially the Court, can understand which documents are at issue. The revised privilege log(s) should also assert each of the privileges and protections claimed and detail the bases for the privilege claim(s) as to each document. The revised privilege log(s) must be provided as soon as practicable but no later than August 30, 2019.

     6.     After reviewing the additional documents and revised privilege log(s), if Intermountain still finds ELAP's privilege claims deficient, Intermountain may raise that issue with ELAP through the usual meet and confer process required under DuCivR 37-1. If that process proves unsuccessful, Intermountain may file a motion not to exceed ten (10) pages with respect to this issue. The motion should identify the specific documents at issue on the privilege log(s) and succinctly explain why the asserted privileges and protections do not apply. ELAP may file a ten (10) page response within fourteen (14) days and Intermountain may file a five (5) page reply within seven (7) days thereafter.

DATED this 12th day of July, 2019.

BY THE COURT:

_____
Magistrate Judge Evelyn J. Furse