MANNING CURTIS BRADSHAW
 & BEDNAR PLLC
Alan C. Bradshaw, #4801
Chad R. Derum, #9452
Douglas Crapo, #14620
136 E. South Temple, Suite 1300
Salt Lake City, Utah 84111
(801) 363-5678
abradshaw@mc2b.com
cderum@mc2b.com
dcrapo@mc2b.com

*Attorneys for Plaintiff*
*IHC Health Services, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., a non-profit Utah corporation, <br><br>      Plaintiff, <br><br> vs. <br><br> ELAP SERVICES, LLC, a limited-liability company, <br><br>      Defendant. | **OBJECTION TO ELAP'S PROPOSED ORDER ON ELAP'S DISCOVERY MOTION CONCERNING INTERMOUNTAIN'S REFUSAL TO PRODUCE PATIENT INFORMATION** <br><br> Civil No. 2:17-cv-01245-JNP-EJF <br><br> Judge Jill N. Parrish <br><br> Magistrate Judge Evelyn J. Furse |

Plaintiff IHC Health Services, Inc. ("Intermountain") submits this objection to ELAP

Services, LLC's ("ELAP") Proposed Order on ELAP's Discovery Motion Concerning

Intermountain's Refusal to Produce Patient Information.

## BACKGROUND

On July 10, 2019, the Court heard argument on ELAP's short form discovery motion

concerning Intermountain's refusal to produce patient information [Dkt. 76]. At the close of the

hearing, the Court ruled from the bench, granting in part and denying in part ELAP's motion.

The Court directed ELAP's counsel to prepare and submit an order to the Court [Dkt. 94]. ELAP's counsel subsequently prepared a draft order and submitted it to Intermountain's counsel for review. Thereafter, the parties met and conferred extensively concerning the scope of the proposed order, including whether ELAP's proposed order is consistent with the Court's ruling from the bench.

The parties were able to resolve some, but not all, of their differences about the scope of the Court's ruling during the meet and confer discussions. On August 16, 2019, ELAP submitted its proposed order on the Motion to the Court.[1] Intermountain objects to that proposed order for the reasons set forth herein and submits its own alternative proposed order, which is attached as Exhibit B hereto.[2]

## OBJECTION

Intermountain objects to ELAP's Proposed Order on several grounds. As a general matter, Intermountain's objections can be classified in two categories: First, Intermountain objects to the portions of ELAP's proposed order that include rulings the Court did ***not*** make during the July 10 hearing. Second, Intermountain objects to ELAP's proposed order to the extent it excludes rulings the Court ***did*** make during the July 10 hearing.

## I.     ELAP's Proposed Order Includes Rulings the Court Did Not Make.

**Objection 1**:  Intermountain objects because ELAP's identification of which specific discovery requests seek "billing records" is inconsistent with the Court's bench ruling.

---

[1] *See* Exhibit A, ELAP's Proposed Order (sent to chambers by email) on August 16, 2019.

[2] A redline comparison of the two proposed orders is attached hereto as Exhibit C.

At the July 10 hearing the Court distinguished between "**billing records**" and "**non-billing records**," concluding that patients may have waived the physician-patient privilege for "**billing records**" that relate to Intermountain's efforts to collect payment for services rendered.[3] However, in an attempt to expand the scope of the Court's ruling, ELAP's proposed order uses the phrase "**billing-related documents and information**" to define the scope of the types of information for which a waiver may exist. The Court never used such language.

Specifically, ELAP's proposed order states that "For purposes of this Order, billing related documents and information include documents and information responsive to Interrogatories 13 and 17, and Requests for Production 2, 3, 4, 9, 24, 25, 26, 38, 61, 65, 67, and 68." *See* Proposed Order at 2. However, the Court **never** made any ruling concerning whether specific ELAP discovery requests constitute requests for "billing records" that are used to collect payment from patients. In fact, ELAP's counsel made a point at oral argument **not** to address specific discovery requests. Nevertheless, ELAP seeks to take hold of the judicial reins by defining requests seeking "billing records" to include requests that seek information having **_nothing to do_** with the information that patients authorize Intermountain to use to obtain payment for their care upon admission to an Intermountain facility.[4]

---

[3] The Court's definition of what constitutes a "billing record" is discussed *infra* at Objection 5.

