MANNING CURTIS BRADSHAW
 & BEDNAR PLLC
Alan C. Bradshaw, #4801
Chad R. Derum, #9452
Douglas Crapo, #14620
136 E. South Temple, Suite 1300
Salt Lake City, Utah 84111
(801) 363-5678
abradshaw@mc2b.com
cderum@mc2b.com
dcrapo@mc2b.com

*Attorneys for Plaintiff*
*IHC Health Services, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., a non-profit Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ELAP SERVICES, LLC, a limited-liability company,<br><br>Defendant. | **RESPONSE TO ELAP'S OBJECTION TO INTERMOUNTAIN'S PROPOSED ORDER GRANTING IN PART AND DENYING IN PART INTERMOUNTAIN'S SHORT FORM DISCOVERY MOTION CONCERNING ELAP'S IMPOSITION OF GEOGRAPHICAL LIMITATIONS TO LIMIT ITS DOCUMENT PRODUCTION**<br><br>Civil No. 2:17-cv-01245-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff IHC Health Services, Inc. ("Intermountain") submits this response to ELAP Services, LLC's ("ELAP") objection [Dkt. 106] to Intermountain's Proposed Order Granting in Part and Denying in Part Intermountain's Short Form Discovery Motion Concerning ELAP's Imposition of Geographical Limitations to Limit its Document Production.

# INTRODUCTION

On July 10, 2019 the Court held oral argument on Intermountain's motion concerning ELAP's imposition of geographical limitations on its document production. Ruling from the bench, the Court granted the motion in part and denied the motion in part and directed Intermountain to prepare an order. The parties subsequently held detailed meet and confer discussions concerning the scope of the Court's ruling. The parties resolved some, but not all, of their differences. On August 15, 2019, Intermountain submitted a Proposed Order reflecting the Court's bench ruling. ELAP submitted its own competing order and, on August 22, filed its present objections [Dkt. 106].

ELAP's objections to Intermountain's Proposed Order on the geographical limitations motion [Dkt. 72] are minor at best and should be overruled. Indeed, ELAP's objections appear to be less rooted in significant concern over the Proposed Order than in having its own set of objections on file after Intermountain objected to ELAP's separate motion on the physician-patient privilege motion [Dkt. 104]. The two motions are separate and ELAP's attempts to conflate them are misplaced. In any case, ELAP's present objections can be easily resolved in Intermountain's favor.

# RESPONSE TO OBJECTION 1

ELAP's first objection is to the classification of Requests No. 25 and 56 as "knowledge" requests rather than requests that seek communications. At the hearing on Intermountain's motion, the Court ruled that ELAP could not apply broad geographical limitations to document requests seeking information about ELAP's knowledge, as opposed to requests that seek certain

"communications," which the Court concluded could be limited to those concerning ELAP Plans.

Request No. 25 seeks all versions of a document called "Welcome to ELAP" that have been "prepared, edited, and/or distributed since January 1, 2013." As the Court has learned from oral argument and prior briefing, the "Welcome to ELAP" document is significant because it contains several admissions concerning ELAP's business model, including a draft of the attorney-client engagement agreement between ELAP Member Patients and the attorneys ELAP hires to represent them. ELAP says this is a "communications" request because it seeks all versions of the document that were "distributed" since 2013. However, ELAP overlooked the part of the request seeking all versions of the document that were "**prepared, edited, and/or distributed.**" Intermountain seeks to discover whatever ELAP put into the various versions of that document, regardless of whether the document itself was communicated to ELAP Plans. In seeking all versions of the document that ELAP prepared, Intermountain can learn what information ELAP included and omitted over time, and thus evaluate the specific ways ELAP has internally framed the characterizations of the business model it packages in the "Welcome to ELAP" document. In short, the request seeks information about ELAP's knowledge, not just what ELAP communicates with plans.

Request No. 56 seeks "all videos prepared by, for, or on behalf of ELAP to market its business, including videos hosted on ELAP's website or the website of any Person with whom ELAP has a business relationship (e.g., Third-Party Administrators, brokers, Plans, etc.)." ELAP contends that because the request seeks videos about how ELAP "market[s]" its business, the request actually seeks communications with ELAP Plans. Nowhere does Request No. 56 ask for

"communications". Rather, it asks what videos ELAP has prepared for marketing purposes, regardless of whether it sent the videos to particular plans. Indeed, because the videos Intermountain seeks include those "hosted on ELAP's website," Intermountain is seeking information of the type ELAP made ***generally available*** that likely contain ***general content*** about ELAP's marketing message, which is not geographically specific.

