Stephen E. W. Hale (5285)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
btolk@parrbrown.com
shale@parrbrown.com

John W. Mackay (6923)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
jmackay@rqn.com

Thomas E. Lavender III (admitted pro hac vice)
Kristopher R. Alderman (admitted pro hac vice)
**FISHER BROYLES, LLP**
945 East Paces Ferry Road, Suite 2000
Atlanta, Georgia 30326
Telephone: (404) 400-4500
ted.lavender@fisherbroyles.com
kris.alderman@fisherbroyles.com

*Attorneys for Defendant ELAP Services, LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., a non-profit Utah corporation,<br><br>        Plaintiff,<br><br>v.<br><br>ELAP SERVICES, LLC, a limited liability company,<br><br>        Defendant. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO MAINTAIN CONFIDENTIALITY OF IDENTITIES OF PATIENTS, PLANS, BROKERS, TPAs, AND RELATED HEALTH INFORMATION**<br><br>Case No. 2:17-cv-01245-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

ELAP Services, LLC ("ELAP"), through its counsel of record, submits this reply memorandum in support of its Motion for Protective Order to Maintain Confidentiality of Identities of Patients, Plans, Brokers, TPAs, and Related Health Information (the "Motion").

## INTRODUCTION

Plaintiff argues extensively about why it wants to use ELAP's properly designated "Confidential Information," but Plaintiff completely fails to show the information was not properly designated as "Confidential Information." Identities of patients, plans, brokers, and third party administrators (TPAs) are clearly protected as "Confidential Information" under the Standard Protective Order (SPO). Thus, it is not surprising Plaintiff makes no real effort to show otherwise. Instead, Plaintiff attempts to persuade the Court it should not apply the Court's Standard Protective Order but instead apply the standard for a motion to seal in the Court of Appeals. As illogical as this argument sounds, it is also irrelevant because even if the requirement to show economic or competitive harm were required, ELAP can meet that standard. Plaintiff asks the Court to de-designate "Confidential Information" identifying protected health information and lists of ELAP's customers, suppliers, and distributors. This information is plainly protected by the SPO and, just as disclosure of any company's customers, suppliers, and distributors would cause it harm, such disclosure would cause harm to ELAP. The Court should not de-designate information that was clearly properly designated under the SPO.

## ARGUMENT

**I.      MEMBER PATIENT IDENTITIES ARE CORRECTLY DESIGNATED AS "CONFIDENTIAL INFORMATION."**

Identities of patients who received medical treatment at an Intermountain facility are protected as "Confidential Information." "Protected Information" is defined as "confidential or

proprietary technical, scientific, financial, business, **health, or medical information** designated as such by the producing party." *See* SPO at § 2 (emphasis added). "Confidential Information" includes "information supplied in any form, or any portion thereof, that identifies an individual or subscriber in any manner and relates to the past, present, or future care, services, or supplies relating to the physical or mental health or condition of such individual or subscriber, the provision of health care to such individual or subscriber, or the past, present, or future payment for the provision of health care to such individual or subscriber." *See* SPO at § 2(d). The SPO specifically states that names of patients constitute confidential information. *See* SPO at § 2(d)(1). "Confidential Information" shall only be disclosed to "Qualified Recipients," and the "Qualified Recipients shall hold such information received from the disclosing party in confidence, shall use the information only for purposes of this action and for no other action, and shall not use it for any business or other commercial purpose . . . ."  *See* SPO at § 5.

The SPO governs "any record of information produced in this action and designated pursuant to this Standard Protective Order, including all designated deposition testimony, all designated testimony taken at a hearing or other proceeding, all designated deposition exhibits, interrogatory answers, admissions, documents and other discovery materials, whether produced informally or in response to interrogatories, requests for admissions, requests for production of documents or other formal methods of discovery." *See* SPO at § 1. Attachment 3—identifying the patients, their dates of service, the charges billed by Intermountain, and the payable amount under their plan—is "Confidential Information," governed by the SPO, and "Protected Health Information," governed by HIPAA.

