# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES INC., a non-profit Utah corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ELAP SERVICES, LLC, a limited liability company,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTFF'S AND DEFENDANT'S MOTIONS TO DISMISS**<br><br><br>Case No. 2:17-cv-01245-JNP-EJF<br><br>District Judge Jill N. Parrish |

This matter is before the court on the Partial Motion to Dismiss filed by Defendant and Counterclaim-Plaintiff ELAP Services, LLC ("ELAP") and the Motion to Dismiss Defendant's Counterclaims filed by Plaintiff and Counterclaim-Defendant IHC Health Services, Inc. ("IHC").

## I.     BACKGROUND

IHC is a non-profit Utah corporation operating 22 hospitals and 185 clinics in Utah and Idaho. IHC provides medical services at its facilities. In 2016, IHC served more than 1.4 million patients in its hospitals and clinics. In 2015, IHC admitted more than 500,000 patients to its emergency rooms. When patients are admitted to an IHC facility, they sign a "Patient Agreement," wherein they agree to pay the full medical bill charged by IHC. IHC does not disclose the cost of the treatment beforehand.

If patients have health insurance, IHC bills their insurance provider. Many insurance providers have signed "preferred-provider agreements" ("PPAs") with IHC. These contracts contain mutually agreed upon terms, including an agreement by IHC to collect only a mutually negotiated amount for any service. This means that patients who are insured by preferred providers pay significantly reduced rates. Absent a PPA, patients are contractually obligated by the Patient Agreement to pay the full amount charged by IHC.

1

ELAP is a limited-liability company organized and existing under the laws of Pennsylvania. ELAP provides "health care cost containment services" for its clients, which are small to medium sized companies that sponsor their own ERISA self-funded healthcare plans. These companies contract with ELAP to "audit" the medical bills incurred by members of their plans. When a member of an ELAP-contracted plan ("Plan") receives treatment from a medical provider, his or her Plan submits the bills to ELAP. ELAP then purports to decide the reasonable amount for that service, or the Allowable Claim Limit ("ACL"). The ACL is the greater of a) the amount Medicare would pay, plus an additional 20%, or b) the provider's cost to provide the health care goods and services to the patients, as determined by the self-reported cost information provided by the provider plus an additional 12%. ELAP calls its role "Designated Decision Maker." ELAP's strategy is that "[t]he only way to pay less for healthcare, is to pay less for healthcare."[1] ELAP tells its Plans that they can be treated by any medical provider in the country and that they will only be responsible for the ACL amount that ELAP instructs the Plan to pay.

The dispute between the parties arises from the fact that ELAP has not signed a PPA with IHC, thus IHC does not recognize ELAP's authority to decide the amount Plans should pay. When an ELAP Plan member receives treatment at an IHC facility, IHC bills the Plan, which then only pays the amount decided by ELAP. IHC then sends additional bills to Plans and Plan members to demand the outstanding balance owing on the bill. But the Plans refuse to pay, because ELAP instructs Plans and Plan members that they are not liable for "reimbursement in excess of what

---

[1] *See* Am. Compl. at Ex. C, "Put Your Claims Costs Back in the Box." The court considers Exhibits A, B, & C attached to the Amended Complaint because "[e]xhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[the plan] has already paid."[2] When IHC attempts to initiate collection proceedings on these outstanding bills, ELAP instructs the patient to notify ELAP. ELAP is then contractually obligated to appoint an attorney to represent the Plan member. If necessary, ELAP's appointed attorney will institute litigation against IHC to prevent recovery.[3]

ELAP-affiliated patients do not disclose that their insurance Plan is affiliated with ELAP when they are admitted to IHC hospitals. Thus, IHC cannot identify the patients before offering treatment. Nevertheless, IHC estimates that it has provided treatment to hundreds of ELAP-affiliated plan members who have accrued millions of dollars in unpaid charges. IHC alleges it has been unsuccessful in collecting any unpaid charges from ELAP patients.

On December 1, 2017, IHC filed suit against ELAP asserting six claims for relief.[4] On February 12, 2018, ELAP filed a motion to dismiss IHC's Complaint. On September 28, 2018, the court granted the motion in part, dismissing counts two through five for failure to state a claim and granting IHC leave to amend. See ECF No. 29 (the "Order"). On October 12, 2018, IHC filed its Amended Complaint asserting six nearly identical claims for relief: 1) Intentional Interference with Existing and Prospective Economic Relations ("Count 1"); 2) Unjust Enrichment ("Count 2");[5] 3) Fraud ("Count 3"); 4) Negligent Misrepresentation ("Count 4"); 5) Declaratory Judgment ("Count 5"); and 6) Preliminary and Permanent Injunction ("Count 6"). On October 26, 2018, ELAP moved to dismiss Counts 2–5 for failure to state a claim. On November 16, 2018, ELAP

---

[2] *See* Am. Compl. at Ex. B, "Helpful Facts to Assist You with Any Balance Bill or Collection Notices."