[4] For example, several of the discovery requests ELAP says seek "billing records" have nothing to do with the actual billing records created to collect payment from patients, but instead seek discovery of the amounts Intermountain **_hypothetically would have received_** had the patient been covered by a completely different health plan. These include Interrogatory 13 (asking what Intermountain would have received from **_Medicare_** if the patient had been covered by Medicare instead of an ELAP-affiliated Plan); RFP 9 (seeking documents reflecting what Intermountain received for services rendered to patients covered by **_other payors_** for services provided to ELAP-affiliated patients); RFP 24 (seeking documents showing the average amounts paid by **_in-_**

The fact that ELAP references its discovery requests by number, but fails to enumerate the request in the text of the proposed order so that the Court can understand what ELAP is asking the Court to rule upon demonstrates ELAP does not want the Court to look too closely at how ELAP is re-writing the bench ruling. Instead, ELAP seeks to expand the scope of the Court's ruling to lend credibility to its burdensome discovery requests seeking information that have nothing to do with collecting payment from patients.

**Objection 2**: Intermountain objects because ELAP's proposed Order imposes on Intermountain the burden to identify patients that have revoked the waiver of the physician-patient privilege "**within 30 days**." The Court said nothing at the July 10 hearing about which party should be responsible for identifying the patients that have revoked the waiver. Nor did the Court impose a deadline.

As ELAP represented to the Court at the hearing, the waiver-revocation letters were prepared by ELAP and attorneys it engaged, and ELAP is thus in the best position to collect such letters efficiently and with precision. Indeed—despite multiple requests—ELAP has failed to

---

*network health plans or health insurers* for services received by patients covered by ELAP Plans); RFP 25 (seeking documents showing the average amount paid by *out-of-network health plans or insurers* for services received by patients covered by ELAP Plans); RFP 26 (seeking documents showing the average amount paid by *self-pay patients* for services received by patients covered by ELAP Plans). ELAP also seeks to define as requests for "billing records" its interrogatories and document requests that seek information related to this litigation, not patient billing records. These include Interrogatory 24 (seeking information about damages mitigation efforts); RFP 67 (seeking documents concerning allegations in ¶ 68 of the SAMC); and RFP 68 (seeking documents referenced while responding to ELAP's discovery requests). Furthermore, ELAP also erroneously defines several other requests as seeking "billing records." For example, Interrogatory 17 seeks communications between Intermountain and ELAP or its "agents" and RFP 47 seeks transcripts of testimony given by Intermountain concerning health care reform, health care costs and charges, health care economics, or health care finance.

provide Intermountain with sufficient identifying information for ELAP patients so that Intermountain could distinguish those patients from the millions of other patient records that Intermountain retains and avoid likely errors and confusion based on using incomplete patient identifiers.  As such, ELAP should bear the burden.  If the Court is inclined to seek a compromise, Intermountain suggests that the parties jointly share the obligation to identify patients and report back to the Court within 30 days on the status of their efforts if they have been unable to complete the task.

**Objection 3**: Intermountain objects because ELAP's proposed order imposes on Intermountain the burden to produce responsive documents for the patients who have not revoked the privilege waiver "within 30 days."  Again, the Court said nothing about such obligations or deadlines at the July 10 hearing.  Not only does Intermountain have other objections to the production of such information, it would be unworkable for Intermountain to have to comply with this obligation because Intermountain lacks the discreet patient-identifiers referenced in the preceding objection.  Requiring that Intermountain produce the information within 30 days also implicitly overrules Intermountain's separate objection based on burdensomeness, which the Court expressly did not address at the hearing.

## II.     ELAP's Proposed Order Excludes Rulings that the Court <u>Did Make</u>.

**Objection 4**:  Intermountain objects because ELAP has excluded from its proposed order the Court's statement at the hearing that the joint letter from the parties clarifying the scope of the waiver should be sent to the patients' lawyers or to individual "***if not represented***."  This clarification that the letter should go to patients directly "if not represented" raises the issue of whether the patients are currently represented by the lawyers that sent the original revocation

letter **and** whether the scope of that engagement includes advising patients about waiver of their rights in a matter adverse to ELAP. Intermountain strongly objects to sending letters to ELAP-paid lawyers that may have formerly represented patients but whom have no ongoing representation or have only limited representation defending against hospital collections but not the patients' other interests.