Of course, even if the Court decides that the "communications" versus "knowledge" distinction does not squarely fit Request Nos. 25 and 56, the Court should still overrule ELAP's objection. No reason exists to limit the production of documents responsive to these requests to information actually transmitted to ELAP Plans. Rather, because the responsive documents necessarily concern ELAP's business ***as a whole,*** it is not necessary to determine whether documents were sent to specific ELAP Plans. Indeed, because it is unlikely ELAP ever created a "Welcome to ELAP" document or prepared and/or sent marketing videos specifically for the Utah/Idaho market, restricting the scope of the request would merely deny the discovery of relevant information concerning ELAP's business. Furthermore, the Court could not have possibly intended its ruling to mean that the only videos ELAP is required to produce are the videos, ***if any,*** that it proactively sent only to ELAP Plans. Intermountain is entitled to see whatever marketing videos ELAP created, which it made available for viewing for any market or entity it targeted, regardless of where an ELAP Plan is located or its members reside.

## **RESPONSE TO OBJECTION 2**

The Court ruled from the bench that ELAP is required to produce "management level and above" documents for those requests that seek information about the state of ELAP's knowledge. Intermountain's Proposed Order clarifies that "management level and above" documents should

include documents "**prepared by, prepared for, or otherwise in the possession of ELAP personnel in any management position or higher (such as director-level, executive-level, officer-level, or owner/founder level)**."[1] This definition is appropriate because it provides a bright-line rule for ELAP to follow when gathering its responsive information.

ELAP criticizes this approach because it includes documents that management-level personnel "possess," as if it somehow makes sense to *exclude* from discovery the highly relevant documents ELAP's managers actually possess and thus inform their "knowledge." ELAP claims that the definition will "exponentially" expand discovery, requiring it to review "every email document, and paper file sent, received or maintained." Objection at 3. This is a red herring. Intermountain's "knowledge" requests are tightly focused on specific subjects. So long as ELAP reviews the records of the appropriate custodians for responsive documents, no undue burden exists. Furthermore, because the documents at issue are highly material, any burden on ELAP is outweighed by the importance of discovering potentially-admissible information.

In any case, ELAP has no basis to complain about any burden because its own definition of "management level and above" documents is far more onerous than Intermountain's. ELAP argues the Court should restrict the scope of "management level" documents to the documents that were "created by or at ELAP's direction for purposes of implementing or managing its business." On its face, ELAP's definition literally imputes almost any ELAP document (all of

---

[1] The management levels described in the parenthetical clarify the meaning of the phrase "and above." Any management levels below these senior levels would also be encompassed in the definition. Critically, ELAP's proposed order avoids addressing what management levels are imputed, meaning that ELAP can try to evade the obligation to search the documents of its highest officers and/or founders, even though such custodians are most likely to have the documents the Court compelled to be produced.

which presumably were generated for the purpose of "implementing" its business). ELAP's willingness to read Intermountain's definition more broadly than its own proposed definition raises concern that ELAP may intend to interpret its own definition narrowly and thus evade its obligation to comply fully with the intentions underlying the Court's ruling.

Furthermore, ELAP's definition says nothing about *who* the custodians are that may possess responsive documents and thus *where* ELAP should look to find them. Instead, ELAP's definition focuses on a document's *content*, which does nothing more than give ELAP unilateral discretion to define arbitrarily what documents are—and more importantly ***are not***—responsive. The Court has already ruled on the propriety of Intermountain's "knowledge" requests and it should reject ELAP's attempt to inject an additional subjective filter into each request. Indeed, prior experience has shown that when ELAP is vested with discretion to decide what constitutes "high level" documents, it takes an improperly narrow view.[2]

## RESPONSE TO OBJECTION 3

Three of Intermountain's "communications" requests seek communications involving brokers and/or third-party administrators ("TPAs") for ELAP Plans. ELAP claims Intermountain