Plaintiff does not dispute that the SPO, and the definitions therein, govern what information and documents qualify as "Confidential Information." Likewise, Plaintiff does not dispute that, under the SPO, "Confidential Information" includes "Confidential Health Information." While Plaintiff includes the ELAP member patients who treated at Plaintiff's facilities in its "Four Groups" it is seeking to de-designate as non-confidential information, it does not dispute that the patient identities fall squarely within the "names" identifier in Section 2(d)(1) of the SPO. Plaintiff also does not dispute that the patient information in Attachment 3 is also "Confidential Health Information" (and thus "Confidential Information") because it identifies the provision of health care to those individuals, and payment for the provision of health care to said individuals. Moreover, Plaintiff also does not dispute that the patient information in Attachment 3 is "claim data" and is required to be kept confidential under HIPAA.

Further, "protected health information," as defined under HIPAA and including the identifier of "names," is required under federal law to be kept private (through redaction in court documents). Indeed, while asking this Court to de-designate the identities of the ELAP member patients as "non-confidential," Plaintiff ironically admits "[it] has independent duties to maintain the confidentiality of patient-identifying information." *See* Opp. 5, *citing Sorenson v. Barbuto*, 2006 UT App 340, ¶ 15, *affirmed* 2008 UT 8.[1] Even if the Plaintiff has such a duty, others do not. If the information were disclosed publicly, as it seemingly would have to be if it were de-

---

[1] This argument and citation are both perplexing and troubling. *Barbuto* is a case about the physician-patient privilege, not HIPAA. ELAP is not in possession of any information protected by the physician-patient privilege. Plaintiff has withheld production of any information protected from disclosure by the physician-patient privilege. The identities of patients are not protected by the physician-patient privilege. Thus, if the identities of patients are disclosed without being designated as Confidential Information, it is not clear Intermountain would have a duty to maintain the confidentiality of the information.

designated, members of the public are certainly not under any obligation to maintain the confidentiality of that information.

The names of ELAP patients treating at Plaintiff facilities plainly falls within the SPO's definitions of "Confidential Health Information" and "Confidential Information," and they constitute "protected health information" under HIPAA, which places duties on both ELAP and Plaintiff to maintain the confidentiality of said patient identities. The disclosure of Protected Health Information is not about harm or economic injury to ELAP or the party in possession of such information; instead, it is about presumed harm to the individual any time there is a disclosure not subject to a HIPAA-qualified protective order, which is a concern embodied in federal statutes and regulations. This is sufficient for the Court to order that the information maintain its "Confidential" designation.

## II.    THE IDENTITIES OF ELAP PLANS, TPAs AND BROKERS ARE PROPERLY DESIGNATED AS "CONFIDENTIAL INFORMATION."

The identities of ELAP's plans, TPAs, and brokers are "Confidential Information," the disclosure of which would likely result in economic harm to ELAP. "Protected Information" is defined as "**confidential or proprietary** technical, scientific, financial, **business**, health, or medical information designated as such by the producing party." *See* SPO at § 2 (emphasis added). The SPO defines "Confidential – Attorneys Eyes Only" to include "… **the identity of suppliers, distributors and potential or actual customers**." *See* SPO at § 2(b) (emphasis added). As with the names of ELAP's member patients, Plaintiff does not dispute that ELAP's

5

plans, brokers, and TPAs fall within the foregoing portion of the SPO's definition of "Confidential – Attorneys Eyes Only."[2]

Rather than even attempting to articulate a reason the information does not qualify as "Protected Information" under the SPO, Plaintiff erroneously relies on *Jetaway Aviation, LLC v. Bd. Of County Com'rs of County* and *Bank of the West v. Whitney* to assert ELAP must show economic injury will result from de-designating the identities of the "Four Groups" to non-confidential, and thus to be disclosed in the public domain. No showing of economic harm is contemplated by the SPO or required by law. Plaintiff readily concedes *Jetaway* involved a different standard than the present case, *i.e.,* the sealing of records in the federal Court of Appeals. *See* Opposition, p. 3. Moreover, Plaintiff misuses the *Jetaway* court's phrase "generalized allusion to confidential information," and claims ELAP only provides a "generalized allusion" to the identities of the "Four Groups" being confidential, suggesting this is "woefully inadequate." *See id*. at 4.