[3] See Am. Compl. at Ex. A, Letters to IHC entities from ELAP's law firm introduced in *Musick et al v. Intermountain Health Care Inc.*, No. 2:15-cv-00450 (D. Utah 2017).

[4] They are: 1) Tortious Interference with Economic Advantage; 2) Injurious Falsehood; 3) Fraud ("Count 3"); 4) Negligent Misrepresentation; 5) Declaratory Judgment; and 6) Preliminary and Permanent Injunction.

[5] Count 2 is a new claim for relief replacing IHC's Injurious Falsehood claim.

3

filed its Answer and Counterclaim against IHC seeking 1) a Declaratory Judgment that IHC may not collect "excessive, unreasonable, and unconscionable" amounts under the Patient Agreements and 2) a Permanent Injunction preventing IHC from collecting "excessive, unreasonable, and unconscionable" amounts under the Patient Agreements. IHC then moved to dismiss ELAP's counterclaims. Both motions are now before the court.

## II.     LEGAL STANDARD

ELAP and IHC both move under FED. R. CIV. P. 12(b) to dismiss each other's claims.[6] A claim is properly dismissed under FED. R. CIV. P. 12(b)(6) if it fails to meet either the general pleading requirements of FED. R. CIV. P. 8 or the specialized pleading requirements of FED. R. CIV. P. 9. *Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986). Under the general pleading standard of FED. R. CIV. P. 8, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In contrast, FED. R. CIV. P. 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The specialized pleading requirement must be applied to any case brought in federal court where *federal* law has held that it should be applied. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see also* Order at 7.

When applying either standard to the factual allegations levied against the defendant "[a]t the motion-to-dismiss stage, we must accept all the well-pleaded allegations of the complaint as

---

[6] IHC moves under FED. R. CIV. P. 12(b)(1), (6) and (7) to dismiss for lack of jurisdiction, failure to state a claim, and failure to join. IHC also purports to move for judgment on the pleadings under Rule 12(c), but has stylized its motion as a motion to dismiss only. The court therefore treats it as such. In any event, a motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)). In evaluating a complaint on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

### III. ELAP'S MOTION TO DISMISS

#### A. COUNT 2: UNJUST ENRICHMENT

In Utah, "[u]njust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Baugh v. Darley*, 184 P.2d 335, 337 (Utah 1947) (citations omitted). To prevail on a claim for unjust enrichment, a plaintiff must establish three elements:

> (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

*Jeffs v. Stubbs*, 970 P.2d 1234, 1248 (Utah 1998) (citations omitted). ELAP moves to dismiss IHC's unjust enrichment claim on the grounds that ELAP did not receive a benefit from IHC and even if it did, ELAP did not appreciate the benefit. IHC argues that it does not have to be the one conferring the benefit on ELAP for ELAP to be unjustly enriched. IHC also argues that a benefit is conferred upon ELAP every time IHC treats an ELAP-contracted plan member because ELAP gets paid to audit the plan member's medical bill with money that should be used to pay IHC. The court finds that IHC has not successfully alleged an actionable benefit and therefore grants ELAP's motion to dismiss.

A "benefit may be an interest in money, land, chattels, or choses in action; beneficial services conferred; satisfaction of a debt or duty owed . . . ; or anything which adds to [one's] security or advantage." *Baugh*, 184 P.2d at 337. IHC correctly asserts that the benefit at issue does not necessarily have to be conferred by the plaintiff upon the defendant. *Jeffs*, 970 at 1248 (there must only be "*a benefit* conferred on one person by *another*."). However, that benefit must "in justice and equity belong to another" to sustain a claim for unjust enrichment. *Baugh*, 184 P.2d at 337. For example, when a "defendant benefits incidentally" from "[s]ervices performed by the plaintiff for [the plaintiff's] own advantage," the benefit is not "recoverable." *Id*.