As the Court knows from prior argument and briefing, the lawyers that ELAP hires to defend patients from hospital collections are contractually obligated ***not*** to take positions adverse to ELAP.[5] As such, it is unlikely that letters sent to ELAP-affiliated lawyers, but not to patients directly, will result in responses that reflect an independent determination of the patients' rights. Rather, if the letters are sent only to ELAP's hired lawyers, it can be presumed that the lawyers (because of their obligations to ELAP) will necessarily advise their clients in a manner that puts ELAP's interests ahead of the patients' interests when it comes to disclosing their personal records. In short, the question of whether patients want their billing records and/or other medical information shared with ELAP or anyone else should not be left to lawyers whose primary loyalty is to ELAP. This concern can be addressed by stating that the joint letter should be sent to the patient's lawyer only if the lawyer "continues to represent the patient independent of ELAP's interests".

---

[5] *See* Sample Attorney-Client Representation Agreement, included at pp. 17–18 of the "Welcome to ELAP" packet, attached hereto as Exhibit D (explaining, *inter alia,* that the law firm ELAP engages to defend the patient takes the position that the hospital has been paid appropriately, that the firm will not appeal on the patient's behalf any benefits determination that ELAP makes, and that the client waives any conflict of interest between the firm's representation of both the client and ELAP).

**Objection 5**: Intermountain objects because ELAP's proposed order omits the Court's definition of what constitutes a "billing record." The Court was specifically asked to clarify at the July 10 hearing what a billing record includes and the Court identified the two types of bills discussed during the hearing (the Uniform Bill and the Itemized Statement) as well as billing notes concerning the collection of payment from patients, patient challenges to billing and/or communications with patients about writing off a bill.

ELAP's proposed order intentionally omits this clarification of what constitutes a "billing record" because ELAP wants to impermissibly expand the scope of the Court's order beyond the types of documents actually used to collect payment and into requests seeking many *other* types of information (as described in footnote 4 *supra*). ELAP's omission of this important element of the Court's bench ruling is not accidental and was discussed frequently in the parties' meet and confer discussions concerning the proposed order. In fact, the Court's clarification of what constitutes a "billing record" is the prism through which the decision should be made concerning what types of records patients agreed to waive disclosure of upon facility admission. ELAP wants to characterize things like the *hypothetical* amounts Intermountain would have accepted from other payors as a patient's "billing record" to lend legitimacy to discovery that runs far afield of any material issue in the case and is instead calculated to impose unnecessary discovery burdens on Intermountain.

## CONCLUSION

Intermountain objects to ELAP's proposed order for the reasons stated above and instead asks the Court to enter the proposed order attached as Exhibit B hereto.

RESPECTFULLY SUBMITTED this 19th day of August 2019.

**MANNING CURTIS BRADSHAW & BEDNAR PLLC**

*/s/ Chad R. Derum*

Alan C. Bradshaw
Chad R. Derum
Douglas J. Crapo

*Attorneys for Plaintiff*
*IHC Health Services, Inc. dba Intermountain Health Care, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 16, 2019 I will cause a true and correct copy of the foregoing document to be served in the method indicated below to the following:

| | |
|---|---|
| \_    VIA FACSIMILE<br>\_    VIA HAND DELIVERY<br>\_    VIA U.S. MAIL<br>\_    VIA UPS/FEDEX<br>\_    VIA EMAIL<br>\_X\_  VIA ECF | John W. Mackay<br>Ray Quinney & Nebeker P.C.<br>36 South State Street, Suite 1400<br>Salt Lake City, Utah 84111<br><br>*Attorneys for Defendant* |
| \_    VIA FACSIMILE<br>\_    VIA HAND DELIVERY<br>\_    VIA U.S. MAIL<br>\_    VIA UPS/FEDEX<br>\_    VIA EMAIL<br>\_X\_  VIA ECF | Thomas E. Lavender III<br>ted.lavender@fisherbroyles.com<br>Kristopher R. Alderman<br>kris.alderman@fisherbroyles.com<br>Fisher Broyles<br>945 East Paces Ferry Road, Suite 2000<br>Atlanta GA 30326<br><br>*Attorneys for Defendant* |
| \_    VIA FACSIMILE<br>\_    VIA HAND DELIVERY<br>\_    VIA U.S. MAIL<br>\_    VIA UPS/FEDEX<br>\_    VIA EMAIL<br>\_X\_  VIA ECF | Stephen E. W. Hale<br>shale@parrbrown.com<br>Bentley J. Tolk<br>btolk@parrbrown.com<br>Parr Brown Gee & Loveless<br>101 South 200 East, Suite 700<br>Salt Lake City, Utah 84111<br><br>*Attorneys for Defendant* |

***/s/ Chad R. Derum***