---

[2] For example, the Court previously granted Intermountain's motion to obtain ELAP's business plans and issued an Order requiring ELAP to produce all "high level documents from January 1, 2008 to the present reflecting implemented strategic initiatives regarding payment for health care services." *See* Dkt. 65. ELAP defended against Intermountain's business plan motion, in part, on the grounds that it sought far too many highly sensitive documents. Dkt. 62. However, when the Court tailored the requests to require the production of "high level" documents, ELAP ultimately produced a mere ***eight*** documents in response to the Court's Order on this critical topic. In other words, when ELAP assumed the role of interpreting what the Court meant by "high level documents," it did so as narrowly as possible. Dkt. 65 at 2. Intermountain will separately take up the issue of ELAP's compliance with the Court's prior order, yet it still informs the current decision before the Court.

seeks to "expand" the scope of the Court's ruling by requiring ELAP to produce communications involving plans *other* than ELAP Plans. ELAP's objection misinterprets the language in the Proposed Order. ELAP concedes that it is obligated to produce "communications with TPAs and brokers" that relate to "ELAP Plans and/or Members of ELAP Plans." Objection at 5. Intermountain's proposed order does not expand the scope of the Court's ruling beyond this. The only reason that communications with brokers and TPAs are separately referenced in Intermountain's Proposed Order is that at least two of Intermountain's requests seek specific communications that are *only* between ELAP and TPAs.[3] The reference to TPAs and brokers in the Proposed Order simply clarifies that ELAP's obligation to produce communications involving TPAs and brokers is coextensive with its obligation to produce communications relating to ELAP Plans. Consistent with the Court's ruling, ELAP is required to produce responsive communications involving TPAs and brokers insofar as they concern ELAP Plans.

## CONCLUSION

For the foregoing reasons, the Court should overrule ELAP's objections and enter Intermountain's Proposed Order as submitted.

---

[3] Request No. 31 seeks communications between ELAP and TPAs "concerning Member(s) obligation under a Patient Agreement." Request No. 32 seeks communications between ELAP and TPAs concerning "the responsibility of Members to pay a health care provider's balance bills."

RESPECTFULLY SUBMITTED this 28th day of August, 2019.

MANNING CURTIS BRADSHAW & BEDNAR PLLC

*/s/ Chad R. Derum*
Alan C. Bradshaw
Chad R. Derum
Douglas J. Crapo

*Attorneys for Plaintiff*
*IHC Health Services, Inc. dba Intermountain Health Care, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 28, 2019 I will cause a true and correct copy of the foregoing document to be served in the method indicated below to the following:

| | | |
|---|---|---|
| _ _ | VIA FACSIMILE | John W. Mackay |
| _ _ | VIA HAND DELIVERY | Ray Quinney & Nebeker P.C. |
| _ _ | VIA U.S. MAIL | 36 South State Street, Suite 1400 |
| _ _ | VIA UPS/FEDEX | Salt Lake City, Utah 84111 |
| _ _ | VIA EMAIL | |
| _X_ | VIA ECF | *Attorneys for Defendant* |

| | | |
|---|---|---|
| _ _ | VIA FACSIMILE | Thomas E. Lavender III |
| _ _ | VIA HAND DELIVERY | ted.lavender@fisherbroyles.com |
| _ _ | VIA U.S. MAIL | Kristopher R. Alderman |
| _ _ | VIA UPS/FEDEX | kris.alderman@fisherbroyles.com |
| _ _ | VIA EMAIL | Fisher Broyles |
| _X_ | VIA ECF | 945 East Paces Ferry Road, Suite 2000 |
| | | Atlanta GA 30326 |
| | | *Attorneys for Defendant* |

| | | |
|---|---|---|
| _ _ | VIA FACSIMILE | Stephen E. W. Hale |
| _ _ | VIA HAND DELIVERY | shale@parrbrown.com |
| _ _ | VIA U.S. MAIL | Bentley J. Tolk |
| _ _ | VIA UPS/FEDEX | btolk@parrbrown.com |
| _ _ | VIA EMAIL | Parr Brown Gee & Loveless |
| _X_ | VIA ECF | 101 South 200 East, Suite 700 |
| | | Salt Lake City, Utah 84111 |
| | | *Attorneys for Defendant* |

                                                */s/ **Chad R. Derum***