In addition to this not being a motion to seal in the Court of Appeals, but rather a motion arising under this Court's SPO, *Jetaway* is clearly distinguishable from this case. The language regarding a "generalized allusion" to confidential information in *Jetaway* refers to the fact that the protective order at issue (which was not this Court's SPO) did not identify specific confidential information, but merely stated "the parties anticipate the production of confidential and proprietary information during discovery." *Jetaway Aviation,* 754 F.3d at 827. A "generalized

---

[2] As stated in the opening memorandum, while this information easily qualifies for the more restrictive "Confidential – Attorneys Eyes Only" designation, ELAP applied the less restrictive "Confidential Information" designation, which adequately protects ELAP's interests in avoiding public disclosure of the information, so long as Plaintiff complies with the SPO's protections for "Confidential Information," including using it *solely for purposes of this litigation.*

allusion" does not even relate to the proper designation of specific information/documents as "confidential" – it relates to the identity of the information. In this case, there is no "general allusion" to confidential information; rather, the information at issue has been clearly identified by the parties – Protected Health Information and the identity of "customers" (TPAs, plans, etc.) designated as "Confidential Information," but disclosed in two discrete documents, Attachment 3 and ELAP68385.

Significantly, the Court in *Bank of the West v. Whitney* did not adopt the standard applied in *Jetaway*, but specifically held *Jetaway*'s holding did not invalidate the Magistrate Court's approach of simply determining whether the documents fit the definition of "Confidential Information:"

> The Magistrate Court specifically considered this privilege log and "found the documents fit the definition of CONFIDENTIAL INFORMATION" under the Standard Protective Order.  This is different from the *JetAway* plaintiff-appellant's "generalized allusion to confidential information.  *JetAway* does not demonstrate the magistrate Court's decision was "clearly erroneous" or "contrary to law."

*Bank of the West v. Whitney*, No. 2:15-cv-00622-CW, at p. 9 (D. Utah March 29, 2018). Thus, *Whitney* did not adopt the *JetAway* test applicable in the Court of Appeals or otherwise impose additional requirements for designating documents as "Confidential Information" beyond those set out in the SPO. Further, the court in *Bank of the West* noted that neither *PHL Variable* nor *Clearone*, both of which are cited by Plaintiffs, "include any discussion relating to the specific level of 'economic injury' that a designating party is required to present in order to meet its burden." *Bank of the West*, at *4. In that case, the party seeking to maintain the "confidential" designation simply claimed in its motion papers that disclosure to the public of the information "would be disadvantageous as it affects their negotiating position." *Id.* at *5. This statement by a

party in its motion papers, and the magistrate judge confirming that the documents fit the SPO's definition of "Confidential Information," was sufficient to meet the so-called "heavy burden" to which Plaintiff refers. Plaintiff's reliance on and citation to *JetAway* and *Bank of the West* are misplaced and unconvincing.

In this case, the plans, brokers, and TPAs with whom ELAP works are customers, distributors, and suppliers contemplated by the SPO. *See* Declaration of Michael Brannan (Brannan Decl.), attached hereto as Exhibit A, at ¶¶ 5–7. The compilation of such information in a list is confidential. *See* Brannan Decl. at ¶ 12. Specifically, ELAP requires all plans, brokers, and TPAs to sign Non-Disclosure Agreements ("NDAs"). *See* Brannan Decl. at ¶ 15. Access to confidential information provided to plans, brokers, and TPAs is limited to the minimum amount necessary. *See* Brannan Decl. at ¶ 16. Lists of plans, brokers, and TPAs are not disseminated to plans, brokers, and TPAs. *See* Brannan Decl. at ¶ 17. ELAP also requires all employees to sign NDAs, which prohibit disclosure of lists of plans, brokers, and TPAs. *See* Brannan Decl. at ¶ 13. Employees' access to confidential information is restricted based on their role. *See* Brannan Decl. at ¶ 14.

## III.    DE-DESIGNATION WOULD RESULT IN COMPETITIVE AND ECONOMIC HARM TO ELAP.

Even if this motion were to be decided under the *JetAway* standard, ELAP can easily satisfy that standard. Public disclosure of lists of plans, brokers, and TPAs would cause competitive and economic harm to ELAP by allowing competitors or potential competitors to access ELAP's network of plans, brokers, and TPAs. *See* Brannan Decl at ¶ 10. ELAP is aware of several competitors in the marketplace who would use this information to harm ELAP competitively. *See* Brannan Decl. at ¶¶ 8, 9, 11. ELAP is further aware of many "copycat" efforts

8

to replicate ELAP's business model, which would be aided by public disclosure of the lists of plans, brokers, and TPAs to ELAP's detriment. *See* Brannan Decl. at ¶ 9. ELAP's competitors and others in the industry are closely watching this case, including by monitoring filings on PACER, such that disclosure of the lists would almost certainly cause the contemplated harm. Armed with lists of strategic partners and lists of current or former clients, competitors and potential competitors could contact these partners and customers to take away business and potential business from ELAP.