In this case, IHC argues that ELAP benefits every time IHC treats an ELAP-Plan member whose Plan underpays because ELAP receives from the Plan money that should have been paid to IHC in accordance with the Patient Agreement "on a percentage fee tied to [IHC]'s charges." In other words, the fee received by ELAP from its customers, the alleged "benefit," is money owed to IHC by the Plan under IHC's Patient Agreement and is a benefit that would not be conferred upon ELAP absent IHC treating ELAP-Plan patients.

There are two major defects with IHC's argument. First, to the extent that IHC is claiming that it is owed money under an express contract, the Patient Agreement, its claim to that money cannot sustain a claim for unjust enrichment. *See U.S. Fid. v. U.S. Sports Specialty*, 270 P.3d 464, 468–69 (Utah 2012) (when there is an "express contract covering the subject matter of the litigation . . . , recovery for unjust enrichment is not available." (citations omitted)). In Utah, unjust enrichment "is designed to provide an equitable remedy where one does not exist at law." *Id.* at 468 (quoting *Selvig v. Blockbuster Enters., LC*, 266 P.3d 691, 698 (Utah 2011)). Thus, "the doctrine may be invoked 'only when no express contract is present' that governs the remedies available to

an injured party." *Id.* at 469 (quoting *TruGreen Companies, LLC, v. Mower Bros., Inc.*, 199 P.3d 929, 933 (Utah 2008)).

Second, absent IHC's theory that ELAP is siphoning money owed to IHC, ELAP is not benefitting from IHC treating patients covered by ELAP-Plans. When IHC treats patients, the only parties that benefit directly are 1) the patient who gets treatment and 2) IHC who is paid (or at least is entitled to be paid). ELAP does not benefit from these transactions.[7] Rather, ELAP benefits because it is paid by the Plans for its services related to the transaction—i.e., the "auditing" of the medical bill. This is a separate service governed by an independent contract between ELAP and each Plan. IHC's only claim to that fee is that ELAP's "services" cause patients to refuse to pay IHC the full amount they owe to IHC. But that cannot sustain an unjust enrichment claim. Whether or not ELAP's services are legitimate has no effect upon the enforceability of the Patient Agreement. As a result, IHC must enforce its claim against the patient or the Plan. Having concluded that IHC cannot state an unjust enrichment claim against ELAP, the court grants ELAP's motion to dismiss with prejudice.

## B. COUNTS 3 & 4: FRAUD & NEGLIGENT MISREPRESENTATION

In its September 28, 2018 Order, the court dismissed IHC's claims for Fraud and Negligent Misrepresentation for failure to state a plausible claim for relief and noted that even if IHC's claims had been plausible, IHC had also failed to plead the two claims with particularity as required by FED. R. CIV. P. 9(b). ELAP again moves to dismiss both claims for failure to assert actionable

---

[7] IHC cites *Emergency Physicians Integrated Care v. Salt Lake Cty.*, 167 P.3d 1080, 1085 (Utah 2007), for the proposition that a third party may receive a benefit when patients are treated. But that case is not relevant here. In that case, the third-party was the county who had a constitutional and statutory duty to provide medical care for inmates. Thus, the treatment of inmates was a direct benefit for the County. In contrast, ELAP has no duty to insure its Plan-members receive medical care, only a duty to audit the medical bills when costs are incurred.

claims and for failure to plead the claims with the requisite particularity. The court need not address whether IHC has pled the factual allegations with particularity because IHC's claims are simply not plausible as asserted.

### 1. Count 3: Fraud

To state a claim for fraud, IHC must allege nine elements:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Arnett v. Howard*, No. 2:13-CV-591 TS, 2014 WL 1165851, at *3 (D. Utah Mar. 21, 2014) (citing *Daines v. Vincent*, 190 P.3d 1269, 1279 (Utah 2008)). The court granted ELAP's previous motion to dismiss IHC's fraud claim because IHC failed to plead that it reasonably relied to its detriment on statements made by ELAP. The court also noted that IHC failed to plead with particularity specific instances of fraudulent representations made by ELAP. ELAP now moves to dismiss IHC's amended fraud claim on the same grounds, arguing that IHC has not successfully alleged reliance on any fraudulent statements made by ELAP to IHC. IHC opposes the motion, arguing that although ELAP did not make any fraudulent representations directly to IHC, ELAP should be held liable for the allegedly fraudulent statements made to IHC by ELAP Plan members, because ELAP's assurances to patients that they can be treated anywhere and that they will not have to pay the full amount of their medical bills causes patients to fraudulently sign Patient Agreements that they do not intend to honor. The court is unpersuaded by IHC's novel theory and grants ELAP's motion to dismiss.