## IV.     THE FACT THAT PLAINTIFF IS NOT A COMPETITOR OF ELAP IS IRRELEVANT.

Plaintiff further argues that, because ELAP and Plaintiff are not competitors, de-designation of the "Confidential Information" should occur because "there is no risk of [Plaintiff] using any of the information of the Four Groups to build a sales list and target them as potential clients." Opposition, p. 7. Just because two parties to litigation are not competitors does *not* eliminate the need for commercially sensitive information to be protected from *public disclosure* through the court docket. Public disclosure of sensitive business information, including customer lists, could result in economic injury to a party by way of that party's competitors having access to such information through the court docket, regardless of whether they are a party to the litigation. Moreover, Plaintiff intends to use the Confidential Information to contact the entities and individuals to make them aware of Plaintiff's litigation position and thereby destroy or drastically harm ELAP's business.

Further, there is no evidence that the SPO was drafted *only* for the purposes of protecting litigating parties who compete against each other in the marketplace. The *Clearone* decision cited by Plaintiff does not limit the protections under the SPO solely to cases where the litigating

9

parties themselves are competitors – it just so happened in that case that the two parties were in fact marketplace competitors. ELAP admits Plaintiff is not a competitor of ELAP – that is why it elected to designate the information as "Confidential" rather than "Confidential Information – Attorneys Eyes Only." This does not lessen the need, however, for ELAP's proprietary business information to be protected from public disclosure.

## V.   IDENTITIES OF FORMER CUSTOMERS ARE CONFIDENTIAL INFORMATION.

Plaintiff argues that any patients, plans, and brokers who have disassociated themselves with ELAP are not "suppliers, distributors, and potential or actual customers" as contemplated in SPO § 2(b), and thus "ELAP could not in any way be economically injured by [Plaintiff] contacting them." Opposition, p. 7. Moreover, Plaintiff's claim that "the chance of ELAP ever re-establishing an economic partnership with them is over," is nothing more than a bald, conclusory, and false statement. ELAP has before and likely will in the future regain the business of a plan that has parted ways with ELAP for one reason or another. Any former customer is a potential future customer. Regardless, any *lists* of patients, plans, or brokers are still properly designated as "confidential," regardless of whether one or more of said patients, plans, or brokers are not currently partnering with, or utilizing the services of, ELAP.

Similarly, that *one* ELAP TPA promotes ELAP's "reference-based-pricing" model on a web site does not alleviate the concern of having a list of all of ELAP's TPAs, brokers, and plans publicly disclosed. The referenced website revealing that one broker works with ELAP does not identify the list of TPAs that ELAP provided to Plaintiff. ELAP is protecting the list of such TPAs, not publicly available information.

## CONCLUSION

For the foregoing reasons and those outlined in the Motion, the Motion should be granted.

Respectfully submitted this 29th day of August, 2019.

PARR BROWN GEE & LOVELESS

By: /s/ Rodger M. Burge
          Rodger M. Burge

*Attorneys for Defendant ELAP Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August, 2019, a true and correct copy of the

foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE**

**ORDER TO MAINTAIN CONFIDENTIALITY OF IDENTITIES OF PATIENTS,**

**PLANS, BROKERS, TPAs, AND RELATED HEALTH INFORMATION** was served via

electronic service on the following:

> Alan C. Bradshaw
> Chad R. Derum
> Douglas J. Crapo
> **MANNING CURTIS BRADSHAW & BEDNAR PLLC**
> 136 E. South Temple, Suite 1300
> Salt Lake City, Utah 84111
> abradshaw@mc2b.com
> cderum@mc2b.com
> dcrapo@mc2b.com
>
> John W. Mackay
> **RAY QUINNEY & NEBEKER P.C.**
> 36 South State Street, Suite 1400
> Salt Lake City, Utah 84111
> Telephone: (801) 532-1500
> Facsimile: (801) 532-7543
> jmackay@rqn.com
>
> Thomas E. Lavender III
> Kristopher R. Alderman
> **FISHER BROYLES, LLP**
> 945 East Paces Ferry Road, Suite 2000
> Atlanta, Georgia 30326
> Telephone: (404) 400-4500
> ted.lavender@fisherbroyles.com
> kris.alderman@fisherbroyles.com

> /s/ Rodger M. Burge