IHC acknowledges that a fraud claim requires reliance on the defendant's false statements, but maintains that the false representation does not necessarily have to be made directly to the plaintiff.[8] And there is no dispute that a plaintiff must establish that it relied on the false statement to its detriment. *See Carlton v. Brown*, 323 P.3d 571, 582 (Utah 2014). The problem with IHC's theory is that IHC continues to assert that the Patient Agreements are valid and enforceable. Thus, even though the patients may have signed the agreements with the fraudulent intent that they would not have to pay their full medical bill, IHC cannot establish the requisite detrimental reliance because IHC can still enforce its agreements. Thus, the statements upon which IHC allegedly relied—that the patients would be obligated to pay their bill—is not a false statement by ELAP. It is a true statement by the patient because the patient's execution of the Patient Agreement obligates the patient for the full amount of IHC's bill. Perhaps ELAP has defrauded its Plan members, but there is nothing to suggest that ELAP made or caused to be made to IHC any fraudulent misrepresentations on which IHC relied. And IHC lacks standing to bring a fraud claim on behalf of ELAP customers.

Alternatively, IHC argues that ELAP members, either on their own accord or under direction from ELAP, intentionally concealed their contractual relationship with ELAP to induce IHC to treat them. But IHC has not alleged that it asks every prospective patient whether they do

---

[8] See *Ellis v. Hale*, 373 P.2d 382, 384–85 (Utah 1962) ("The usual action for fraud, whether negligent or intentional, requires that a representation be made with the intention that it be relied on."). According to the Restatement (Second) of Torts § 533 (1977), a defendant may be held liable if the misrepresentation, "although not made directly to the other," is "made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction."

9

business with ELAP; thus, IHC has not identified any statements or omissions by patients on which it has relied.[9]

Finally, IHC argues that the Plan members are agents of ELAP who are acting on ELAP's behalf to defraud IHC. This argument is similarly implausible. Under Utah law, the existence of an agency relationship requires three elements: "(1) the principal must manifest its intent that the agent act on its behalf, (2) the agent must consent to so act, and (3) both parties must understand that the agent is subject to the principal's control." *Sutton v. Miles*, 333 P.3d 1279, 1282 (Utah 2014) (citation omitted). Even if ELAP intended Plan members to act on its behalf, there is no allegation that individuals whose insurance Plans are contracted with a third-party auditor have consented to act as agents for that third-party. Nor is there any kind of understanding between ELAP and the individual Plan participants that ELAP has control over the actions of those participants. In short, there is absolutely no agency relationship between ELAP and the patients who sign the Patient Agreements. The court therefore grants ELAP's motion to dismiss IHC's third cause of action with prejudice.

### 2. Count 4: Negligent Misrepresentation

IHC also alleges that ELAP is liable for negligent misrepresentation. To establish a claim for negligent misrepresentation, IHC must establish, in addition to "the other elements of fraud," that ELAP:

---

[9] This situation is distinct from a fraudulent credit reporting scheme, which IHC argues is analogous to this situation, where a person seeking to obtain credit misrepresents information to a credit-reporting company, which in turn transmits that information to a prospective creditor. In that case, the person seeking credit made a misrepresentation to the credit-reporting company with the intent that it would be transmitted to and replied upon by the prospective creditor. In this case, IHC treats all patients who walk in the door so long as they sign an agreement to pay for IHC's services. The fact that patients only disclose their insurance Plan, and not their insurance Plan's contractual relationship with ELAP, is not a material omission that causes IHC to undertake treatment.

10

> (1) [has] a pecuniary interest in a transaction, (2) is in a superior position to know material facts, and (3) carelessly or negligently makes a false representation concerning them, (4) expecting the other party to rely and act thereon, and (5) the other party reasonably does so and (6) suffers loss in that transaction. . . .

*Christenson v. Commonwealth Land Title Ins. Co.*, 666 P.2d 302, 305 (Utah 1983) (quoting *Jardine v. Brunswick Corp.*, 423 P.2d 659, 662 (Utah 1967)). The court previously dismissed IHC's claim for failing to assert detrimental reliance and for failing to assert a special duty between plaintiff and defendant.

The court again finds, as discussed above, that IHC has failed to assert detrimental reliance. Moreover, IHC has again failed to assert "a special duty of care running from the representor to the representee." *Ellis v. Hale*, 373 P.2d 382, 384–85 (Utah 1962). In fact, IHC suggests that it need not allege a "special duty" because that is not an element of a negligent misrepresentation claim. *See* IHC's Opp'n Mot. Dismiss at 17 n.9. But a negligent misrepresentation claim is merely a fraud claim where the misrepresenting party acted negligently rather than intentionally. To successfully assert a negligent misrepresentation claim, IHC must establish that ELAP was negligent, which requires establishing that ELAP owed IHC a duty. *See* 2 Harper & James, *The Law of Torts*, § 7.6 (3d ed. 2006). The duty of care does not have to be based on privity of contract, but it does require more than just an intent to induce reliance. *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986). Here, the only duty identified by IHC—that ELAP held itself out as a medical insurance expert—was a duty ELAP owed to its Plans and Plan members, not to IHC. IHC's claim for negligent misrepresentation is therefore dismissed with prejudice.

### C. COUNT 5: DECLARATORY RELIEF

IHC's fifth claim is for a declaratory judgment under FED. R. CIV. P. 57 and 28 U.S.C. § 2201 that 1) "ELAP is required to notify Intermountain in advance before an ELAP-affiliated

Plan Member seeks admission to an Intermountain facility"; 2) ELAP is "prohibited from taking any action or engaging in any representations suggesting that [a] Plan members can visit Intermountain without abiding by Patient Agreements; [b] that Intermountain will or must accept [what] ELAP decides to pay for Intermountain's services; and/or [c] that the patients who sign Patient Agreements will nevertheless have no financial responsibility to IHC beyond what ELAP determines the patients' financial obligation to be"; and that 3) nothing "ELAP does, has done, or may do, in its role as alleged 'Dedicated Decision Maker' is legally binding on Intermountain." Am. Compl at ¶¶ 107–109.

ELAP argues that IHC is not entitled to the declaratory relief it seeks for two reasons. First, ELAP argues that IHC's claim for such relief is premised on the same conduct giving rise to its other claims for relief. Therefore, to the extent its other claims for relief are dismissed, its request for a declaratory judgment must also fail. Second, ELAP argues that IHC lacks standing. The court addresses the first issue, but does not reach the issue of standing because the court declines to exercise its jurisdiction over the matter.

Under 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction," a court, "may declare the rights and other legal relations of any interested party seeking such declaration." While declaratory relief is available even in the absence of an underlying cause of action, the availability of declaratory relief is dependent on there being "a case of actual controversy" to which the court can provide "a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). Thus, when the plaintiff seeks substantive relief and declaratory relief on the same grounds, if the "substantive claims have failed," then the "request for declaratory relief in relation to those claims is not viable" because there are no rights left to declare on that issue. *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670,

671 (10th Cir. 2016). Because the court has dismissed IHC's claims for unjust enrichment, fraud, and negligent misrepresentation, IHC's claim for declaratory relief, to the extent it is premised on these claims, must also be dismissed. Thus, any claim for declaratory relief must be premised upon IHC's only surviving claim—the claim for intentional interference with economic relations. The court therefore considers whether IHC has plausibly alleged that the court should "exercise its authority to grant declaratory relief" as it relates to that claim. *Mocek v. City of Albuquerque*, 813 F.3d 912, 932 (10th Cir. 2015). When making that decision, the court must "weigh case-specific factors," *id.*, including:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1248 (10th Cir. 2008) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

Although there is an actual controversy surrounding the tortious interference claim, a declaratory judgment would not serve a useful purpose in clarifying the legal relations at issue because they will necessarily be resolved on the merits of the substantive claim. And "[i]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). In its prior order, the court dismissed the declaratory judgment claim because IHC had failed to articulate why a declaratory judgment was necessary in light of the relief it sought on its substantive claim. In its Amended Complaint, IHC reasserted the claim, arguing that a clarification

13

of legal rights was necessary to prevent future harm from ELAP's alleged tortious interference. But IHC has also brought a claim for a preliminary and permanent injunction seeking to enjoin such behavior. If that remedy were to be awarded, the declaratory judgment claim would be entirely extraneous. And regardless of whether an injunction is entered, the resolution of IHC's claim for intentional interference with existing and potential economic relations will decisively resolve the issue of ELAP's liability to IHC for its alleged interference with IHC's patient relationships. A declaratory judgement would add nothing to the equation. Indeed, the claim for a declaratory judgment appears to be no more than the type of procedural fencing that courts should avoid. In short, there is nothing that IHC has alleged that could plausibly entitle it to the unique remedy offered by the Declaratory Judgment Act. The court therefore grants ELAP's motion to dismiss with prejudice IHC's fifth claim for relief.[10]

## IV. IHC'S MOTION TO DISMISS[11]

ELAP asserts two counterclaims against IHC seeking 1) a declaratory judgment that the Patient Agreements do not permit IHC to collect excessive, unreasonable, or unconscionable amounts; and 2) injunctive relief prohibiting IHC from seeking to collect excessive, unreasonable, or unconscionable amounts. IHC moves to dismiss both counterclaims, arguing that 1) ELAP does not have jurisdictional or prudential standing to litigate the Patient Agreements; 2) ELAP did not plead a cognizable legal remedy; 3) ELAP failed to join the patients who are necessary parties;

---

[10] As the court has previously ruled, IHC does have standing to assert a claim for equitable relief related to its tortious interference claim, the court does not address that issue here. *See* Order at 20–22.

[11] As discussed *supra* 4 n.6, although IHC purports to assert its motion under FED. R. CIV. P. 12(b) and 12(c), it has stylized its motion as a motion to dismiss only, not a motion for judgment on the pleadings, and the court treats it as such.

and 4) the claims are inappropriate because they raise policy implications beyond the scope of this case. The court begins (and ends) with the issue of standing.

Standing is a threshold question that the court must evaluate under Article III of the constitution to "ensure[] that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). To establish Article III standing, ELAP must show that:

> (1) [it] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested.

*Id.* (internal citations omitted).[12]

ELAP asserts that it is injured every time IHC attempts to collect unreasonable amounts under the Patient Agreements because ELAP is contractually bound to defend its Plan members against these collection actions, thereby incurring attorney's fees and litigation costs. Accepting ELAP's factual allegations as true, ELAP's injury appears to be concrete and actual, not merely conjectural or hypothetical.[13] Additionally, this conduct is fairly traceable to IHC because it is IHC that requires ELAP Plan members to sign the Patient Agreements and IHC brings the lawsuits that cause ELAP's alleged injury. But ELAP nevertheless lacks standing to assert its equitable counterclaims because its requested relief—a declaration and an injunction preventing IHC from collecting "excessive, unreasonable, or unconscionable amounts"—does not appear "likely, as opposed to merely speculative," to redress the harm asserted by ELAP.

---

[12] *See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

[13] In fact, ELAP and IHC have engaged in litigation on this very subject.

To sufficiently redress harm for Article III purposes, the relief must "effectively abate[]" the conduct at issue "and prevent[] its recurrence." *Friends of the Earth*, 528 U.S. at 185–86. The real conflict between the parties is whether ELAP has the legal right to limit how much IHC may charge for medical services provided by IHC. But ELAP does not have a contract with IHC, nor do any of the ELAP Plans have a PPA with IHC. Thus, even were the court to declare and order that IHC could only charge a reasonable and customary amount for medical services, such an order would be meaningless without a mechanism for determining a reasonable and customary charge. ELAP has a formula for calculating what ELAP considers a reasonable and customary charge, but ELAP has not articulated any theory suggesting why ELAP's calculation should be binding on IHC. In short, ELAP's requested equitable relief is so amorphous and indefinite that it could not possibly redress the injury ELAP has alleged or resolve the dispute between these parties. Thus, ELAP lacks constitutional standing.

In addition to constitutional standing, ELAP also lacks prudential standing. Prudential standing requirements preclude litigants from suing to enforce the rights of others. *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009). ELAP asserts that it seeks to litigate its own rights arising from its contractual obligation to defend Plan members against collection efforts by IHC. But the court is not persuaded. In reality, ELAP seeks to adjudicate the validity of contracts between IHC and its patients. ELAP is not party to those contracts and the patients who are party to those contracts are not parties to this lawsuit. Under these circumstances, the court concludes that ELAP lacks prudential standing. Its counterclaims must therefore be dismissed with prejudice for both lack of constitutional and prudential standing.

## V. CONCLUSION AND ORDER

For the reasons articulated, the court hereby grants ELAP's motion to dismiss counts two through five of the Amended Complaint. The court further grants IHC's motion to dismiss ELAP's counterclaims.

IT IS HEREBY ORDERED that claims two through five of the Amended Complaint are dismissed with prejudice.

IT IS FURTHER ORDERED that ELAP's counterclaims are dismissed with prejudice.

Signed September 30, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge